UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| **IN RE: AME CHURCH EMPLOYEE RETIREMENT FUND LITIGATON** | MDL 1:22-md-03035-STA-jay<br><br>ALL CASES |

**ORDER DENYING AMEC'S MOTION TO DISMISS
CONTINGENT CROSSCLAIM OF NEWPORT GROUP, INC.**

Defendant African Methodist Episcopal Church ("AMEC") has filed a motion to dismiss the contingent crossclaim of Cross-Defendant Newport Group, Inc. ("Newport"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 231.) Newport has filed a response to the motion (ECF No. 255), and AMEC has filed a reply to Newport's response. (ECF No. 273.) For the reasons set forth below, the motion to dismiss of AMEC is **DENIED** without prejudice.[1]

Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint – or, here, the crossclaim. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996); *see also Bowman v. Merrimac Real Est. Holdings, II, LLC*, 2020 WL 3578585, at *1 (W.D. Okla. July 1, 2020) (citing *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)) ("The inquiry under Rule 12(b)(6) is whether the complaint (or in this case, the

---

[1] Newport has filed a motion to dismiss AMEC's amended cross-complaint. (ECF No. 280.) That motion will be ruled on in a separate order.

contingent crossclaim) contains enough facts to state a claim for relief that is plausible on its face.'"))

A complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action...." *Twombly*, 550 U.S. at 555. A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

Federal pleading rules permit the assertion of contingent crossclaims. *See* Fed. R. Civ. P. 13(g) (stating that a crossclaim against a co-party "may include a claim that the party against whom it is asserted is or may be liable to the crossclaimant for all or part of a claim asserted in the action against the crossclaimant"); *see also Providential Dev. Co. v. U.S. Steel Co.*, 236 F.2d 277, 281 (10th Cir. 1956) (Rule 13(g) "is not limited by text or purpose to definite or matured claims or causes of action[;]" rather, the rule "is broad enough to include a claim of a contingent nature, the ultimate outcome of which depends upon the determination of other features or issues in the case"); 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1431, at 240–41 (2d ed. 1990) (Rule 13(g) "does not require that the claim be mature at the time of pleading;" hence, "a cross-claim can be contingent upon the ultimate adjudication of the cross-claimant's liability to plaintiff"). Contingent crossclaims are permissible to preserve a defendant's right to seek contribution from others. *See, e.g.*, *Hobart Corp. v. Dayton Power & Light Co.*, 2017 WL 3773146,

2

at *2 (S.D. Ohio Aug. 29, 2017); *see also Garot v. Cnty. of San Diego*, 2021 WL 51415, at *4 (S.D. Cal. Jan. 5, 2021) ("Thus, although the County's cross-claim is contingent upon the ultimate adjudication of the parties' liabilities to Plaintiff in this action, that fact is not a proper basis for dismissal of a cross-claim.")

To survive a motion to dismiss a contingent crossclaim, a plaintiff "must nudge its claims across the line from conceivable to plausible." *Bowman*, 2020 WL 3578585, at *1 (citing *Twombly*). Thus, a crossclaimant need not allege that it will actually be indemnified in the future, only that the party against whom the crossclaim is asserted "might theoretically be held liable for indemnifying" the crossclaimant. *PMA Companies v. Genox Transportation, Inc.*, 2021 WL 5632768, at *2 (S.D. Cal. Dec. 1, 2021). However, a motion to dismiss a crossclaim may be granted if there is no possibility that the crossclaim will succeed. *Bowman*, 2020 WL 3578585, at *3.

## Background

This multidistrict litigation concerns losses to a non-ERISA retirement plan established by the AMEC denomination for its clergy and employees. Plaintiffs are current or retired clergy who have brought claims against the denomination, church officials, third-party service providers to the plan, and other alleged tortfeasors. As a third-party service provider, Newport has denied liability for both breach of fiduciary duty and negligence. However, Newport's crossclaim (Ans., pp. 99-101, ECF No. 211) alleges that, in the event that Newport faces liability and in the event that the doctrine of comparative fault does not apply, Newport is entitled to contribution from AMEC for any liability imposed on it for breach of fiduciary duty and/or negligence under both common law and Tenn. Code Ann. § 29-11-102.

