**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **IN RE: AME CHURCH EMPLOYEE** | ) | **Lead Case No.** |
| **RETIREMENT FUND LITIGATION,** | ) | **1:22–md–03035–STA–jay** |
| | ) | |
| | ) | **ALL CASES** |

---

**ORDER DENYING SYMETRA FINANCIAL CORPORATION'S MOTION TO DISMISS OR STAY AFRICAN METHODIST EPISCOPAL CHURCH'S THIRD-PARTY COMPLAINT (ECF NO. 282)**
**ORDER GRANTING MOTION TO STAY**

---

This multidistrict litigation concerns losses to a non-ERISA retirement Plan established by the African Methodist Episcopal Church ("AMEC") for its clergy and employees.  Plaintiffs are current or retired clergy of the church and allege a number of claims under Tennessee law against the denomination, church officials, third-party service providers to the Plan, and other alleged tortfeasors.  Before the Court is Third-Party Defendant Symetra Financial Corporation's Motion to Dismiss or Stay the African Methodist Episcopal Church's Third-Party Complaint (ECF No. 282).  Symetra Financial Corporation ("Symetra Financial") seeks the dismissal of the third-party claims against it for lack of personal jurisdiction and lack of subject-matter jurisdiction.  In the alternative, Symetra Financial requests a stay of the claims, pending the outcome of arbitration.  Third-Party Plaintiffs AMEC and the AMEC Ministerial Retirement Annuity Plan ("the Plan) have responded in opposition, and Symetra Financial has filed a reply.  For the reasons set forth below, Symetra Financial's Motion to Dismiss is **DENIED**, and its Motion to Stay is **GRANTED**.

## BACKGROUND

**I.      Factual Allegations of the Third-Party Complaint**

1

Third-Party Complaint alleges that AMEC discovered in September 2021 that the Rev. Dr. Jerome V. Harris, the former Executive Director of the AMEC Department of Retirement Services and the Trustee for the Plan, had embezzled Plan funds and defrauded the Church. Third-Party Compl. ¶ 1. Even though Dr. Harris had reported Plan assets worth $128 million just before his retirement in 2021, an investigation into the Plan's finances showed the Plan had only $37 million in assets. *Id*. ¶ 85. Cross-Plaintiffs seek to hold Dr. Harris and a number of other parties, including Symetra Life and Symetra Financial, liable for these losses.

According to the Third-Party Complaint, Symetra Life is a subsidiary of Symetra Financial. Third-Party Compl. ¶ 5. AMEC's General Board adopted Dr. Harris' recommendation in December 2001 to move the denomination's annuity funds to Safeco Insurance, now Symetra Life. Third-Party Compl. ¶ 27. On or about December 31, 2001, AMEC opened an account with Safeco, (now known as Symetra Life), investing $49 million in low-risk annuities issued by Symetra Life and intended to serve as the primary retirement investment for the Plan's participants. *Id*. ¶ 28. Symetra Life acknowledged that $49 million was a large sum for this type of account. *Id.* ¶ 29. Despite knowing that the Plan's annuity investment was meant to be conservative and safe, Symetra Life and Symetra Financial repeatedly turned a blind eye to Dr. Harris' improper withdrawals and transfers of Plan funds. *Id.* ¶ 30.

Symetra Financial was on notice of Dr. Harris' misconduct as early as March 4, 2008. *Id*. ¶ 31. Dr. Harris asked Bob Follette, Project Manager of Group Retirement Plans for Symetra Financial, to transfer $10 million of Plan funds to another entity known as Financial Freedom Funds. *Id*. The Church alleges that Symetra Financial had concerns about Dr. Harris' request. *Id*. ¶ 33. According to Kathleen Hastings, an employee of Symetra Life, Symetra had a policy of not

2

making payments to third parties for investment purposes. *Id.* ¶ 32. So in response to Dr. Harris'

directive, Bob Follette emailed Dr. Harris on March 4, 2008, and recommended that Dr. Harris

seek the advice of a qualified ERISA attorney before proceeding with the $10 million transfer due

to the risk of a conflict or harm to the Plan. *Id.* ¶ 34. Symetra continued to follow similar orders

from Dr. Harris for the transfer of Plan funds. *Id.*

Neither Symetra Life nor Symetra Financial had any process in place to alert AMEC about

concerns related to Dr. Harris' actions, either in 2008 at the time of the $10 million transfer or at

any other time since 2008, up to and including the present. *Id.* ¶ 34. Symetra Life and Symetra

Financial had and continue to have a duty to safeguard the group retirement plans in their care. *Id.*

¶ 35. As part of that duty, Symetra Financial and Symetra Life should have a process in place to

notify a plan sponsor or employer like AMEC of potential misconduct committed by a plan trustee

like Dr. Harris. *Id.* It was foreseeable that a trustee who was the sole signatory could mishandle

and mismanage funds invested in a group retirement plan. *Id.* ¶ 36. Symetra Life and Symetra

Financial had no processes in place to deal with such an event. *Id.* Symetra Financial realized in

2008 that moving millions of dollars out of AMEC's retirement plan into other investments was

aberrant, unusual behavior. *Id.* ¶ 37. But Symetra Financial failed to establish and maintain

controls to protect the Plan from unauthorized transfers and activity. *Id.* ¶ 38. The Church alleges

upon information and belief that Dr. Harris later directed Symetra Financial to electronically wire

funds to Motorskill Entities, which Symetra did without confirming whether Dr. Harris had the

authority to direct such a transfer. *Id.* ¶ 72.

