**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION**

| | |
|---|---|
| **IN RE: AME CHURCH EMPLOYEE RETIREMENT FUND LITIGATION** | MDL Docket No. 1:22-md-03035-STA-jay<br><br>ALL CASES<br><br>Honorable S. Thomas Anderson |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS WITH AME
DEFENDANTS AND DEFENDANT NEWPORT GROUP, INC.**

## **TABLE OF CONTENTS**

INTRODUCTION .............................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND  ...................................................3

TERMS OF THE SETTLEMENT AGREEMENTS .....................................................7

LEGAL STANDARD ....................................................................................................14

ARGUMENT ..................................................................................................................16

    I.   The Proposed Settlements Satisfy Rule 23 and the Sixth Circuit's Standards for
       Preliminary Approval ...........................................................................................16

        A.  The Proposed Settlements Were Reached After Adequate Representation
            and Arm's-Length Negotiations ...................................................................16

        B.  The Proposed Settlements Provide Adequate Relief in Light of the
            Risks, Costs, and Length of Continued Litigation ......................................18

        C.  The Proposed Settlements Have No Obvious Deficiencies and Treat
            Class Members Equitably ............................................................................22

        D.  The UAW Factors ........................................................................................22

    II.  Plaintiffs' Responses to the Court's February 11, 2025 Questions ..........................24

    III. The Court Should Conditionally Certify the Proposed Class ....................................27

        A.  The Requirements of Rule 23(a) Are Satisfied .................................................27

        B.  The Proposed Settlement Class Satisfies Rule 23(b)(3) ..................................30

    IV. The Court Should Authorize Dissemination of Notice to the Class ...........................33

    V.  The Court Should Appoint Verita as Settlement Administrator...................................33

    VI. The Court Should Schedule a Fairness Hearing to Approve the Proposed
        Settlements ............................................................................................................34

CONCLUSION .................................................................................................................35

## INTRODUCTION

Plaintiffs respectfully move the Court for preliminary approval of two settlements reached with: (1) Defendants African Methodist Episcopal Church ("AME Church"), AMEC Ministerial Retirement Annuity Plan (the "Plan"), AMEC Department of Retirement Services, AMEC General Board, and AMEC Council of Bishops (collectively, the "AME Defendants");[1] and (2) Defendant Newport Group, Inc. ("Newport") in this matter. The AME Settlement and the Newport Settlement are the result of almost three years of hard-fought litigation, including two rounds of motion to dismiss briefing and thorough fact discovery (in particular the review of almost a million and a half pages of documents, over 50 depositions, and third-party discovery involving over 20 subpoenas for document productions). Both settlements resulted from multiple mediation sessions (three for each respective settlement) conducted by experienced, independent mediators. The AME Settlement fully resolves Plaintiffs' claims against the AME Defendants and the Newport Settlement fully resolves Plaintiffs' and the AME Defendants' claims against Newport. Both settlements preserve all claims against the Non-Settling Defendants.[2]

The AME Settlement, memorialized in the November 27, 2024 Class Action Settlement Agreement and Release (the "AME Agreement" or "AME Agmt."), *see* **Exhibit A**, requires the AME Defendants to pay $20,000,000 into a non-reversionary Qualified Settlement Fund held in trust for the sole benefit of the Settlement Class Members. Critically, the AME Settlement also

---

[1] Capitalized terms in this memorandum have the same meanings as they are defined in the AME Agreement and the Newport Agreement.

[2] "Non-Settling Defendants" means: Defendants Symetra Life Insurance Company ("Symetra"); Daniel Parrish of Parrish Law, LLC, Administrator Ad Litem of the Estate of Jerome V. Harris deceased; Robert Eaton; Financial Freedom Funds, LLC; Financial Freedom Group, Inc.; Financial Technologies, LLC; Motorskill Ventures, Inc.; Motorskill Ventures I, L.P.; Motorskill Asia Ventures 1, L.P.; Rodney Brown and Company; Trinity Financial Consultants, LLC; Sandra Harris; Day and Night Solar, LLC; Doe Corporations 1-10; and John Does 1-10.

requires the AME Church to implement significant changes to its supervision and operation of the Plan, including formally winding down and closing the AMEC Department of Retirement Services, transferring the current Plan funds to a Qualified Trust, and agreeing that the Plan be governed by the principles set forth in the Employee Retirement Income Security Act of 1974 ("ERISA") as of August 24, 2024.

The Newport Settlement, memorialized in the March 4, 2025 Class Action Settlement Agreement and Release (the "Newport Agreement" or "Newport Agmt."), *see* **Exhibit B**, requires Newport to pay $40,000,000 into a non-reversionary Qualified Settlement Fund held in trust for the sole benefit of the Settlement Class Members.

Additionally, because Class Counsel negotiated that both the AME and Newport Settlement Amounts be paid into an interest-bearing account prior to final approval of either settlement, Class Counsel estimates that the Settlement Amounts could earn over $1 million in interest prior to distribution to Settlement Class Members, bringing the total monetary value of the combined settlements to approximately $61 million. *See* Declaration of Matthew E. Lee ("Lee Decl.") (attached as **Exhibit C**) ¶¶ 39, 42. While the total amount of damages will be determined at trial against the Non-Settling Defendants, approximately $61 million in combined monetary relief represents an enormous step towards making the Class whole. These significant funds will go to Settlement Class Members much quicker than could be obtained through protracted litigation and will help Settlement Class Members meet their current and ongoing financial obligations without the delay, uncertainty, and cost of continued litigation. All told, approximately $61 million amounts to almost 69% of the more than $88 million difference between the represented value of the Plan (roughly $126 million) and the true value of the Plan in June of 2021 (roughly $38 million).

Plaintiffs respectfully submit that the Settlements each satisfy Rule 23 and Sixth Circuit

precedent and request that the Court: (1) grant preliminary approval of both the AME Settlement

and the Newport Settlement;[3] (2) hold that it will likely certify the Settlement Class; (3) approve

the long-form notices to Class Members, *see* **Exhibits D and E**, describing the terms of the AME

Settlement and the Newport Settlement and how Class Members can object to or opt-out of either

the AME Settlement and/or the Newport Settlement; and (4) schedule a final approval hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs, who are pastors and personnel of the AME Church, brought this case following

their discovery in the fall of 2021 that the value of the AMEC Ministerial Retirement Annuity Plan

was $88,489,163 less than had been represented to them just weeks prior. In the spring of 2022,

six different lawsuits were filed around the country against a number of defendants, including the

AME Defendants and Newport. AME Agmt. ¶¶ 1.7-1.8; Newport Agmt. ¶¶ 1.7-1.8. On June 2,

2022, the Judicial Panel on Multidistrict Litigation consolidated those actions into a single MDL

proceeding under the caption *In re AME Church Employee Retirement Fund Litigation*, No. 1:22-

md-03035-STA-jay, in the Western District of Tennessee. AME Agmt. ¶ 1.8; Newport Agmt. ¶ 1.8.

*Consolidated Amended Complaint.* Plaintiffs thereafter filed a Consolidated Amended

Complaint against the AME Defendants, Newport, and most of the Non-Settling Defendants on

August 19, 2022.[4] AME Agmt. ¶ 1.9; Newport Agmt. ¶ 1.9. Plaintiffs asserted the following causes

of action against the AME Defendants and Newport: (1) breach of fiduciary duty; (2) violation of

Tennessee Trust Code; (3) negligence; (4) fraudulent concealment; and (5) fraudulent

misrepresentation. AME Agmt. ¶ 1.9; Newport Agmt. ¶ 1.9. Plaintiffs also brought (1) breach of

---

[3] To avoid any confusion, Plaintiffs are filing a formal withdrawal of their prior motion for preliminary approval of the AME Settlement contemporaneously herewith. (ECF Nos. 627, 628).
[4] Three additional defendants, none of which have settled with Plaintiffs, were added to the Second Consolidated Amended Complaint filed in 2024. AME Agmt. ¶ 1.15.

contract; (2) promissory or equitable estoppel; and (3) tort of outrage claims against the AME Defendants. AME Agmt. ¶ 1.9. The AME Defendants answered Plaintiffs on the breach of fiduciary duty and negligence claims and moved to dismiss the rest. AME Agmt. ¶ 1.10. Newport moved to dismiss Plaintiffs' claims. Newport Agmt. ¶ 1.10. The AME Defendants cross-complained against Newport and others, asserting claims for breach of fiduciary duty and negligent misrepresentation. Newport Agmt. ¶ 1.9. Newport moved to dismiss the AME Defendants' claims. Newport Agmt. ¶ 1.10.