The Court will briefly summarize the events giving rise to this lawsuit. Although the factual background does not appear to be in dispute, the facts are stated for the purpose of deciding this motion only. The African Methodist Episcopal Church Ministerial Retirement Annuity Plan ("the

Plan") was designed to provide annuities to certain personnel of the AME Church. For over twenty years, Defendant Dr. Jerome Harris, the former Executive Director of AMEC's Department of Retirement Services, repeatedly represented to the Church and Plan participants that the Plan was soundly invested.

In 2001, AMEC opened its retirement Plan with Safeco Insurance (now Symetra), investing an initial $49,500,000 into conservative, low-risk annuities. Also in 2001, Dr. Harris entered into an agreement with American Express Tax and Business Services (now merged with Newport) to act as a third-party administrator for the Plan. Newport's role as a third-party administrator required it to track the balances of Plan participants' accounts and to prepare and provide statements to Plan participants. AMEC alleges that it relied on Newport to provide accurate reports, which necessarily required Newport to take reasonable steps to confirm the veracity of the information provided to it.

Subsequent to the retirement of Dr. Harris, the parties allegedly learned that Dr. Harris used Plan funds held with Symetra to make unauthorized risky investments, engage in self-dealing, and commit other illegal acts. One of these high-risk investments was Motorskill Investments. Dr. Harris submitted requests to Symetra to electronically wire Plan funds directly to Motorskill. From 2005 to 2021, Harris, using Plan funds, paid roughly $37 million dollars to Motorskill Investments — investments which are now allegedly worthless. Motorskill Investments stopped providing quarterly financial statements in 2019, but Newport allegedly continued to provide Plan participants with statements reflecting account balances that included the inflated value of the then-worthless Motorskill Investments. Newport allegedly continued to falsely report that Motorskill Investments had value for nearly two years.

AMEC contends that Newport, as a professional third-party administrator of retirement plans with specialty and expertise with these types of plans, should have known that the Motorskill Investments entities were not appropriate for a retirement plan and yet did nothing to warn AMEC.

AMEC also alleges that Newport failed to perform its duty owed to Plaintiffs and AMEC and that Newport's actions and omissions caused AMEC and the Plan "catastrophic harm."

Analysis

In its motion, AMEC seeks to dismiss Newport's contingent crossclaim for contribution. In support of its motion, AMEC argues that Newport is not entitled to contribution for the breach of fiduciary duty claim against it because the Uniform Contribution Among Tort-feasors Act does not apply to breach of fiduciary obligations. *See* Tenn. Code Ann. § 29-11-102(g) ("This chapter shall not apply to breaches of trust or of other fiduciary obligation.").[2] AMEC further argues that Newport's claim of contribution related to the negligence claims asserted against it is improper because the remedy of contribution for tort claims in Tennessee was severely limited by the adoption of comparative fault in *McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn. 1992).

After *McIntyre*, *General Electric Co. v. Process Control Co.*, 969 S.W.2d 914, 915 (Tenn. 1998), determined that a claim for contribution may proceed in the following circumstances:

> 1. Causes of action that arose prior to *McIntyre*, a suit was filed, and the parties made irrevocable litigation decisions based on pre-*McIntyre* law;
> 2. Cases in which joint and several liability continues to apply under doctrines such as the family purpose doctrine, cases in which tortfeasors act in concert or collectively with one another, cases in which the doctrine of respondeat superior permits vicarious liability due to an agency-type relationship, or in the "appropriate" products liability case; or
> 3. Cases in which fairness demands contribution.

*Id.* at 916 (citations omitted). The General Assembly codified these exceptions in Tenn. Code Ann. §§ 29-11-107:

> (a) If multiple defendants are found liable in a civil action governed by comparative fault, a defendant shall only be severally liable for the percentage of damages for

---

[2] Newport acknowledges that Tennessee's Uniform Contribution Among Tort-Feasors Act does not apply to actions for breach of fiduciary duty. (Resp. p. 5 n. 3, ECF No. 255.) However, Newport states that it does not seek contribution under the statute. Rather, Newport asserts a common law right to contribution and claims that AMEC has pointed to no case barring contribution in fiduciary breach actions. (*Id.* at p. 8. n. 4.)

which fault is attributed to such defendant by the trier of fact, and no defendant shall be held jointly liable for any damages.