In the annuity industry, it is common for a retirement group plan to move its funds from

carrier to carrier every few years in order to maximize the rate of return. *Id.* ¶ 40. Dr. Harris

never sought to transfer the remainder of the Plan funds that were invested in Symetra's annuities to another carrier for over twenty years. *Id*. Even if Symetra Life or Symetra Financial had proper controls in place to notify an employer of potential misconduct on the part of a trustee, the companies chose to ignore those controls to ensure that Dr. Harris kept the remainder of the Plan's annuity funds, over $30 million, with Symetra. *Id*. ¶ 39. It was, therefore, in Symetra Life's and Symetra Financial's self-interest to turn a blind eye to Dr. Harris' continued and flagrant mismanagement of Plan funds so that he would keep the majority of the Plan's annuity funds with Symetra Life. *Id*. ¶ 41.

As a result of Symetra Life's and Symetra Financial's failure to implement controls to provide notice of potential misconduct on the part of a trustee to the employer, AMEC suffered substantial damages. *Id*. ¶ 42. AMEC has suffered significant reputational and structural harm as a result of Symetra Life's and Symetra Financial's negligence. *Id*. ¶ 43. The full extend of the harm to the Church's reputation is not yet known. *Id*. The Church has already experienced reduced tithing, shrinking membership, and the resignation of clergy. *Id*. The Church has also been named as a defendant in the MDL action brought by its own pastors and bishops, litigation which threatens the unity of the denomination. *Id*. ¶ 44.

The Church has also suffered financial harm as a result of Symetra Life's and Symetra Financial's negligence. *Id*. ¶ 45. As a result of the Symetra Life and Symetra Financial's negligence and the losses suffered by the Plan, the Church is using its own funds to shore up the Plan fund. *Id*. AMEC's financial damages are significant and ongoing. *Id*. ¶ 46. The Church must replenish the Plan funds that were lost due to the negligence of Symetra Life and Symetra Financial and has incurred and will continue to incur the costs of litigation. *Id*. In addition to the

harm to the Church, the Plan has also suffered significant financial damage.  *Id*. ¶ 47.  But for Symetra Life's and Symetra Financial's negligent failure to notify AMEC of any of Dr. Harris' alarming withdrawals and transfers over the course of its twenty-year relationship with AMEC, AMEC and the Plan would not have been damaged—or at least they would have been able to mitigate some of these damages.  *Id*. ¶ 48.  From these premises, AMEC would hold both companies liable for negligent misrepresentation, breach of fiduciary duty, simple negligence, and punitive damages.

## II.     Procedural History

In early 2022, Plaintiffs filed six civil actions against AMEC and others across several United States District Courts: *Rev. Pearce Ewing v. African Methodist Episcopal Church et al.*, No. 2:22–cv–02136–JTF–atc (W.D. Tenn. Mar. 4, 2022); *Charles R. Jackson v. Newport Group, Inc. et al.*, No. 2:22–cv–02174–JTF–atc (W.D. Tenn. Mar. 22, 2022); *Rev. Cedric V. Alexander v. Rev. Dr. Jerome Harris et al.*, No. 8:22–cv–00707–PJM (D. Md. Mar. 22, 2022); *Phillip Russ, IV et al. v. Newport Group, Inc.*, No. 3:22–cv– 00375–BJD–LLL (M.D. Fla. Mar. 31, 2022); *Rev. Derrell Wade et al. v. Newport Group et al.*, No. 3:22–cv–00179–DN (E.D. Va. Apr. 1, 2022); *Rev. A. Offord Carmichael, Jr. et al. v. Rev. Dr. Jerome Harris et al.*, No. 3:22–cv–00386–UA–JLW (M.D.N.C. May 19, 2022).[1]

Plaintiff Rev. Pearce Ewing moved under 28 U.S.C. § 1407 to consolidate all proceedings

---

[1] The Complaints in *Ewing*, *Jackson*, and *Russ* each named  Symetra Financial Corporation and Symetra Life as Defendants.  *Carmichael* and *Alexander* named only Symetra Life; *Wade* named only Symetra Financial.  Once the cases went to MDL and were assigned to this Court for all further pretrial proceedings, Plaintiffs amended their pleadings to allege all claims in a single pleading against all Defendants, the Consolidated Amended Complaint – Class Action (ECF No. 74).  The Amended Complaint did not name Symetra Financial as a Defendant.

in the Western District of Tennessee.  On June 2, 2022, the Panel on Multidistrict Litigation transferred the civil actions to this Court, finding that consolidation would "serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation." MDL Transfer Order 1, June 2, 2022 (ECF No. 1).  The Panel further found that consolidation in this District was appropriate since the AMEC Department of Retirement Services has its principal place of business in this District and the Rev. Dr. Jerome V. Harris, the former trustee of the Plan, resides in this District. *Id*. at 2.

On June 22, 2022, the Court entered a Practice and Procedure order to govern all further proceedings.  *See* Practice & Proc. Order, June 22, 2022 (ECF No. 8). The Court held its initial case management conference with counsel for the parties on August 4, 2022, and approved the case management deadlines proposed by the parties.  On August 25, 2022, the Court entered a case management order (ECF No. 78), setting forth the deadlines discussed at the initial conference. Among other things, the Court gave the parties until August 30, 2023, to complete all fact discovery, and February 9, 2024, to complete expert discovery.  The Court also set March 26, 2024, as Plaintiffs' deadline to file a motion for class certification and the deadline for all parties to file dispositive motions and *Daubert* motions.  On January 25, 2024, the Court extended the deadline to complete written discovery to July 20, 2024, the deadline to complete expert discovery to December 20, 2024, and the deadline for Plaintiffs to file their motion for class certification to January 20, 2025.  Order Partially Granting Mot. to Extend, Jan. 25, 2024 (ECF No. 330).  The Court has continued to hold status conferences with counsel for the parties approximately every 60 days.