*Initial Mediation.* On February 6, 2023, Plaintiffs and the AME Defendants, along with Defendants Newport, Symetra, Dr. Harris, Robert Eaton, and Financial Freedom Group, mediated for the first time with the Honorable Janice M. Holder (Ret.), a former Chief Justice of the Tennessee Supreme Court. AME Agmt. ¶ 1.11; Newport Agmt. ¶ 1.11. That mediation was unsuccessful.

*Motion to Dismiss Opinion and Second Mediation between Plaintiffs and AME Defendants.* On March 17, 2023, the Court granted the AME Defendants' partial Motion to Dismiss, leaving Plaintiffs with only breach of fiduciary duty and negligence claims against the AME Defendants. AME Agmt. ¶ 1.12. The Court partially denied Newport's Motion to Dismiss Plaintiffs' and the AME Defendants' complaints, allowing their claims breach of fiduciary duty and negligence to proceed. Newport Agmt. ¶ 1.12. Following the motion to dismiss order, Plaintiffs and the AME Defendants mediated again with Justice Holder on May 4, 2023. AME Agmt. ¶ 1.13. Negotiations between Plaintiffs and the AME Defendants reached an impasse following this second mediation session. *Id.*

*AME Defendants' Amended Cross-Complaint*. On July 25, 2023, the AME Defendants filed an amended cross-complaint against Newport, alleging breach of fiduciary duty, negligence,

negligent misrepresentation, and punitive damages. Newport Agmt. ¶ 1.13. Newport moved to dismiss the AME Defendants' cross-complaint. *Id.* On February 28, 2024, the Court dismissed the AME Defendants' negligent misrepresentation and punitive damages claims against Newport. Newport Agmt. ¶ 1.14.

*Plaintiffs' Second Consolidated Amended Complaint*. On August 29, 2024, Plaintiffs filed a Second Consolidated Amended Complaint against Newport, the AME Defendants, and the Non-Settling Defendants. ECF No. 493. Plaintiffs asserted the following claims against Newport, derivatively on behalf of the Plan and on behalf of a putative class: (1) violation of Tennessee's Uniform Trust Code, (2) fraudulent concealment, (3) fraudulent misrepresentation, (4) negligence; (5) civil conspiracy, (6) aiding and abetting in a breach of fiduciary duty, and (7) professional negligence. *Id.* Newport partially moved to dismiss Plaintiffs' claims. ECF No. 521. Because Plaintiffs and the AME Defendants had not yet finalized the AME Agreement, Plaintiffs asserted four claims against the AME Defendants: (1) breach of fiduciary duty; (2) negligence; (3) fraudulent concealment; and (4) breach of contract. (ECF No. 493).

*AME Defendants' Second Amended Cross-Complaint*. On September 30, 2024, the AME Defendants moved for leave to file a Second Amended Cross-Complaint against Newport, which the Court granted. (ECF Nos. 539, 568). Thereafter, the AME Defendants filed a cross-complaint on November 5, 2024, bringing claims against Newport for (1) fraudulent concealment, (2) civil conspiracy to commit conversion, (3) civil conspiracy to commit intentional misrepresentation, (4) civil conspiracy to commit constructive fraud, (5) negligent misrepresentation, (6) professional negligence, (7) breach of fiduciary duty, and (8) aiding and abetting breach of fiduciary duty. (ECF No. 570). Newport moved to dismiss all of the AME Defendants' claims. (ECF No. 640). Newport's motions to dismiss were fully briefed and pending at the time of the Newport

Settlement.

*Discovery to Date.* The Parties engaged in substantial fact discovery from September 2022 to the beginning of 2025. Lee Decl. ¶¶ 13-22. Plaintiffs and the AME Defendants took more than 50 depositions of fact witnesses, received and reviewed nearly 1.5 million pages of documents, propounded numerous interrogatories, served nearly two dozen third-party subpoenas, and successfully unspooled the circumstances that led to the Class's losses. *Id.* Additionally, Plaintiffs and the AME Defendants served their initial expert disclosures on January 31, 2025. Lee Decl. ¶ 22. There are only a limited number of discovery disputes pending at the time of this filing.

*The AME Settlement.* On July 30, 2024, Plaintiffs and the AME Defendants mediated for a third time with Justice Holder. AME Agmt. ¶ 1.14. As part of the litigation and mediations with the AME Defendants, Plaintiffs investigated the AME Defendants' ability to fund any settlement or potential judgment. AME Agmt. ¶ 1.20. After the third mediation did not result in an agreement, Plaintiffs and the AME Defendants continued to negotiate at arm's length with the assistance of Justice Holder before finally reaching an agreement on the material terms of the AME Settlement. AME Agmt. ¶ 1.14; Lee Decl. ¶ 30.

The Settling Parties entered into a Memorandum of Understanding on August 24, 2024, AME Agmt. ¶ 1.17; Lee Decl. ¶ 30, and thereafter began negotiating the terms and substance of a long-form settlement agreement, Lee Decl. ¶ 44. On November 25, 2024, Plaintiffs and the AME Defendants jointly moved to dismiss Plaintiffs' claims against Defendants Bishop James L. Davis and Bishop Samuel L. Green without prejudice. (ECF No. 586). On November 27, 2024, the AME Agreement was executed, *see* AME Agmt. at 37-42, and on December 13, 2024, Plaintiffs initially moved for preliminary approval of the AME Settlement. (ECF No. 627).

*The Newport Settlement.* While Newport's motions to dismiss were pending, Plaintiffs, the

6

AME Defendants, and Newport resumed settlement discussions for the first time since the initial February 2023 mediation. Newport Agmt. ¶ 1.19; Lee Decl. ¶¶ 31-32. On December 12, 2024, the Settling Parties held a full-day, in-person mediation session led by experienced mediator A. Lee Parks in Atlanta, but no agreement was reached. Newport Agmt. ¶ 1.20.

After extensive discussions between Mr. Parks, counsel for Plaintiffs, the AME Defendants, and Newport following the December mediation, the Settling Parties mediated again virtually with Mr. Parks on January 31, 2025. Newport Agmt. ¶ 1.20; Lee Decl. ¶ 33. At the conclusion of this lengthy third mediation, Mr. Parks made a triple-blind "mediator's proposal" to the Settling Parties of $40 million which the Settling Parties each accepted by February 3, 2025. Newport Agmt. ¶ 1.21; Lee Decl. ¶¶ 33-36. On the morning of February 4, 2025, the Settling Parties entered into a Confidential Term Sheet, Newport Agmt. ¶ 1.22; Lee Decl. ¶ 36, and thereafter began negotiating the terms and substance of a long-form settlement agreement, Lee Decl. ¶ 36. The Newport Agreement was executed on March 4, 2025. *See* Newport Agmt. at 41.

## TERMS OF THE SETTLEMENT AGREEMENTS

The AME Agreement and the Newport Agreement contain several identical terms, regarding the class definition, the plan of distribution, and the class notice. The key terms from both Agreements are summarized below.

### 1. The Class Definition

The Class is composed of "all persons who were participants, or were those participants' respective beneficiaries entitled to benefits, in the African Methodist Episcopal Church Ministerial Retirement Annuity Plan on June 30, 2021. Defendants are excluded from the Class." AME Agmt. ¶ 2.6; Newport Agmt. ¶ 2.7.

2. **Monetary Settlement Benefits**

The AME Agreement provides that the AME Defendants will pay $20 million in cash adjusted to the present value as of August 2, 2024, through the date that the full amount is paid into the Qualified Settlement Fund, which is an interest-bearing tax-qualified escrow account established for receipt of settlement funds to be held in trust for the sole benefit of the Class Members. AME Agmt. ¶¶ 2.29, 2.23. The AME Settlement Amount will be paid in two installments: an Initial Deposit of $10 million by November 30, 2024,[5] and the remaining balance by no later than May 30, 2025. *Id.* ¶ 3.3.1. The AME Settlement Amount will not be funded in any way through assessments and/or budget raises to any local churches, annual conferences, or district conferences. *Id.* ¶ 3.3.1(b).

The Newport Agreement provides that Newport will pay $40 million in cash into the Qualified Settlement Fund no later than 14 days following preliminary approval of the Newport Settlement. Newport Agmt. ¶ 3.4.