(b) Notwithstanding subsection (a), the doctrine of joint and several liability remains in effect:
(1) To apportion financial responsibility in a civil conspiracy among two (2) or more at-fault defendants who, each having the intent and knowledge of the other's intent, accomplish by concert an unlawful purpose, or accomplish by concert a lawful purpose by unlawful means, which results in damage to the plaintiff; and
(2) Among manufacturers only in a product liability action as defined in § 29-28-102, but only if such action is based upon a theory of strict liability or breach of warranty. Nothing in this subsection (b) eliminates or affects the limitations on product liability actions found in § 29-28-106.

(c) Nothing in this section eliminates or affects the doctrines of vicarious liability or respondeat superior.

The issue presented in this motion is whether, at this juncture, Newport has plausibly alleged the applicability of joint and several liability with the other alleged tortfeasors so as to have a contingent crossclaim for contribution against AMEC. AMEC contends that it has not and that, accordingly, Newport's claim for contribution must be dismissed as a matter of law. In support of its argument, AMEC argues that Plaintiffs have not alleged that it acted in concert with Newport and also that, if found liable, the jury will apportion fault among all the Defendants, including Newport and AMEC, under the doctrine of comparative fault.

Newport concedes that its crossclaim is viable only if (1) there is a judgment in Plaintiffs' favor on their claims against Newport and AMEC for negligence and/or breach of fiduciary duty and (2) the Court determines that comparative fault does not apply to one or both of those claims. Newport also clarifies that it does not take the position that joint and several liability necessarily applies to Plaintiffs' claims and comparative fault does not; instead, its crossclaim is merely intended to preserve its rights. Newport asks the Court to deny AMEC's motion until the issues of comparative fault and joint and several liability are decided by the Court.

Plaintiffs have expressly alleged that "Defendants are jointly and severally liable to Plaintiffs

6

and other Class members" for negligence. (Amd. Cmplt. ¶ 396, ECF No. 74.) Moreover, as pointed out by Newport, Plaintiffs have made allegations that could conceivably give rise to joint and several liability if found to be true. (*Id.* at ¶ 386 ("Class members did reasonably and foreseeably rely on the Defendants to exercise such care by entrusting assets to the Fund."); ¶ 387 (alleging that the Defendants failed to exercise due care); ¶ 394 ("If the Defendants had not been negligent, they would have discovered that Plaintiffs and other Class members had lost a substantial portion of their retirement funds."); ¶ 395 (alleging that Plaintiffs' injury was the "foreseeable result of Defendants' negligence")). Newport correctly notes that these allegations have survived a motion to dismiss. (Ord. p. 86, ECF No. 187 ("On the merits of the claims alleged in the Amended Complaint, Plaintiffs have stated plausible claims for breach of fiduciary duty (count 1) and negligence (count 3) against Newport and Symetra."))

AMEC seems to be under the misapprehension that this Court has previously decided the issue of joint and several liability. (Reply p. 1, ECF No. 273. ("And this Court has made clear in its Order on Newport's Motion to Dismiss that Plaintiffs' claims of negligence and breach of fiduciary duty against Newport are based exclusively on Newport's actions and inactions.") AMEC is mistaken. In the prior motion to dismiss, this Court was not presented with the issue of whether comparative fault applies and/or whether Defendants can be found to be joint and severally liable and, therefore, did not decide that issue.

As for the present motion which was filed by one party (AMEC) and responded to by another party (Newport), the Court cannot and will not decide the applicability of joint and several liability without having it briefed by all parties. At this juncture, such a decision would be premature. *See generally Gloucester Twp. Hous. Auth. v. Franklin Square Assocs.*, 2013 WL 3990820, at *7 (D.N.J. Aug. 2, 2013) ("Both motions must be denied for the same reason - the issues presented are not ripe for adjudication. GTHA's claims and Franklin's counterclaims against HUD are all contingent on a

finding that the HAP contract between GTHA and Franklin has been breached."); *Harmelin v. Man Fin. Inc.*, 2007 WL 1521563, at *2 (E.D. Pa. May 23, 2007) (denying without prejudice motion to dismiss counterclaims as "legal issues are premature"); *LG Display Co. Ltd. v. Obayashi Seikou Co., Ltd.*, 2013 WL 314760, at *33-34 (D.D.C. Jan. 28, 2013) (finding dismissal of certain claims premature and denying contingent motion to dismiss without prejudice). Accordingly, AMEC's motion is **DENIED** without prejudice.

    IT IS SO ORDERED.

                                                        **s/ S. Thomas Anderson**
                                                        S. THOMAS ANDERSON
                                                        UNITED STATES DISTRICT JUDGE

                                                        Date: January 26, 2024.