The Court has thoroughly discussed the allegations of Plaintiffs' Amended Complaint in

its previous orders and need not review them in full here.  Briefly, the Amended Complaint alleged a number of claims under Tennessee law against AMEC, Symetra Life Insurance Company, and Newport Group, among others.  AMEC, Symetra Life, and Newport filed separate motions to dismiss challenging the sufficiency of Plaintiffs' Amended Complaint.  In an order dated March 17, 2023, the Court held that the Amended Complaint had plausibly alleged Plaintiffs' standing and stated plausible claims for relief against AMEC, Symetra Life, and Newport.  *See* Order on Mots. to Dismiss Consolidated Am. Compl. – Class Action, Mar. 17, 2023 (ECF No.  197).

AMEC, Symetra Life, and Newport deny the allegations of Plaintiffs' Amended Complaint and have filed Rule 13 cross-claims against each other. Fed. R. Civ. P. 13(g) ("A pleading may state as a crossclaim any claim by one party against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim, or if the claim relates to any property that is the subject matter of the original action.").  AMEC initially filed a Partial Answer to the Amended Complaint as well as Cross-Complaint (ECF No. 116) on October 18, 2022.  The Church's original pleading stated a crossclaim against Symetra Financial, which was not a party to the action at that time.  In response to the Church's Cross-Complaint, both Symetra Life and Symetra Financial jointly filed a motion to dismiss (ECF No. 154) on November 23, 2022.  When the Court subsequently granted the Church leave to amend its pleading, in part so that AMEC could properly name Symetra Financial in a Third-Party Complaint, the Court denied the motion to dismiss the Church's initial Cross-Complaint as moot.  Order Granting AMEC's Mot. for Leave to File Update Pleading, June 22, 2023 (ECF No. 242); *see also* Fed. R. Civ. P. 14(a)(1) ("A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it.").

7

The Church then filed its Amended Answer, Cross-Complaint, and Third-Party Complaint (ECF No. 256).  The Church's Amended Answer, Cross-Complaint, and Third-Party Complaint named Symetra Life as one of the Cross-Defendants and Symetra Financial as a Third-Party Defendant.  Symetra Life's Answer and Cross-Complaint (ECF No. 214) named AMEC as a Cross-Defendant.  Both AMEC and Symetra Life then filed motions on the arbitrability of their cross-claims based on an arbitration agreement found in a 2003 Recordkeeping Services Agreement ("2003 RSA"), one of the contracts between the Church and Symetra Life which Symetra alleges the Church has breached.  After the parties had fully briefed the issues and presented oral argument on their motions, the Court entered an order on December 11, 2023, denying the Church's motion to dismiss Symetra Life's cross-claims against it and granting Symetra Life's motion for a mandatory stay of the proceedings pursuant to § 3 of the Federal Arbitration Act, 9 U.S.C. § 3, pending arbitration between AMEC and Symetra Life of certain gateway issues of arbitrability.  Order Denying AMEC's Mot. to Dismiss, Granting in Part and Denying in Part Symetra Life's Motion to Stay, and Granting Symetra Life's Motion to Stay AMEC's Cross-claims, Dec. 11, 2023 (ECF No. 316).  Symetra Life had commenced arbitration on July 26, 2023, and the Court held that § 3 of the FAA required a stay of the proceedings on the cross-claims between AMEC and Symetra Life.  The Court held, however, that Symetra Life had not shown cause for a stay of the proceedings, either a mandatory stay under § 3 or a discretionary stay pursuant to the Court's inherent power over its docket, as to Plaintiffs' claims against Symetra Life.  While certain threshold questions of arbitrability of the cross-claims between AMEC and Symetra Life must go to arbitration, the rest of the parties' dispute continues as part of the MDL.

### III.   Symetra Financial's Motion to Dismiss for Lack of Personal Jurisdiction and Lack of Subject-Matter Jurisdiction

Symetra Financial now seeks the dismissal of AMEC's third-party claims against it, either for lack of personal jurisdiction or subject-matter jurisdiction. Symetra Financial's argument concerning the lack of jurisdiction proceeds along three lines. First, as a factual matter, AMEC cannot show that Symetra Financial was the company with which AMEC conducted any business. Symetra Life, not Symetra Financial, actually issued the annuity contracts which are at issue between the Third-Party Plaintiffs and Symetra Life. Symetra Financial has furnished a declaration from Anne-Marie Diouf, a senior vice president and chief human resources officers for Symetra Life. According to the Diouf declaration, Symetra Life is a wholly owned subsidiary of Symetra Financial. Symetra Financial is a holding company organized under the laws of the state of Delaware. Symetra Financial is not an insurance company and sells no annuities. "Symetra Financial" was a registered service mark owned by Symetra Life and registered with the U.S. Patent and Trademark office from 2006 to 2017, when Symetra Life discontinued the use of the mark. During that time, employees of Symetra Life used the Symetra Financial service mark on company contracts, documents, and communications.

Based on the evidence presented in the Diouf declaration, Symetra Financial makes its second line of argument that personal jurisdiction over the company is lacking. AMEC has not alleged any facts to show that general personal jurisdiction exists in this case. Symetra Life is a Delaware corporation with its principal place of business in the state of Washington. Nor has AMEC alleged any facts to show that the Court has specific personal jurisdiction over Symetra Financial. The Third-Party Complaint does not allege any facts to demonstrate that Symetra Financial purposefully availed itself of the opportunity to conduct business in the state of

9

Tennessee or directed the flow of any product to Tennessee. Symetra Life, not Symetra Financial sold the annuity contracts to the AMEC. Likewise, AMEC has not shown a connection between its claims and Symetra Financial's activities in Tennessee. Because Symetra Financial was not a party to the annuity contracts and has no involvement in any investments, Symetra Financial has no connection to AMEC's claims about a breach of the annuity agreements. Symetra Financial simply has no connection to the forum. For each of these reasons, personal jurisdiction over Symetra Financial is lacking.