In sum, the payment of the AME and Newport Settlement Amounts will comprehensively resolve all of Plaintiffs' claims asserted against the AME Defendants and Newport individually, derivatively on behalf of the Plan, and on behalf of the Class. Newport's $40 million payment will also resolve the AME Defendants' claims brought by the AME Defendants, although the AME Defendants will not receive any of the Settlement Amount.

3. **Plan of Distribution**

The AME Settlement Amount and the Newport Settlement Amount will be allocated in the same manner. Namely, they will be allocated pro rata to Settlement Class Members based on the ratio of the Settlement Class Member's account balance as of June 30, 2021 to the total value of

---

[5] The AME Defendants' Initial Deposit has been paid into the Qualified Settlement Fund.

all Settlement Class Member's account balances as of June 30, 2021, accounting for any distributions taken by participants between June 30, 2021 and the date that those balances were retroactively calculated. AME Agmt. ¶ 4.1; Newport Agmt. ¶ 4.1.1. Should any individuals opt-out of either or both Settlements, the proportional share of the Settlement Amount(s) that individual otherwise would have received would then be distributed pro-rata amongst the remaining Settlement Class Members.

Upon entry of an order granting Final Approval of the AME Settlement and the Newport Settlement, the Administrator will transfer the balance of the Qualified Settlement Fund (i.e., the AME and Newport Settlement Amounts, plus interest earned prior to distribution, less costs for notice and administration, attorneys' fees, costs, and service awards for the named Plaintiffs) to a Qualified Trust.[6] AME Agmt. ¶¶ 2.24, 2.15, 2.16; Newport Agmt. ¶¶ 4.2, 4.5.

The Qualified Trust is a trust account that has been established by the AME Church to operate the Legacy Fund.[7] AME Agmt. ¶ 2.15; Newport Agmt. ¶ 2.25. The funds held by the Qualified Trust will be invested by an independent professional investment advisor who is not an employee of the AME Church. AME Agmt. ¶ 2.2; Newport Agmt. ¶ 2.3. The AME Church has selected Disciplina Group LLC ("Disciplina") as the Advisor for the Qualified Trust. AME Agmt. ¶ 2.2; Newport Agmt. ¶ 2.3. Disciplina is an investment company based in Nashville, Tennessee that specializes in helping resource-constrained institutional investors manage their portfolios. The President and Chief Investment Officer of Disciplina is the former Chief Investment Officer of

---

[6] Plaintiffs intend for any and all other funds recovered in this Action to be deposited into the Qualified Trust detailed in both the AME Agreement and the Newport Agreement.

[7] "Legacy Fund" refers to the portion of the Plan as it existed prior to the AME Church establishing a new Plan with Wespath after this litigation commenced. AME Agmt. ¶ 2.15; Newport Agmt. ¶ 2.16. The assets in the Legacy Fund are those that were acquired when Dr. Harris was Executive Director of the Plan: the remaining Symetra annuities, real property in Key Marco, Florida, and recovery for loans on assets as asserted in this litigation. AME Agmt. ¶ 2.15.

Vanderbilt University's multi-billion-dollar endowment.[8] Disciplina will be a fiduciary of the Plan and will be required to maintain adequate insurance coverage in excess of $60,000,000. AME Agmt. ¶¶ 2.2, 4.4; Newport Agmt. ¶ 4.4.

The Administrator will oversee the transfer of the Net Settlement Amount from the Qualified Settlement Fund to the Qualified Trust. AME Agmt. ¶ 4.2; Newport Agmt. ¶ 4.2. For Participants that are eligible to take distributions, those Participants will be able to take distributions from the Qualified Trust of the Net Settlement Amount once the Settlement Amount has been transferred to the Qualified Trust, but "[i]n no event shall any Class Member be entitled to a distribution [of their pro-rata allocation of the Settlement Amount] prior to the transfer of the Settlement Amount to the Qualified Trust." AME Agmt. ¶ 4.1.2; Newport Agmt. ¶ 4.1.2. *See also* Lee Decl. ¶ 47(f). ***Settlement Class Members are not required to submit a claim to receive an allocation of their pro rata share of the Settlement Amounts.***

There is one small group of Settlement Class Members, totaling 15 people, who are not presently eligible to receive a full pro rata share of the Settlement Amounts because they took distributions of all or part of their respective plan balance from the Plan after June 30, 2021, but before the AME Church froze the Plan funds. Lee Decl. ¶ 55. Because they took a distribution in this timeframe, their retirement accounts were not subject to the same 70% reduction that followed the discovery that the true Plan value was $88 million lower than had been stated. *Id.* Accordingly, these Settlement Class Members will not recover anything until the Plan has recovered enough funds to, on a pro-rata basis with the rest of the Settlement Class Members, account for the distributions these individuals took during that short period of time in 2021. For 8 of the 15

---

[8] *See About Us – Our Team*, Disciplina Group LLC, https://disciplina.com/about (click on image on President & CIO Matthew W. Wright) (last visited March 4, 2025)

individuals, that won't occur until the Plan recovers $88,489,163 to reach the claimed June 30, 2021 level. These 15 individuals will receive a specific and separate Notice detailing the same as discussed more below. *Id. See* **Exhibit E**.

### 4. Non-Monetary Settlement Benefits from the AME Defendants

The AME Defendants have agreed to several business practice changes regarding the oversight and operation of the Plan. In particular, they have agreed to formally wind down and close the AMEC Department of Retirement Services and to transfer the Plan funds currently held at Symetra (to the extent permitted by federal tax law) to the Qualified Trust. AME Agmt. ¶¶ 3.4, 3.4.1(a)-(b), 3.4.2(a)-(b). The AME Defendants have agreed that no person or governing body of the AME Church will assess or accept any type of administrative, service, operational, management, or other such fee related to the Plan. The AME Defendants have also agreed that the Plan will be governed by the principles set forth in ERISA. *Id.* ¶¶ 3.4.2(c), (e). They implemented these changes as of August 24, 2024. *Id.* ¶¶ 3.4.3, 3.4.4. The AME Defendants also agreed to ensure the process by which contributions for the new retirement plan are received from the local churches and deposited with Wespath[9] is as quick, efficient, and direct as possible. *Id.* ¶ 3.4.5.

### 5. Class Notice

The AME Agreement and the Newport Agreement provide for a comprehensive Notice Plan to the Class. The Parties' chosen Administrator, Verita, will directly notify, via first class mail—and email to the extent possible—all Class Members of the Settlements. AME Agmt. ¶ 2.3; Newport Agmt. ¶ 2.10, 7.4. The AME Defendants provided Verita with access to records and

---

[9] Wespath is the investment entity that manages the AME Church's new retirement plan that was established in the aftermath of the catastrophic losses to the Plan and to which the contributions that are currently collected from local churches for AME Church employee retirement are transferred. Wespath is a general agency of The United Methodist Church and maintains one of the largest faith-based pension funds in the world.

reasonably available contact information for each Person believed to be a potential Class Member, including name, email address, last known mailing address, and participant account history and activity for the Plan. AME Agmt. ¶ 7.2; Newport Agmt. ¶ 7.2.

The Settling Parties' proposed long form notice details the monetary and non-monetary benefits of both Settlements, the process and deadlines for objecting to or opting out of either the AME Settlement and/or the Newport Settlement, and the date of the Final Approval Hearing. *See* **Exhibit D**.[10] Verita will also host key documents related to the litigation and the Settlement at www.amechurchretirementsettlement.com, including Plaintiffs' forthcoming Motion for Attorneys' Fees, Costs, and Service Awards. Verita will disseminate Class Notice not more than 30 days after preliminarily approval ("the Notice Date"). AME Agmt. ¶ 7.3; Newport Agmt. ¶ 7.3.