In a third line of jurisdictional argument, Symetra Financial contends that the Court lacks subject-matter jurisdiction over AMEC's third-party claims against it. AMEC has failed to allege all of the elements of standing to press its claims, specifically, the element of traceability. AMEC has alleged no facts to show that Symetra Financial caused any injuries because Symetra Financial did not sell the church the annuities. As an alternative grounds for relief in the event the Court rejects its jurisdictional challenges, Symetra Financial argues that a stay of the Church's third-party claims against it is warranted for the same reasons the Court stayed AMEC's cross-claims against Symetra Life.

The Third-Party Plaintiffs, AMEC and the Plan, have responded in opposition to Symetra Financial's Motion to Dismiss. In defense of their personal jurisdiction allegations, the Third-Party Plaintiffs Church argue that the Court has specific personal jurisdiction over Symetra Financial. Symetra Financial's Motion to Dismiss and the Diouf affidavit have not negated the factual allegations of the Third-Party Complaint. Symetra Financial had direct dealings with Dr. Harris, knew Dr. Harris was a Tennessee resident, knew the Plan was administered from Tennessee, and addressed correspondence to AMEC in Tennessee. This is enough to show that

Symetra Financial purposefully availed itself of the opportunity to conduct business in Tennessee and caused harmed in Tennessee. As for the Diouf declaration, AMEC points out that nothing in the statement addresses whether and to what extent Symetra Financial controlled or managed Symetra Life. In the Church's view, the declaration does not establish that Symetra Financial had no role in the management of the Plan's annuity business with Symetra Life. To the extent that the Court finds that Symetra Financial has properly negated the jurisdictional allegations against it, AMEC requests an opportunity conduct discovery on the jurisdictional question.

Turning to the issue of standing and subject-matter jurisdiction, AMEC contends that the Third-Party Complaint plausibly alleges traceability. The pleadings allege Symetra Financial's role in the transfer of millions of dollars of Plan assets and its failure to adopt proper controls to prevent or protect an institutional client like the Plan from the malfeasance of a trustee like Dr. Harris. Symetra Financial again relies on the Diouf declaration to establish that the company had no connection to the Church's annuity business with Symetra Life. However, Symetra Financial has not explained why documents and communications concerning the Plan's annuities frequently referred to Symetra Financial. The people with whom Dr. Harris dealt consistently represented that they worked for Symetra Financial. Just as with the personal jurisdiction issue, AMEC requests an opportunity to conduct limited discovery on Symetra Financial's involvement in the Plan's annuity business, in the event the Court considers the Diouf declaration to decide the standing question.

As for Symetra Financial's request to stay the proceedings as to the Church's third-party claims against it, AMEC responds that Symetra Financial has not cited any arbitration agreement to which it was a party. The Church has alleged the breach of common law duties under Tennessee

11

law against Symetra Financial.  Symetra Financial has not shown how those claims are intertwined with any agreement to arbitrate.  Therefore, AMEC argues the Court should deny Symetra Life's Motion to Dismiss.

Symetra Financial has filed a reply brief.  Symetra Financial reiterates its point that Symetra Financial was a brand and service mark of Symetra Life, which explains why the mark appeared on documents related to the Plan's annuity contracts with Symetra Life as well as headers and signature blocks in documents Symetra Life addressed to Dr. Harris.  Symetra Financial argues that the Church, as the party with the burden to prove personal jurisdiction, and not Symetra Financial, has failed to carry its burden.  For largely the same reasons, AMEC has not alleged an injury traceable to Symetra Financial because Symetra Financial had no business with the Church. Symetra Financial argues that AMEC's request for jurisdictional discovery remains speculative without some factual basis to support its theory of liability against Symetra Financial.

## STANDARD OF REVIEW

Symetra Financial's Motion to Dismiss makes two different jurisdictional arguments and therefore implicates two different legal standards. Symetra Financial's Motion to Dismiss first challenges the Court's personal jurisdiction over the company. Federal Rule of Civil Procedure 12(b)(2) permits a party to assert by motion (and not just in a responsive pleading) the defense of lack of personal jurisdiction.   Fed. R. Civ. P. 12(b)(2).   When a party challenges personal jurisdiction pursuant to Rule 12(b)(2), a plaintiff bears the burden of establishing the existence of jurisdiction.  *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 449 (6th Cir. 2012); *Serras v. First Tenn. Bank Nat'l Ass'n,* 875 F.2d 1212, 1214 (6th Cir. 1989).

A Rule 12(b)(2) challenge involves a burden shifting analysis.  *Sullivan v. LG Chem, Ltd.*,

79 F.4th 651, 660 (6th Cir. 2023).  A plaintiff must make "a prima facie case for personal jurisdiction" and typically satisfies that burden with the allegations of a complaint.  *Peters Broad. Eng'g, Inc. v. 24 Cap., LLC*, 40 F.4th 432, 437 (6th Cir. 2022) (quoting *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504 (6th Cir. 2020)).  The burden then shifts to the defendant contesting personal jurisdiction and requires the defendant to support its motion to dismiss with evidence.  *Id*.  The burden then comes back "to the plaintiff, 'who may no longer stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction.'" *Id*. at 437–38 (quoting *Malone*, 965 F.3d at 504).  The Court's task is to "view the pleadings and affidavits in a light most favorable to the plaintiff and not weigh the controverting assertions of the party seeking dismissal.'" *Id.* at 438 (quoting *Ingram Barge Co., LLC v. Zen-Noh Grain Corp.*, 3 F.4th 275, 278 (6th Cir. 2021)).

In considering a Rule 12(b)(2) motion, the Court may proceed in three ways: "it may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions."  *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 899 (6th Cir. 2017) (quoting *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)).  Where a district court rules on the jurisdictional question without holding an evidentiary hearing, the burden on the plaintiff is "relatively slight."  *Id*. (quoting *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007)).