## 6. Objections and Opt-Outs

The AME Agreement gives Class Members the option to object to or opt out of the AME Settlement no later than sixty (60) dates following the Notice Date. AME Agmt. ¶¶ 2.17, 2.18, 8.0. The Newport Agreement gives Class Members the option to object to or opt out of the Newport Settlement no later than sixty (60) days following the Notice Date. Newport Agmt. ¶¶ 2.18, 2.19, 8.0. In other words, Class Members can object to or opt out of either or both Settlements. The proposed Class Notice clearly delineates the process by which Class Members can submit their Objections or Requests for Exclusion as to either or both Settlements. *See* **Exhibits D and E.**

## 7. Release of Claims

In exchange for the monetary relief and upon the Effective Date, Released Parties, as

---

[10] The separate, proposed long form notice for the 15 Class Members who took full or partial distributions after June 30, 2021, but before the Plan funds were frozen, is attached as **Exhibit E.** This notice is substantially the same as the one proposed as **Exhibit D**, but it includes a short explanation regarding when each of these individuals can expect to receive additional funds from this litigation.

identified in the AME Agreement and the Newport Agreement, will receive a release of any and all claims in this Action or relating to the allegations of this Action (the "Released Claims"), which includes any Unknown Claims that could possibly exist with respect to the subject matter of the Released Claims. The Released Parties do not include the Estate of Dr. Jerome Harris or any of the other Non-Settling Defendants. Importantly, the Agreement and the Release do not affect the rights of individuals in the Class who timely and properly submit a request for exclusion from the Settlement Class. *See* AME Agmt. ¶¶ 2.12, 2.25, 2.26, 10.1, 10.2, 10.7; Newport Agmt. ¶¶ 2.13, 2.26, 2.27, 10.1, 10.2, 10.7.

### 8. The Bar Order Provision in the Newport Agreement

The Newport Settlement Agreement provides that the Final Approval Order and Judgment to be entered by the Court will include a bar order prohibiting all parties to this lawsuit—including other Non-Settling Defendants—from asserting claims against Newport. *See* Newport Agmt. ¶¶ 2.6, 9.3.6. Newport's willingness to enter the Newport Settlement was contingent on it obtaining "complete peace" with respect to all pending and potential claims related to or arising out of the Action. Given that Plaintiffs and AMEC Defendants allege that Newport is a joint tortfeasor with Non-Settling Defendants, the bar order protects Newport from potential future claims from Non-Settling Defendants. *See* TN Code § 29-11-105. Importantly, however, the bar order in the Newport Agreement expressly allows a Non-Settling Defendant to attempt to use the Newport Agreement, upon motion and after any judgment is rendered against such Non-Settling Defendants, to reduce any judgment by the amount of Newport's settlement. *See id*.; see also TN Code § 29-11-107(d) ("Nothing in this section limits the ability of the trier of fact to allocate fault to a nonparty to the suit, including, but not limited to, an immune third party or a settling party, person, or entity. Allocations of fault to nonparties shall be used only to determine the liability of

named parties and shall not subject nonparties to liability in the action in which the allocation occurred or in any other action.").

### 9. Attorneys' Fees and Costs and Service Awards

Class Counsel intends to petition the Court for an award of attorneys' fees up to one-third of the combined Settlement Amounts including the additional interest earned prior to distribution and for an award of costs in the amount of approximately $1,200,000. Class Counsel also intends to petition the Court for service awards in the amount of $20,000 for each of the Named Plaintiffs. Class Counsel reserves the right to petition for additional awards of attorneys' fees, costs, or service awards from any future recovery from the Non-Settling Defendants. Any award for attorneys' fees, costs, or service awards shall be paid out of the Settlement Amounts. Newport Agmt. ¶ 5.1. The AME Defendants and Newport may choose to oppose some or all of Class Counsel's requests. Newport Agmt. ¶ 5.1. The Settlements are not contingent upon the Court granting Plaintiffs' Fee and Expense Application. AME Agmt. ¶ 5.2; Newport Agmt. ¶ 5.2.

### <u>LEGAL STANDARD</u>

Even following the 2018 amendments to the Federal Rules, Sixth Circuit precedent favors and encourages settlements—particularly in class actions and other complex matters where inherent costs, delays, and risks of protracted litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See, e.g.*, *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) ("*UAW*") (noting "the federal policy favoring settlement of class actions").

Pursuant to Rule 23(e), a class action settlement must be approved by the presiding court before it can become effective. Court approval proceeds in two steps: (1) preliminary approval of the proposed settlement and direction of notice to the class and (2) a final approval hearing, at

which the Court considers the fairness, adequacy, and reasonableness of the proposed settlement.

*See Thomsen v. Morley Cos., Inc.*, 639 F. Supp. 3d 758, 767 (E.D. Mich. 2022).[11]

At step one, the Court considers four factors under Rule 23(e)(2) to determine if the proposed settlement is "fair, reasonable, and adequate:"

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided the class is adequate, taking into account:

     i.    the costs, risk, and delay of trial and appeal;

     ii.    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

     iii.    the terms of any proposed award of attorneys' fees, including timing of payment; and

     iv. any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)-(D); *see also In re Family Dollar Stores, Inc., Pest Infestation Litig.*, 2023 WL 7112838, at *10 (W.D. Tenn. Oct. 27, 2023) (Lipman, C.J.).

The Sixth Circuit also considers seven *UAW* factors to determine if a class action settlement is "fair, reasonable, and adequate, many of which overlap with the Rule 23(e) factors." *Id.* at *10. They are: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent

---

[11] The process and analysis for preliminary approval is the same in a case where, as here, there are settling defendants and non-settling defendants. *See, e.g.*, *In re Flint Water Cases*, 499 F. Supp. 3d 399 (E.D. Mich. 2021) (granting preliminary approval of a settlement with certain defendants and allowing plaintiffs to proceed with litigation against non-settling defendants).

class members; and (7) the public interest. *UAW*, 497 F.3d at 631.

Finally, "Rule 23(e)(1)(B)(ii) directs a court to determine, at the preliminary approval stage, whether 'it will likely be able to . . . certify the class for purposes of judgment on the proposal.'" *Family Dollar*, 2023 WL 7112838, at *6 (quoting Fed. R. Civ. P. 23(e)(1)(B)(ii)).

## ARGUMENT

### I.    The Proposed Settlements Satisfy Rule 23 and the Sixth Circuit's Standards for Preliminary Approval.

The proposed Settlements satisfy the applicable Rule 23(e) factors as well as the Sixth Circuit's *UAW* factors and therefore should be preliminarily approved.

### A.    The Proposed Settlements Were Reached After Adequate Representation and Arm's Length Negotiation.

The first two Rule 23(e)(2) factors support preliminary approval. Class Counsel, in this case the Plaintiffs' Steering Committee appointed by the Court, are all qualified and experienced litigators of class actions and complex litigation. Lee Decl. ¶ 51. They, along with the named Plaintiffs, have vigorously prosecuted this lawsuit for almost three years and provided adequate representation in doing so to the Class. *Id.* ¶¶ 4-25. The AME Settlement was reached only after this lengthy and intensive litigation and after three mediations with an experienced mediator, Justice Holder of the Tennessee Academy of Mediators and Arbitrators. *Id.* ¶¶ 26-30. The Newport Settlement was reached only after this lengthy and intensive litigation and after one mediation with Justice Holder and two mediations with A. Lee Parks. *Id.* ¶¶ 26, 31-36.

During the more than two years of fact discovery and the beginning of expert discovery, Class Counsel exhaustively investigated the facts surrounding all of the Settling and Non-Settling Defendants' alleged roles in the loss to the Plan and the corresponding legal claims that Plaintiffs

had asserted against each of them. *Id.* ¶¶ 4-25.[12] Prior to reaching the AME Settlement, Class Counsel also examined the financial position of the AME Church and the collectability of any potential judgment against the AME Defendants.[13] Armed with a crucial understanding of the facts, after a third mediation, Plaintiffs and the AME Defendants agreed to the material terms of a settlement. *Id.* ¶¶ 26-30. Likewise, prior to reaching the Newport Settlement, Class Counsel had developed a full understanding of Newport's potential liability, bolstered by numerous depositions of Newport fact witnesses, expert analysis, and three arm's-length mediations. *See Family Dollar*, 2023 WL 7112838, at *10 (noting the settlement class counsel was "well-informed about the facts and strengths of the claims asserted" following "extensive fact discovery and multiple depositions").

The Settling Parties' negotiations were adversarial and conducted in the utmost good faith. "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008); *Bowers v. Windstream Ky. East, LLC*, Case No. 3:09-CV-440-H, 2013 WL 5934019, at *2 (W.D. Ky. Nov. 1, 2013). Furthermore, "[t]he participation of an independent mediator in the settlement negotiations virtually assures that the negotiations were conducted at arm's length and without collusions between the parties." *Gokare v. Fed. Express Corp.*, Case No. 2:11-CV-2131-JTF-CGC, 2013 WL 12094870, at *3 (Nov. 22, 2013) (quoting *Hainey v. Parrott*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007)). Because the Settlements "arose out of arms-length, non-collusive

---

[12] These facts also cover the third *UAW* factor, "the amount of discovery engaged in by the parties." *UAW*, 497 F.3d at 631.