A *prima facie* showing that personal jurisdiction exists means that the plaintiff must set forth specific facts to support a finding of jurisdiction by a preponderance of the evidence.  *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012) (citing *Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 510 & n.3 (6th Cir. 2006)).  The pleadings and affidavits submitted must be viewed in a

13

light most favorable to the plaintiff, and the district court should not "consider facts proffered by the defendant that conflict with those offered by the plaintiff." *PT Pukuafu Indah v. U.S. Sec. & Exch. Comm'n*, 661 F.3d 914, 920 (6th Cir. 2011). "Dismissal is proper only if [the plaintiff's] alleged facts collectively fail to state a prima facie case for jurisdiction." *Carrier Corp.*, 673 F.3d at 449 (quoting *Theunissen,* 935 F.2d at 1459) (internal quotation marks omitted).

Symetra Financial's Motion to Dismiss also challenges the Court's subject-matter jurisdiction. Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a party to move for the dismissal of an action for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(1) motion can raise a facial challenge to the sufficiency of the pleadings and the allegations going to the elements of standing, or a factual attack based on the evidence establishing standing. *Assoc. of Am. Physicians & Surgeons v. United States Food & Drug Admin.*, 13 F.4th 531, 543 (6th Cir. 2021) (citing *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007)). "A party raising a facial challenge argues that a complaint does not adequately plead standing even accepting its facts as true." *Id.* (citing *Mosley v. Kohl's Dep't Stores, Inc.*, 942 F.3d 752, 756 (6th Cir. 2019)).

The Constitution limits the jurisdiction of the federal courts to a "Case" or "Controversy." U.S. Const., art. III, § 2, cl. 1. "To establish a 'case,' a plaintiff must show that the plaintiff has suffered an injury, that the defendant's conduct likely caused the injury, and that the relief sought will likely redress the injury." *Assoc. of Am. Physicians & Surgeons*, 13 F.4th at 537 (citing *TransUnion, LLC v. Ramirez*, 141 S. Ct. 2190, 2203, 210 L.Ed.2d 568 (2021)). At the pleadings stage, a plaintiff has the burden to make plausible allegations going to each of these elements. *Id.* at 543–44 (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

Furthermore, a plaintiff must "demonstrate standing for each claim [it] seeks to press and for each form of relief that is sought," *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 439, 137 S.Ct. 1645, 198 L.Ed.2d 64 (2017), because "standing is not dispensed in gross." *Lewis v. Casey*, 518 U.S. 343, 358 n.6, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (citation omitted).

Symetra Financial specifies that its Motion to Dismiss is a factual challenge to the Church's standing to sue it for damages, though Symetra Financial also argues that the allegations of the Third-Party Complaint do not plausibly allege traceability. Where there is a factual challenge to standing, the Court may consider evidence outside the pleadings to resolve factual disputes and must weigh the evidence. *Global Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co., Ltd.*, 807 F.3d 806, 810 (6th Cir. 2015) (citing *Carrier Corp. v. Outokumpu Oyj,* 673 F.3d 430, 440 (6th Cir. 2012)). The burden remains with the party invoking federal jurisdiction to prove that jurisdiction exists. *Id.*

## ANALYSIS

The issue presented is whether the Court has jurisdiction, either personal jurisdiction over Symetra Financial or subject-matter jurisdiction over AMEC's claims that the Church suffered an injury traceable to Symetra Financial. Symetra Financial's subject matter jurisdiction argument goes to the Church's Article III standing. Standing is an essential element of a federal court's jurisdiction. *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 861 (6th Cir. 2020), which courts almost always treat "as a threshold matter." *Kanuszewski v. Mich. Dept. of Health & Human Servs.*, 927 F.3d 396, 405 (6th Cir. 2019) (citing *Nikolao v. Lyon*, 875 F.3d 310, 315 (6th Cir. 2017)). The Supreme Court has remarked nevertheless that "there is no mandatory sequencing of jurisdictional issues," meaning a court may take up personal jurisdiction before subject-matter

15

jurisdiction.  *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 431, 127 S.Ct. 1184, 1191, 167 L.Ed.2d 15 (2007) (quoting *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 584, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999)).  Because Symetra Financial raised lack of personal jurisdiction as its primary argument, the Court will address it first.

**I. Personal Jurisdiction over Symetra Financial**

"Federal courts start with state law in determining whether they have personal jurisdiction over a defendant in a diversity case." *Johnson v. Griffin*, 85 F.4th 429, 432 (6th Cir. 2023) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 125, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014); and Fed. R. Civ. P. 4(k)(1)(A)).  The Tennessee Long-Arm Statute subjects non-residents to the jurisdiction of Tennessee state courts "as to any action or claim for relief arising from the transaction of any business within the state;" or "any tortious act or omission within this state;" or "any basis not inconsistent with the constitution of this state or the United States."  Tenn. Code Ann. § 20–2–214(a)(1), (2), & (6).  The Due Process Clause of the Fourteenth Amendment cabins the authority of state courts to extend their jurisdiction over out-of-state defendants. *Id*. (citing *Walden v. Fiore*, 571 U.S. 277, 283, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014)).  The Sixth Circuit has interpreted Tennessee's long-arm statute to be "coterminous with the limits on personal jurisdiction imposed" by the Fourteenth Amendment.  *Payne v. Motorists' Mut. Ins. Cos.*, 4 F.3d 452, 455 (6th Cir. 1993)).  Consequently, "the jurisdictional limits of Tennessee law and of federal constitutional law of due process are identical." *Id*.

Personal jurisdiction over a nonresident defendant arises from "certain minimum contacts with [the forum] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)).

16

"Personal jurisdiction falls into two categories: general and specific." *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 501 (6th Cir. 2020) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011)). "General jurisdiction exists when the defendant's affiliations with the forum state are 'so continuous and systematic as to render the defendant essentially at home' there." *Sullivan*, 79 F.4th at 660 (quoting *Brown*, 564 U.S. at 919).