[13] As explained on pages 24 and 25 of this Memorandum, Class Counsel has prepared a declaration detailing their investigation into the AME Defendants' ability to pay and requests permission to submit the declaration to the Court for in camera review, or to discuss Plaintiffs' assessment of the AME Defendants' ability to pay in chambers on March 18.

negotiations" conducted by two mediators—Justice Holder and Mr. Parks—the primary procedural factor is met and the Court may presume the Settlements are fair, adequate, and reasonable.[14] Wm. Rubinstein, *Newberg and Rubenstein on Class Actions* § 13.14 (6th ed. 2022).

**B.      The Proposed Settlements Provide Adequate Relief in Light of the Risks, Costs, and Length of Continued Litigation.**

Rule 23(e)(2)(C) requires a court to consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C).

*Rule 23(e)(2)(C)(i): The Costs, Risk, and Delay of Trial and Appeal*. The AME Settlement and the Newport Settlement represent an excellent result, particularly given the costs, risks, and delay of continued litigation against both the AME Defendants, Newport, and the Non-Settling Defendants. The combined monetary recovery—$60 million—is a "significant portion of the maximum potential damages." *Family Dollar*, 2023 WL 7112838, at *10. While the total amount of damages will be determined at trial with the Non-Settling Defendants,[15] the combined

---

[14] This encompasses the first *UAW* factor, the "risk of fraud or collusion." *UAW*, 497 F.3d at 631.

[15] Plaintiffs' damages expert opined that, based on his methodology and informed by Plaintiffs' accounting expert, the Plan's balance should have been $227 million higher than it was in June 2021. While the Non-Settling Defendants are sure to contest such a figure, it means that the $60 million is more than 25% of Plaintiffs' total damages. Courts routinely approve settlements achieving this (or a lower) percentage. *See, e.g.*, *Kohari v. MetLife Grp., Inc.*, 2025 WL 100898, at *10 (S.D.N.Y. Jan. 15, 2025) (collecting cases and holding that recovery of 19%-27% of total estimated losses "well within the range found to be fair and reasonable"); *Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, 2005 WL 1213926, at *9 (E.D. Pa. May 19, 2005) ($100 million settlement fund represented approximately 11.4% of total damages in antitrust action and collecting cases and holding that "this percentage compares favorably with the settlements reached in other complex class action lawsuits").

Settlement Amounts and their corresponding interest through disbursement equals almost 69% of the $88.4 million difference between the misrepresented value and the true value of the Plan that was discovered in 2021. Lee Decl. ¶¶ 37-39. Even factoring in Class Counsel's request for attorneys' fees up to one-third of the Settlement Amounts and costs in the amount of approximately $1,200,000, the combined net monetary relief to the Settlement Class still equals approximately 44.3% of the $88,489,163 difference in represented value of the Plan, especially factoring in the interest that will be earned prior to distribution. *Id.* ¶ 50.

"[A] gap between the maximum possible recovery and the award in this case is the nature of settlement, and does not indicate a lack of fairness, reasonableness, or adequacy." *Family Dollar*, 2023 WL 7112838, at *5 (approving settlement that provides class members with a "significant portion of the maximum potential damages"). Moreover, these partial settlements do not preclude continued litigation against the Non-Settling Defendants to determine the total amount of damages owed to Plaintiffs at trial and to collect those damages. Had the Settling Parties continued to litigate, the AME Defendants and Newport "would likely have asserted various arguments and defenses at class certification, summary judgment and/or trial, and a jury trial might well turn on questions of proof, many of which would be the subject of dueling expert testimony, particularly regarding causation and damages, making the outcome of such a trial uncertain for both parties."[16] *Family Dollar*, 2023 WL 7112838, at *11 (quoting *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003) ("*Cardizem II*") ("[t]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery" and that "no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable

---

[16] This Rule 23(e) factor covers the fourth *UAW* factor, the "likelihood of success on the merits." *UAW*, 497 F.3d at 631.

verdict")). Class Counsel are satisfied that the Settlement Amounts represent a significant recovery from the AME Defendants and Newport without the heightened risk of extensive delay or futility associated with in potentially trying to collect a judgment after trial or appeal.[17] Lee Decl. ¶¶ 25, 58.

"[T]he certain and immediate benefits to the Class represented by the Settlement outweigh the possibility of obtaining a better result at trial, particularly when factoring in the additional expense and long delay inherent in prosecuting this complex litigation through trial and appeal." *Cardizem II*, 218 F.R.D at 525. Potential delays in recovery are a particularly pressing matter for the Class due to fact that its losses are disproportionately concentrated among the Class's most elderly members (who participated in the Plan for the longest periods of time). For example, since the case was filed, one named plaintiff, Reverend A. Offord Carmichael, and an unknown number of Class Members have died while waiting to receive significant recovery.

***Rule 23(e)(2)(C)(ii): The Effectiveness of Any Proposed Method of Distributing Relief to the Class***. The proposed method of distributing relief from both Settlements is the gold standard—Settlement Class Members need not submit a claim, they will simply receive a pro rata share based on the portion of their account balance on June 30, 2021 (the last quarter before the true value of the Plan was revealed) as compared to the total value of all Class Member's account balances on the same date. AME Agmt. ¶ 4.1; Newport Agmt. ¶ 4.1. Other courts have agreed that "automatically obtaining relief" satisfies this factor. *See Moeller v. Week Publications, Inc.*, 649 F. Supp. 3d 530, 542 (E.D. Mich 2023) (proposed method, "including the processing of its claims, is effective because it ensures that each member of the Class will automatically obtain relief");

---

[17] The Sixth Circuit has recognized that class settlements are "particularly sensible" when they eliminate the possibility of a "Pyrrhic" victory that might create a "downward spiral of [defendants'] financial position." *UAW*, 497 F.3d at 632.

*Thomsen*, 639 F. Supp. 3d at 768 (same).

Class Counsel will work with the Administrator as needed to ensure that the Plan of Distribution in both Agreements is effectuated properly. Lee Decl. ¶¶ 47-48. *See also In re Polyurethane Foam Antitrust Litig.*, 135 F. Supp. 3d 679, 686 (N.D. Ohio 2015) ("An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel.").

***Rule 23(e)(2)(C)(iii): The Terms of Any Proposed Attorneys' Fee***. Class Counsel will petition the Court for an award of attorneys' fees up to one-third of the combined Settlement Amounts. This percentage is well within the range of typical attorneys' fees awards in the Sixth Circuit. *See, e.g.*, *Stewart v. Baptist Mem'l Health Care Corp.*, 2024 WL 4360602, at *8 (W.D. Tenn. Sept. 30, 2024) (approving an award of one-third of the gross amount of the settlement fund and collecting cases). The AME Defendants and Newport will have the opportunity to oppose some or all of this award. Newport Agmt. ¶ 2.16.

Moreover, the Settlement Amounts will be held in an interest-bearing trust account (the Qualified Settlement Fund) to allow the funds to begin increasing in value immediately before they are transferred to the Qualified Trust. The interest earned from these trust accounts will be used to pay for the Notice and Administration Expenses, and the additional interest earned will be added to the Settlement Amounts for disbursement. Lee Decl. ¶¶ 40-41; AME Agmt. ¶¶ 2.16, 2.23. In the unlikely event that the Notice and Administration Expenses exceed the accrued interest of the Qualified Settlement Fund, the AME Defendants are responsible for those additional expenses, AME Agmt. n.1, meaning that no portion of the Settlement Amounts will pay for Notice and Administration Expenses because the Settling Parties are proposing a single notice for both Settlements.

***Rule 23(e)(2)(C)(iv): Any agreement required to be identified under Rule 23(e)(3)***. Rule 23(e)(3) requires the Parties to "file a statement identifying any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). Here, there are none.