The Court finds that even viewing the record in a light most favorable to Church, there is no general jurisdiction over Symetra Financial. In this case, the Court is reaching the personal jurisdiction issue based only on the pleadings and the parties' submissions. Symetra Financial has introduced a declaration made under penalty of perjury, and AMEC has filed a copy of its annuity contract with Symetra Life. Under the circumstances, the Court must "view the pleadings and affidavits in a light most favorable to the plaintiff and not weigh the controverting assertions of the party seeking dismissal." *Peters Broad. Eng'g*, 40 F.4th at 438. The Third-Party Complaint alleges that Symetra Financial Corporation is a Delaware corporation with its headquarters in the state of Washington. Third-Party Compl. ¶ 12. The company's contacts with Tennessee are not so continuous and systematic as to render it at home in this state. Therefore, general personal jurisdiction is lacking.

In the absence of general jurisdiction, AMEC must show that the Court has specific jurisdiction over Symetra Financial. "Specific jurisdiction depends on an 'affiliation between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Malone*, 965 F.3d at 502. In other words, the question of specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284, 134 S.Ct. 1115, 188 L.Ed.2d

12 (2014). The Sixth Circuit has adopted a three-part test to determine whether jurisdiction comports with due process. *Means v. U.S. Conf. of Catholic Bishops*, 836 F.3d 643, 649 (6th Cir. 2016) (citing *S. Mach. Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir. 1968)). In order to show that specific personal jurisdiction exists, the Court must find (1) purposeful availment "of the privilege of acting in the forum state or causing a consequence in the forum state," (2) a "cause of action . . . aris[ing] from activities" in the state, and (3) a "substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Id.* (quoting *Southern Machine*, 401 F.2d at 381).

The "purposeful availment" prong of the *Southern Machine* test is an "essential" prerequisite for a court to exercise specific jurisdiction over a non-resident party. *Means v. U.S. Conf. of Catholic Bishops*, 836 F.3d 643, 649 (6th Cir. 2016); *Southern Machine*, 401 F.2d 381–82 (describing the purposeful availment prong as a "*sine qua non*" of specific personal jurisdiction). In any case, "the defendant's conduct and connection with the forum" must be "such that he 'should reasonably anticipate being haled into court there.'" *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). "[R]andom, fortuitous, or attenuated contacts" with the forum state will not do. *Walden*, 571 U.S. at 286. "In the Sixth Circuit, the emphasis in the purposeful availment inquiry is whether the defendant has engaged in some overt actions connecting the defendant with the forum state." *Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 506 (6th Cir. 2014) (citing *Fortis Corporate Ins. v. Viken Ship Mgmt.*, 450 F.3d 214, 218 (6th Cir. 2006)).

Viewing the record in a light most favorable to AMEC and disregarding facts adduced by Symetra Financial that conflict with those offered by AMEC, AMEC has made a prima facie showing that Symetra Financial Corporation purposefully availed itself of the privilege of doing

18

business in the state of Tennessee.  The Church has plausibly alleged that a corporate predecessor of Symetra Life, which is a subsidiary of Symetra Financial, entered into an annuity contract with the denomination's employee retirement Plan in 2001.  Third-Party Compl. ¶¶ 5, 27.[2]  Dr. Harris, a Tennessee resident, was the Executive Director of the AMEC Department of Retirement Services, and the trustee of the Plan.  AMEC has admitted in its Answer, which is part of the same pleading containing its Third-Party Complaint against Symetra Financial, that the denomination has its offices in Nashville, Tennessee, and its Department of Retirement Services has its office in Memphis, Tennessee.  Answer ¶¶ 30, 36.

In his capacity as trustee and Executive Director, Dr. Harris initially invested $49.5 million in Plan funds in Symetra Life annuities, an investment the Church intended to be conservative, low-risk, and consistent with the long-term goals of its employee retirement plan.  Over nearly next two decades that followed, however, Symetra Life and Symetra Financial carried out multiple orders from Dr. Harris to transfer millions of dollars in Plan assets to other companies and investments, even after raising concerns with Dr. Harris about possible conflicts of interest.  The Third-Party Plaintiffs allege Symetra Financial (along with Symetra Life) breached fiduciary and common law duties to the Church and the Plan and that their tortious conduct was likely to and actually did cause injuries in Tennessee.  The Plan's initial $49.5 million investment from 2001 was worth only $30 million by 2021, due at least in part to Symetra Life and Symetra Financial turning a blind eye to Dr. Harris' activities.  The Church alleges that the tortious conduct of

---

[2] AMEC has also produced a copy of the Church's Group Fixed Annuity contract with Symetra Life from 2007.  AMEC does not allege the Church had a contract with Symetra Financial. Even if it had, "the mere existence of a contract" does not confer specific personal jurisdiction over the out-of-state party.  *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir. 2000).

Symetra Life and Symetra Financial has caused significant financial and reputational harm to the denomination.

Based on its alleged business relationship with the Plan and the Church's Department of Retirement Services, its ongoing communications with Dr. Harris and execution of transactions directed by Dr. Harris, and the long-running contacts with Dr. Harris and the Plan centered in the State of Tennessee, the Court concludes that Symetra Financial purposefully availed itself of privilege of doing business in Tennessee. The same allegations show that the Third-Party claims of AMEC and the Plan arise out of Symetra Financial's activities within the State of Tennessee. Symetra Financial allegedly carried out orders made by Dr. Harris for the disposition of tens of millions of dollars in Plan assets and by doing so breached duties to the Church and the Plan. This more than demonstrates a "substantial enough connection with the forum state to make the exercise of jurisdiction over" Symetra Financial reasonable. *Southern Machine*, 401 F.2d at 381. The Court concludes that specific jurisdiction over Symetra Financial exists in this case.