### C.    The Proposed Settlements Have No Obvious Deficiencies and Treats Class Members Equitably.

Rule 23(e)(2)(D) requires a court to determine if the "proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(E)(2)(D). The recovery resulting from the Settlements constitute a significant and certain benefit for Settlement Class Members. The Plan of Distribution will ensure that all members of the Class will be treated fairly and equitably; each Class Member's share of the Settlement Amount will be calculated with the same methodology and will be transferred to their account in the Qualified Trust at the same time. *See* AME Agmt. ¶ 4.1; Newport Agmt. ¶ 4.1. Settlement Class Members, so long as they are eligible to take distributions from their retirement accounts, will all be able to begin taking distributions at the same time. *Id.*; *see also* Lee Decl. ¶¶ 45-47, 55.[18] Additionally, nothing in the negotiations between the Settling Parties or in the terms of the Agreements themselves present any grounds to doubt the fairness of the Settlements. Rather, the substantial relief, the arm's-length nature of the negotiations, and the participation of sophisticated Class Counsel support a finding that the Settlements have no obvious deficiencies and treat all Class Members fairly.

### D.    The Proposed Settlements Satisfy the *UAW* Factors

After the 2018 Amendments to the Federal Rules, only four *UAW* factors are not already

---

[18] There are 15 Class Members who took distributions after June 30, 2021 and prior to the Plan's assets being frozen. Those 15 will not receive a distribution right now, but to ensure that they are treated the same as all other Class Members, if future settlements or judgments provide for distributions that exceed the present value of June 30, 2021 balances, they can and will participate in those distributions.

covered by the Rule 23(e) factors—"the complexity, expense, and likely duration of litigation; the opinions of class counsel and class representatives; the reaction of absent class members; and the public interest." *Family Dollar*, 2023 WL 7112838, at *12. Each supports preliminary approval.

 **Factor 2: The Complexity, Expense, and Likely Duration of the Litigation.** This case involves two dozen defendants, dozens of claims, and cross and third-party claims covering facts that date back to 2001. It is incredibly complex as this Court is well aware. Class Counsel have devoted thousands of hours to litigating this Action and the litigation with the AME Defendants and Newport likely would have continued for a long time had these agreements not been reached now. "Absent settlement, it would have likely continued for a considerable time." *Family Dollar*, 2023 WL 7112838, at *12. Although this litigation will continue against the Non-Settling Defendants, this principle still applies to Class Counsel's and the Court's risk and burden as to AME Defendants and Newport. This factor favors approval.

 **Factor 5: The Opinions of Class Counsel and Class Representatives**. "The endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement." *UAW v. Ford Motor Co.*, 2008 WL 4104329, at *26 (E.D. Mich. Aug. 29, 2008). Here, Class Counsel believe that the Settlements have no deficiencies and treats Settlement Class Members equitably. Lee Decl. ¶ 58. Likewise, this factor favors approval.

 **Factor 6: The Reaction of Absent Class Members**. This factor is "neutral because the proposed settlement is in the prenotice stage." *Green v. Platinum Rests. Mid-Am. LLC*, 2022 WL 1240432, at *5 (W.D. Ky. Apr. 27, 2022). Class Members will have the ability to opt out or object to both settlements at the final approval hearing. AME Agmt. ¶ 8; Newport Agmt. ¶ 8.

 **Factor 7: The Public Interest**. "There is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and

unpredictable' and settlement conserves judicial resources." *Cardizem II*, 218 F.R.D. at 530

(quoting *Granada Invs. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992)). Settlement between

Plaintiffs and the AME Defendants and between Plaintiffs, the AME Defendants, and Newport is

the first step in providing relief to the Settlement Class and resolving this entire Action. Finally,

this factor favors approval.

## II.    Plaintiffs' Responses to the Court's February 11, 2025 Questions.

Plaintiffs hereby provide specific responses to the questions and topics raised by the Court

in its February 11, 2025 Order on Additional Briefing. (ECF No. 726).

*1.    What is the proper measure of each settling Defendant's ability to pay or satisfy a judgment, and how did Plaintiffs arrive at their assessment on that point?*

Under both the Rule 23(e) and *UAW* factors, courts in this Circuit consider a defendant's

ability pay and "the Court, like Class Counsel, must measure success in light of the practical

realities of a defendants' financial condition." *Brandenburg v. Cousin Vinny's Pizza, LLC*, 2019

WL 6310376, at *4 (S.D. Ohio Nov. 25, 2019). However, based on Plaintiffs' research, courts do

not appear to use a single economic measure to determine a Defendant's ability to pay or satisfy a

judgment. Some relevant considerations for courts are whether a judgment would be part of a

"continuing downward spiral of the companies' financial position." *UAW*, 497 F.3d at 632, or the

size of the total damages as a percentage of a company's market capitalization. *In re Cendant Corp.*

*Litig.*, 264 F.3d 201, 240-41 (3d Cir. 2001) (acknowledging "there is inevitably a measure of

speculation involved in this determination" but holding that "possibility of bankruptcy is quite

real").

Here, Plaintiffs believe that the measure of a defendant's ability to pay is specific to that

defendant. Plaintiffs also believe that their assessment of the Settling Defendants' ability to pay

implicates attorney work product and therefore are concerned about waiving any applicable

privileges by discussing their assessment in a publicly available filing. Class Counsel, however,

has prepared a declaration detailing their investigation into the AME Defendants' ability to pay[19]

and requests permission to submit the declaration to the Court for in camera review, or to discuss

Plaintiffs' assessment of the Settling Defendants' ability to pay in chambers on March 18.

      *2.     The Second Amended Complaint alleges claims on behalf of Plaintiffs individually, derivatively on behalf of the Plan, and on behalf of the Class defined in the pleadings. Do the settlements, either in whole or in part, provide relief to Plaintiffs individually, derivatively on behalf of the Plan, or on behalf of the Class? If so, please specify.*

      The Settlements provide relief on behalf of the Settlement Class and resolve all of

Plaintiffs' claims, direct, derivative, or otherwise, against the Released Parties. The Settlement

Amounts will be distributed according to the Plan of Distribution.

      *3.     The Second Amended Complaint alleges claims for "emotional harm damages" and punitive damages. The AMEC settlement provides for a payment of $20 million total, which will apparently become an asset of the Plan. Does the amount include payment for "emotional harm" and/or punitive damages allegedly owed to Plaintiffs and/or plan participants? If so, please specify.*

      The Settlement Amounts in both Settlements do not specifically delineate which portion of

the Amounts relate to specific types of harms suffered by Class Members. Rather, the Settlement

Amounts resolve *all* claims against the Released Parties.

      *4.     The AMEC settlement calls for all proceeds of the settlement to be held in trust, pending the establishment of a new fund to hold the assets of the so-called Legacy Fund. Is it Plaintiffs' intention to deposit other funds recovered in this action in such a trust?*

      Yes. Plaintiffs intend that if any other settlements are reached in this litigation, the funds

would first be placed in a Qualified Settlement Fund like is being done with the AME and Newport

Settlement Amounts here, and then all funds would be transferred into a Qualified Trust in a

Qualified Trust operated by Disciplina after obtaining final approval of those settlements.

---

[19] Plaintiffs do not believe that Newport's ability to pay is a factor warranting consideration at this stage.

5.    *Do the amounts potentially recovered by AMEC, either in the judicial proceedings or arbitration, including AMEC's tentative settlement with Newport, represent damages claimed on behalf of the Plan itself, damages claimed on behalf of the AMEC Defendants, or both?*

The AME Defendants are not recovering any of the $40 million Settlement Amount from Newport. Rather, the Newport Settlement Amount is going solely to the Qualified Trust to be administered to Settlement Class Members, after deductions for any attorneys' fees and costs awards and service awards for the Plaintiffs.

6.    *When will plan participants be permitted to access the funds being paid as part of the settlements?*

Upon entry of the Final Approval Order and Judgment of the Settlements, the Net Settlement Amount will be transferred into the Qualified Trust. Lee Decl. at ¶ 47. Once the Net Settlement Amount is in the Qualified Trust, Settlement Class Members will be able to immediately access their funds by taking a distribution if they are eligible for one of the Plan's distribution events (age, hardship, etc.). AME Agmt. ¶ 4.1.2; Newport Agmt. ¶ 4.1.2.

7.    *As part of the AMEC settlement agreement between Plaintiffs and the AMEC Defendants, AMEC has "agreed to formally wind down and close the AMEC Department of Retirement Services and to transfer the Plan funds currently held at Symetra (to the extent permitted by federal tax law) to the Qualified Trust." Pls.' Mem. in Support Mot. for Approval 6 (ECF No. 628). When will that transfer occur?*

Plaintiffs and AMEC expect that transfer will occur within 30 days of Preliminary Approval.