Symetra Financial does not dispute that Symetra Life had a long-standing course of business with AMEC centered in the state of Tennessee. Symetra Financial just denies that Symetra Life's contacts with Tennessee are in any way attributable to Symetra Financial. Symetra Financial had no contractual relationship with AMEC or any other customer in Tennessee and undertook no legal duties to the Church or the Plan. And the fact that Bob Follette, an employee of Symetra Life, communicated with Dr. Harris by email bearing the "Symetra Financial" mark does not change the fact that Symetra Financial had no role in the Church's business with Symetra Life. Symetra Financial has come forward with proof tending to show that "Symetra Financial" was a service mark used by Symetra Life and registered with the U.S. Patent and Trademark Office from 2006 to 2017. Symetra Financial contends then that any document or communication bearing

the mark "Symetra Financial" was just that, a branding tool or logo. Symetra Life's use of the name "Symetra Financial" did not mean Symetra Financial, the Delaware corporation, had a role in the management of AMEC's annuity account with Symetra Life.

At the pleadings stage and without conducting a plenary evidentiary hearing to make a full determination of the question, the Court holds that AMEC has satisfied its relatively modest burden to establish the Court's specific personal jurisdiction over Symetra Financial. The Church alleges in its Third-Party Complaint not just that the "Symetra Financial" mark appeared on its contract with Symetra Life. The Church goes further and alleges that Symetra Financial, the Delaware corporation, was the parent company of Symetra Life and owed the Church certain duties under Tennessee law in the conduct of the Plan's annuity business with Symetra Life, specifically that Symetra Financial should have had checks in place as a safeguard for activities like those carried out by Dr. Harris and that if Symetra Financial had them, the company failed to enforce them, all for its own financial gain. Other than demonstrating that Symetra Life and Symetra Financial were two distinct but related corporate entities, Symetra Financial Corporation has not negated the Third Party Complaint's allegations about duties owed by Symetra Financial to the Third-Party Plaintiffs and its breach of those duties. Accepting the truth of the Church's allegations and disregarding the facts to the contrary adduced by Symetra Financial, AMEC has made a *prima facie* showing that Symetra Financial had sufficient minimum contacts with Tennessee, such that the Court can exercise specific personal jurisdiction over the company. Symetra Financial's Motion to Dismiss is **DENIED** without prejudice to raise the issue of personal jurisdiction in a later dispositive motion, once the parties have developed a more complete evidentiary record.

## II.  Subject-Matter Jurisdiction and AMEC's Standing to Sue

The next issue presented is whether AMEC has plausibly alleged some injury fairly

traceable to Symetra Financial, an allegation to support the Church's standing to sue Symetra Financial.  For purposes of an Article III standing analysis, "the relevant inquiry is whether the plaintiffs' injury can be traced to allegedly unlawful conduct of the defendant . . . ." *Collins v. Yellen*, 141 S.Ct. 1761, 1779, 210 L.Ed.2d 432 (2021) (quoting *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)).  While there must exist a causal connection between the plaintiff's injury and the defendant's conduct, traceability is not the same thing as proximate causation.  *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6, 134 S.Ct. 1377, 188 L.Ed.2d 392 (2014) ("Proximate causation is not a requirement of Article III standing . . . .").  "The standard for establishing traceability for standing purposes is *less demanding* than the standard for proving tort causation."  *Buchholz*, 946 F.3d at 866 (emphasis in original) (citing *Pub. Interest Research Grp. of N.J., Inc. v. Powell Duffryn Terminals Inc.*, 913 F.2d 64, 72 (3d Cir. 1990)).  "At the pleading stage, the plaintiff's burden of alleging that their injury is fairly traceable to the defendant's challenged conduct is relatively modest."  *Id.* (quoting *Bennett v. Spear*, 520 U.S. 154, 171, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997)) (cleaned up).

Viewing the allegations in a light most favorable to AMEC, the Third-Party Complaint plausibly alleges an injury traceable to Symetra Financial.  As the Court has already noted, the Church has alleged both Symetra Life and Symetra Financial had a duty to put proper controls in place to protect an institutional client like the Church's retirement Plan from the self-dealing of its trustee.  AMEC alleges that Symetra Financial supplied false information or failed to supply information at all to the Church in the course of Symetra's business with the Church and the Plan and that the Church relied on Symetra Financial to its detriment.  Third-Party Compl. ¶¶ 121-24. The Third-Party Plaintiffs also allege that Symetra Financial's acts and omissions constitute a breach of its fiduciary duties to the Plan and the Church, *id.* ¶¶ 133, 136-7, as well as its common

law duty of care.  *Id.* ¶¶ 140-45.  These allegations plausibly allege a causal connection, that is, traceability, between Symetra Financial's conduct and the Church's injuries.

At the pleadings stage, Symetra Financial does not just challenge the sufficiency of the Third-Party Complaint's standing allegations.  Symetra Financial raises a factual attack on the truth of the allegations and has introduced the declaration of Anne-Marie Diouf, a senior vice-president of Symetra Life.  Symetra Financial has also provided what appears to be a screenshot from the website of the United States Patent and Trademark Office, showing that "Symetra Financial" was a service mark registered by Symetra Life from August 8, 2006, to March 10, 2017. A close reading of the Diouf declaration, however, does not directly dispute the allegations of the Third-Party Complaint against Symetra Financial.  Diouf confirms that Symetra Life is a wholly subsidiary of Symetra Financial, that Symetra Life issued the annuities to the Plan, and that Symetra Life employee communications and contracts used "Symetra Financial" as a service mark from 2006 to 2017.  The declaration does not actually deny the Church's theory that Symetra Financial Corporation had fiduciary and common law duties to the Plan and the Church or the Church's allegation that Symetra Financial negligently misrepresented information, either by furnishing false information or omitting material information, to the Church.  The Court concludes that Symetra Financial's factual challenge to the Church's standing is not persuasive.  Therefore, Symetra Financial's Motion to Dismiss for lack of subject-matter jurisdiction is **DENIED** without prejudice to the company's right to renew the challenge in a later dispositive motion.