8.    *What will happen to the Legacy funds that remain with Symetra? If the funds currently held by Symetra cannot be moved to the Qualified Trust, can they be moved to another similar financial institution that provides a higher rate of return on the funds?*

Those funds will be moved to the Qualified Trust, which Plaintiffs and AMEC expect that transfer will occur within 30 days of Preliminary Approval.

9.    *From what source will Plaintiffs' attorney's fees and service awards be paid?*

Plaintiffs' attorney's fees, costs, and service awards will be paid from the Settlement

Amounts. Newport Agmt. ¶ 5.1. Further, Class Counsel reserves the right to petition for additional awards of attorneys' fees, costs, or service awards from any future recovery from the Non-Settling Defendants.

## III.     The Court Should Conditionally Certify the Proposed Class.

To preliminarily approve the Settlements, the Court must find that it will likely be able to certify the class for purposes of judgment on the proposal.[20] Fed. R. Civ. P. 23(e)(1)(B)(i)-ii). Under Rule 23, class actions may be certified for settlement purposes only. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). A court may grant certification for settlement purposes when the proposed settlement class satisfies the four prerequisites of Rule 23(a) (numerosity, commonality, typicality and adequacy), as well as one of the three subsections of Rule 23(b). *See In re Packaged Ice Antitrust Litig.*, 2010 WL 5638219, at *1 (E.D. Mich. Sept. 2, 2010).

### A.     The Requirements of Rule 23(a) Are Satisfied.

#### 1.     Numerosity (Fed. R. Civ. P. 23(a)(1))

This factor requires that the class be so numerous as to make joinder of its members "impracticable." Here, there are approximately 4,452 Class Members, pastors and other personnel of AME churches, spread across the country. "While no strict numerical test exists, 'substantial' numbers of affected consumers are sufficient to satisfy this requirement." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 541 (6th Cir. 2012) (internal citations omitted). As a result of the large number of members of the Settlement Class and their geographic distribution throughout the United States, joinder is impracticable.

---

[20] If final approval is not granted, the AME Defendants and Newport retain the right to challenge class certification. AME Agmt. ¶ 10.8; Newport Agmt. ¶ 10.8.

### 2.    Commonality (Fed. R. Civ. P. 23(a)(2))

Commonality under Fed. R. Civ. P. 23(a)(2) requires only a single factual or legal issue common to all class members. *Hicks v. State Farm Fire and Casualty Co.*, 965 F.3d 452, 458 (6th Cir. 2020); *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 853 (6th Cir. 2013). There are numerous factual and legal issues common to Class Members regarding AME, including that: (1) all Class Members were employees of the AME Church and were participants in the Plan; (2) all Class Members suffered the same type of financial loss; (3) the AME Defendants owed the same fiduciary duties to all Class Members; and (4) the AME Defendants owed the same duty of care to all Class Members regarding the Plan. Similarly, there are numerous factual and legal issues common to Class Members and Newport, including that: (1) Newport was the Third-Party Administrator for the Plan in which all Class Members were participants; (2) Newport owed the same duty of care to all Class Members regarding the Plan; and (3) Newport owed the same standard of professional care to all Class Members. Commonality is satisfied.

### 3.    Typicality (Fed. R. Civ. P. 23(a)(3))

The proposed class representatives' claims are typical under Fed. R. Civ. P. 23(a)(3) if those claims are based on the same course of conduct as those of other class members and the same legal theory. *Yost v. First Horizon Nat. Corp.*, 2011 WL 2182262, at *8 (W.D. Tenn. June 3, 2011) (citing *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996)). Here, Settlement Class Members' claims are based on the same challenged conduct and the same theories of breach and negligence against the AME Defendants and the same theories of fraudulent misrepresentation, fraudulent concealment, civil conspiracy, aiding and abetting breach of fiduciary duty, and professional negligence against Newport. The Class Representatives seek the same damages as the absent

28

Settlement Class Members. Typicality is satisfied.

####     4.        **Adequacy (Fed. R. Civ. P. 23(a)(4))**

Adequacy under Fed. R. Civ. P. 23(a)(4) requires that class counsel and the class representatives vigorously pursue the interests of the absent class members and share common interests. *Busby v. Bonner*, 466 F. Supp. 3d 821, 833 (W.D. Tenn. 2020) (citing *In re Am. Med. Sys.*, 75 F.3d at 1083). The Sixth Circuit "looks to two criteria for determining whether the representative of the class will be adequate: 1) The representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 524-25 (6th Cir. 1976). Courts "review[] the adequacy of class representation to determine whether class counsel are qualified, experienced and generally able to conduct the litigation." *Nationwide*, 693 F.3d at 543.

Here, Class Counsel were appointed by the Court to represent the consolidated plaintiff actions in the MDL on an interim basis. (ECF No. 68). Class Counsel are eminently qualified by decades of experience prosecuting complex class actions and managing the attendant settlements. Class Counsel have dedicated millions of dollars in their time and hundreds of thousands of dollars of expenses litigating on a contingent basis on behalf of the Class in these complex consolidated actions. Similarly, the named Plaintiffs (the proposed Class Representatives) have gone above and beyond in fulfilling their duties to the Class throughout the litigation and have carried the burden of their discovery and other obligations. The named Plaintiffs initially stepped forward to represent their fellow pastors and elders following a shocking and devastating loss. They bravely acted as the faces of the lawsuit against an institution with which they have a deep and sincere spiritual attachment and against defendants with immense resources. Lee Decl. ¶¶ 56-57. Since then, they

have sat for depositions, attended depositions of many key witnesses, provided information and insight into the structure and governance of the AME Church, continually requested and received updates throughout the course of the litigation, and raised questions and concerns at various stages for the purpose of ensuring the best interests of the Class are in mind. *Id*.

Class Counsel and the named Plaintiffs have no conflicts of interest with the absent members of the Settlement Class they seek to represent. To render counsel or a class representative inadequate, a conflict must be fundamental, central to the lawsuit, and nonspeculative. *See In re Polyurethane Foam Antitrust Litig.*, 314 F.R.D. 226, 238-41 (N.D. Ohio 2014) ("to forestall class certification the intra-class conflict must be so substantial as to overbalance the common interests of the class as a whole"); *Int'l Union v. Ford Motor Co.*, 2006 WL 1984363, at *20 (E.D. Mich. July 13, 2006) ("[O]nly a conflict that goes to the very subject matter of the [claims] will defeat a party's claim to representative status").

Fed. R. Civ. P. 23(g) also requires the Court to examine the capabilities and resources of class counsel to determine whether they will provide adequate representation to the class. Here, the proposed Settlement Class is represented by counsel with extensive experience in complex class action litigation. *See Marcus v. Kan. Dep't of Revenue*, 206 F.R.D. 509, 512 (D. Kan. 2002) ("In absence of evidence to the contrary, courts will presume the proposed class counsel is adequately competent to conduct the proposed litigation."). Class Counsel have vigorously prosecuted the class claims for almost three years through extensive discovery and have provided the resources necessary to do so. The Court should appoint them as Settlement Class Counsel.

### B.     The Proposed Settlement Class Satisfies Rule 23(b)(3).

The proposed Settlement Class also satisfies the requirements of Rule 23(b). Specifically, common questions predominate over any questions affecting only individual members; and class

resolution is superior to other available methods for the fair and efficient adjudication of the controversy. *Amchem*, 521 U.S. at 615.

### 1.    Common Questions of Fact and Law Predominate.

Predominance is satisfied here. "Rule 23(b)(3) does not mandate that a plaintiff seeking class certification prove that each element of the claim is susceptible to classwide proof." *Whirlpool*, 722 F.3d at 859. Instead, "a claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position." *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 307 (E.D. Mich. 2001) ("*Cardizem I*"). Common questions need only predominate; they need not be dispositive of the litigation. *Id.* "[T]he 'mere fact that questions peculiar to each individual member of the class action remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." *Cason-Merenda v. VHS of Mich. Inc.*, 296 F.R.D. at 535 (quoting *Powers v. Hamilton Cnty. Public Defender Comm.*, 501 F.3d 595, 619 (6th Cir. 2007)). Further, the Supreme Court has instructed that "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor the class." *Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013).

This case focuses on both common issues of fact and law. The AME Defendants' liability could be determined by class-wide proof as to the material elements, given that the same course of alleged conduct by the AME Defendants'—the same supervision, management, and oversight of the Plan—forms the basis of all Class Members' claims. Newport's liability similarly could be determined by class-wide proof as to the material elements, given that the same course of alleged conduct by Newport—the same representations, assistance, conspiring, and accounting—forms

31

the basis of all Class Members' claims. The predominance requirement for a settlement class is met here as "[a]ll claims arise out of the same course of defendants' conduct; [and] all share a common nucleus of operative fact, supplying the necessary cohesion." *In re Am. Int'l Grp. Inc. Sec. Litig.*, 689 F.3d 229, 240 (2d Cir. 2012) (quotation omitted).