## III.    Stay of Proceedings on AMEC's Claims Against Symetra Financial

Having satisfied itself that the Court has personal jurisdiction over Symetra Financial and subject-matter jurisdiction over AMEC's claims against Symetra Financial, the next issue presented is whether the Court should grant Symetra Financial's alternative request for a stay of

the proceedings while the Church and Symetra Life arbitrate their dispute.  Section 3 of the Federal Arbitration Act ("FAA"), a court must stay "the trial of the action" pending arbitration but only on motion of "one of the parties" and "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement."  9 U.S.C. § 3; *Arabian Motors Grp. W.L.L. v. Ford Motor Co.*, 19 F.4th 938, 941 (6th Cir. 2021).  Because Symetra Financial has not shown that it is party to an agreement with AMEC to arbitrate their dispute, a mandatory § 3 stay is not warranted.

Nevertheless, the Court will stay the proceedings on the Church's Third-Party Complaint against Symetra Financial as an exercise of the Court's discretion.  Because arbitrable disputes may also involve "persons who are parties to the underlying dispute but not to the arbitration agreement," the FAA "*requires* piecemeal resolution [of the dispute] when necessary to give effect to an arbitration agreement."  *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (emphasis in original).  In that case, the Supreme Court has noted in dicta, "it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration."  *Id.* at 20 n.23.  Such a stay is purely discretionary for the Court as a matter of docket control.  *Id.* (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55, 57 S.Ct. 163, 81 L.Ed. 153 (1936)).  This means district courts have discretion "to defer discovery or other proceedings pending the prompt conclusion of arbitration."  *Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 879 n.6, 118 S.Ct. 1761, 140 L.Ed.2d 1070 (1998) (citing *Landis*, 299 U.S. at 254-55).

In determining whether to stay the proceedings on the nonarbitrable claims of some parties while other parties proceed with arbitration on related claims, courts generally balance four factors:

> (1) whether piecemeal litigation of the nonarbitrable claims could result in
> inconsistent determinations of factual and legal issues to be determined by the

24

> arbitrator; (2) whether piecemeal litigation will be inefficient because the factual
> issues to be resolved in litigation overlap with those to be decided by the arbitrator;
> (3) whether the arbitrable issues predominate the lawsuit; and (4) whether the
> nonarbitrable claims are of questionable merit.

*Swift Enters., LLC v. TruNorth Warranty Plans of N. Am., LLC*, No. 1:21-cv-146, 2022 WL

19396072, at *12 (E.D. Tenn. Sept. 30, 2022) (citing 21 Williston on Contracts § 57:63 (4th ed.)).

The Court finds that the balance of these factors weighs in favor of a discretionary stay of the Third

Party Plaintiffs' claims against Symetra Financial.   AMEC and Symetra Life are already in

arbitration.   Two of the issues to be determined in the arbitration are (1) whether a contract binds

the Church and Symetra Life to arbitrate their dispute, and (2) if so, the scope of the issues and

claims between the Church and Symetra Life subject to arbitration.   Because these two questions

are reserved for the arbitrator and not the Court, there is no risk of inconsistent rulings on these

questions, should the multidistrict litigation proceed with the claims of the Church and the Plan

against Symetra Financial.

Even so, the arbitrator may go on to reach the merits of the dispute between Symetra Life

and AMEC.   As part of their most recent status report on the arbitration (ECF No. 333), Symetra

Life and AMEC indicate that the arbitrator has given the parties until March 8, 2024, to file a letter

brief requesting permission to file "a dispositive motion on the scope or validity of the arbitration"

"by setting forth the reasons the party believes the motion should be determined by the arbitrator

at this point in the proceeding."  Jt. Status Rep. on AAA Arb. 2, Feb. 20, 2024.   Once the parties

have been heard on such a request, the arbitrator will then decide how to proceed.   To the extent

that the arbitrator decides not to address threshold issues on the arbitrability of the dispute between

AMEC and Symetra Life first and instead proceeds to the merits, the parties could face a scenario

where AMEC and Symetra Financial are litigating their dispute in the MDL while AMEC and

Symetra Life are simultaneously arbitrating almost identical issues in a separate forum.

This also creates a risk of inefficiency in the two parallel proceedings, the arbitration between the Church and Symetra Life and the multidistrict litigation.  The fact that the Church and Symetra Life are in arbitration while the Church Symetra Financial are in this forum could result in duplication of effort.  Furthermore, the arbitrable issues between the Church and Symetra Life largely track the issues between the Church and Symetra Financial.  The Amended Cross-Complaint alleges nearly identical claims under nearly identical facts against both Symetra Life and Symetra Financial.  On the whole, the Court finds that the factors weigh in favor of a discretionary stay of the proceedings on AMEC's non-arbitrable claims against Symetra Financial.

## <u>CONCLUSION</u>

AMEC has carried its modest burden at the pleadings stage to show that the Court has specific personal jurisdiction over Symetra Financial.  Likewise, the Third-Party Complaint plausibly alleges an injury to AMEC and the Plan, which is fairly traceable to the acts and omissions of Symetra Financial.  Symetra Financial's factual challenge has not overcome those allegations.  Therefore, Symetra Financial's Motion to Dismiss is **DENIED**.  Because a discretionary stay of the proceedings between AMEC and Symetra Financial is warranted, Symetra Financial's request for a stay of the proceedings is **GRANTED**.

**IT IS SO ORDERED**.

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date:  March 1, 2024.