### 2.        A Class Action is the Superior Method to Adjudicate These Claims.

Rule 23(b)(3) also requires that a class action be superior to other available methods of fairly adjudicating the controversy. The superiority of class certification is measured by consideration of certain factors, including: the class members' interests in controlling the prosecution of individual actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability of concentrating the litigation of various claims in the particular forum; and the likely difficulties in managing a class action. *See Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933, at *4 (N.D. Ohio Mar. 8, 2010).

By the nature of the claims at issue and the number of individuals and defendants, a class action is the superior method for adjudication. Moreover, the remedy achievable by an individual plaintiff is disproportionate to the costs of litigating an individual claim. Not only has this case already been consolidated in recognition of the potential for multiple inconsistent rulings across different jurisdictions, but the treatment of this case as a class action affords the proposed class the best opportunity to receive a fair resolution while acting as the most efficient use of the Court's resources. The interests of members of the proposed Settlement Class individually controlling the prosecution of separate claims are outweighed by the efficiency of the class mechanism. *See Cardizem I*, 200 F.R.D. at 325-26 (finding that class action is superior because it ensures fair and efficient adjudication). Settling this case as a class action will conserve both judicial and private resources and would hasten the members of the Settlement Class's recoveries.

IV.    **The Court Should Authorize Dissemination of Notice to the Class.**

Rule 23(c)(2)(B) requires a certified class to receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Similarly, Rule 23(e)(1) requires a court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." *See also Gooch v. Life Inv. Ins. Co. of Am.*, 672 F.3d 402, 423 (6th Cir. 2012) (All that notice must do "is fairly apprise . . . prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interests") (internal quotation marks and citations omitted). The notice may be provided by "United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2). The Notice Plan here for both Settlements readily meets these standards, especially for a proposed Class for whom contact information and records are available from the AME Defendants.

V.    **The Court Should Appoint Verita as Settlement Administrator.**

Plaintiffs ask the Court to appoint Verita Global, LLC as the Administrator to oversee the administration of the Settlement, including issuing Class Notice to the Class and administering and calculating the allocation of each Class Members's pro rata share of the Net Settlement Amount and the proportionate payment of the Legacy Fund. AME Agmt. ¶¶ 2.3, 4.2; Newport Agmt. ¶¶ 2.4, 4.2. Verita is an experienced settlement administration firm with sophisticated technological capabilities and is staffed by personnel well-versed in class action litigation. Verita, with oversight from proposed Class Counsel and with assistance as necessary from the AMEC Department of Retirement Services, will handle all aspects of identifying and providing notice to potential members of the Settlement Class, receiving and handling opt-outs, calculating the allocations of Class Members' proportional shares of the Net Settlement Amount, and overseeing

the distribution of the settlement proceeds to the Settlement Class. AME Agmt. ¶¶ 4.2, 7.2-7.4,
8.1-8.2.4; Newport Agmt. ¶¶ 4.2, 7.2-7.4, 8.1-8.2.4; Lee Decl. ¶¶ 47-48

## VI.    The Court Should Schedule a Fairness Hearing to Approve the Settlements.

The last step in the settlement approval process is the fairness hearing at which the Court
may hear all evidence necessary to evaluate the proposed Settlement. At that hearing, proponents
of the Settlements may explain and describe their terms and conditions and offer argument in
support of the Settlement's approval, and members of the Class or their counsel may be heard
regarding the proposed Settlement if they choose. Plaintiffs respectfully request that the Court
enter an Order providing for the following schedule:

| Event | Deadline |
|---|---|
| Settlement Administrator to disseminate Notice ("Notice Date") | Thirty (30) days after entry of the Preliminary Approval Order |
| Deadline to file Motion for Attorneys' Fees, Costs, and Service Awards | Thirty (30) days after the Notice Date |
| Deadline for Class Members to submit Objections ("Objection Deadline") | Sixty (60) days after the Notice Date |
| Deadline for Class Members to submit Requests for Exclusion ("Opt-Out Deadline") | Sixty (60) days after the Notice Date |
| Deadline to file Motion for Final Approval of the AME Settlement and the Newport Settlement | Fourteen (14) days prior to the Fairness Hearing |
| Deadline to respond to Objections to final approval of the AME and/or Newport Settlements | Fourteen (14) days prior to the Fairness Hearing |
| Fairness Hearing | Ninety (90) days after the Notice Date |

## CONCLUSION

For the reasons set forth above and in the accompanying materials, Plaintiffs, the AME Defendants, and Newport respectfully request that the Court enter an order: (1) granting preliminary approval of the proposed Settlements; (2) holding that it will likely certify, for settlement purposes, the Settlement Class; (3) appointing Plaintiffs as Class Representatives representing the Settlement Class; (4) appointing Milberg Coleman Bryson Phillips Grossman, PLLC, Osborne & Francis Law Firm, PLLC, Stranch Jennings & Garvey, PLLC, Kantor & Kantor, LLC, Lieff Cabraser Heimann & Bernstein, LLP, Blue, LLP, Wright & Schulte, LLC, and the AARP Foundation as Class Counsel for the Settlement Class; (5) approving the Parties' proposed Notice Plan, including the proposed Long Form Notice, and directing that notice be disseminated pursuant to such Notice Plan and Federal Rules of Civil Procedure 23(c) and (e)(1); (6) appointing Verita Global LLC as Administrator for the Settlement and directing it to carry out the duties and responsibilities of the Administrator specified in the Agreement; (7) setting deadlines for Settlement Class Members to request exclusion from the Settlements and to object to the Settlements; and (8) scheduling a Fairness Hearing and certain other dates in connection with the final approval of the Settlements pursuant to Federal Rule of Civil Procedure 23(e)(2).

Dated: March 4, 2025.

| *Interim Co-Lead Counsel* | |
|---|---|
| */s/ Matthew E. Lee* <br> Matthew E. Lee <br> **MILBERG COLEMAN BRYSON** <br> **PHILLIPS GROSSMAN, PLLC** <br> 900 W. Morgan Street <br> Raleigh, NC 27603 <br> 919-600-5000 <br> Fax: 919-600-5035 | */s/ Gregorio A. Francis* <br> Gregorio A. Francis <br> **OSBORNE & FRANCIS** <br> **LAW FIRM, PLLC** <br> 2707 E. Jefferson Street <br> Orlando, FL 32803 <br> (561) 293-2600 <br> Fax: (561) 923-8100 |

| mlee@milberg.com | gfrancis@realtoughlawyers.com |
|---|---|
| _**Liaison Counsel**_ | |
| J. Gerard Stranch, IV<br>**STRANCH, JENNINGS<br>& GARVEY, PLLC**<br>223 Rosa L. Parks Avenue, Suite 200<br>Nashville, Tennessee 37203<br>(615) 254-8801<br>Fax: (615) 255-5419<br>gstranch@stranchlaw.com | |
| _**Plaintiff's Steering Committee**_ | |
| Susan L. Meter<br>**KANTOR & KANTOR LLP**<br>19839 Nordhoff Street<br>Northridge, CA 91324<br>818-886-2525<br>Fax: 818-350-6274<br>smeter@kantorlaw.net | Kenneth S. Byrd<br>**LIEFF CABRASER<br>HEIMANN & BERNSTEIN, LLP**<br>222 2nd Ave S<br>Nashville, TN 37210<br>615-313-9000<br>Fax: 615-313-9965<br>kbyrd@lchb.com |
| Dhamian Blue<br>**BLUE LLP**<br>P.O. Box 1730<br>Raleigh, NC 27602<br>919-833-1931<br>Fax: 919-833-8009<br>dab@bluellp.com | Richard Schulte<br>**WRIGHT & SCHULTE LLC**<br>865 S. Dixie Dr.<br>Vandalia, OH 45377<br>937-435-9999<br>Fax: 937-435-7511<br>rschulte@yourlegalhelp.com |
| Julie Nepveu<br>**AARP Foundation**<br>601 E Street, NW<br>Washington, DC 20049<br>(202) 434-2075<br>Fax: (202) 434-6424<br>jnepveu@aarp.org | |