## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: AME CHURCH EMPLOYEE | ) | Lead Case No. |
| RETIREMENT FUND LITIGATION, | ) | 1:22–md–03035–STA–jay |
| | ) | |
| | ) | ALL CASES |

---

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS WITH AMEC DEFENDANTS AND DEFENDANT NEWPORT GROUP, INC.

---

Before the Court is Plaintiffs' Motion for Preliminary Approval of Class Action Settlements with AMEC Defendants and Defendants Newport Group, Inc. (ECF No. 750) filed March 4, 2025. The Court held a motion hearing with counsel for the parties on March 18, 2025. For the reasons set forth below, the Motion is **GRANTED**.

### BACKGROUND

This multidistrict litigation concerns losses to a non-ERISA retirement plan established by the African Methodist Episcopal Church for its clergy and employees. Plaintiffs are current or retired clergy of the church and have alleged a number of claims under Tennessee law against the denomination, church officials, third-party service providers to the plan, and other alleged tortfeasors. In early 2022, Plaintiffs filed six civil actions against the Church and others across several United States District Courts: *Rev. Pearce Ewing v. African Methodist Episcopal Church et al.*, No. 2:22–cv–02136–JTF–atc (W.D. Tenn. Mar. 4, 2022); *Charles R. Jackson v. Newport Group, Inc. et al.*, No. 2:22–cv–02174–JTF–atc (W.D. Tenn. Mar. 22, 2022); *Rev. Cedric V. Alexander v. Rev. Dr. Jerome Harris et al.*, No. 8:22–cv–00707–PJM (D. Md. Mar. 22, 2022); *Phillip Russ, IV et al. v. Newport Group, Inc.*, No. 3:22–cv–00375–BJD–LLL (M.D. Fla. Mar. 31, 2022); *Rev. Derrell Wade et al. v. Newport Group et al.*, No. 3:22–cv–00179–DN (E.D. Va. Apr. 1, 2022); *Rev. A. Offord Carmichael, Jr. et al. v. Rev. Dr. Jerome Harris et al.*, No. 3:22–cv–00386–UA–JLW

(M.D.N.C. May 19, 2022). Plaintiff Rev. Pearce Ewing moved under 28 U.S.C. § 1407 to consolidate all proceedings in the Western District of Tennessee.

On June 2, 2022, the Panel on Multidistrict Litigation transferred the civil actions to this Court, finding that consolidation would "serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation." MDL Transfer Order 1, June 2, 2022 (ECF No. 1). The Panel further found that consolidation in this District was appropriate since the AMEC Department of Retirement Services had its principal place of business in this District and one of the Defendants named in the initial lawsuits, Rev. Dr. Jerome V. Harris, resided in the Western District of Tennessee. *Id*. at 2.

On June 22, 2022, the Court entered a Practice and Procedure order to govern all further proceedings. *See* Practice & Proc. Order, June 22, 2022 (ECF No. 8). The Court held an initial case management conference with counsel for the parties on August 4, 2022, and approved the case management deadlines proposed by the parties. On August 25, 2022, the Court entered a case management order (ECF No. 78), setting forth the deadlines discussed at the initial conference. Discovery commenced September 9, 2022, and closed on January 22, 2025. On August 21, 2022, Plaintiffs filed a Consolidated Amended Complaint – Class Action (ECF No. 74), setting forth their allegations and causes of action. Plaintiff then amended their pleadings in a Second Consolidated Amended Complaint – Class Action (ECF No. 493) ("the Second Amended Complaint") on August 29, 2024.

The ten Plaintiffs named in the pleadings are Rev. Pearce Ewing; Rev. Charles R. Jackson; Presiding Elder Cedric V. Alexander; Rev. Derrell Wade; Rev. Reuben J. Boyd; Presiding Elder Phillip Russ, IV; Lynette Glenn as court-appointed guardian of her father the Rev. Marcius King;

Rev. Matthew Ewing; Rev. A. Offord Carmichael, Jr.[1]; and Rev. Diane Conley.  The Second

Amended Complaint names the following Defendants: the African Methodist Episcopal Church

Ministerial Retirement Annuity Plan; Newport Group, Inc.; Symetra Life Insurance Company;

Daniel Parrish of Parrish Law, LLC, as Administrator Ad Litem of the Estate of Jerome V. Harris;[2]

the African Methodist Episcopal Church, Inc.; the African Methodist Episcopal Church; Sandra

Harris; the AMEC Department of Retirement Services; the AMEC General Board; AMEC Council

of Bishops; Bishop Samuel L. Green, Sr.; Bishop James Davis; Robert Eaton; Financial Freedom

Funds, LLC; Financial Freedom Group, Inc.; Financial Technologies, LLC; Day and Night Solar,

LLC; Motorskill Ventures, Inc; Motorskill Ventures 1, L.P.; Motorskill Asia Ventures 1, L.P;

Rodney Brown and Company; Doe Corporations 1-10;[3] and John Does 1-10.[4]

On September 20, 2024, Newport filed a Partial Motion to Dismiss Plaintiffs' Second

Amended Complaint (ECF No. 521).  The same day, the AMEC Defendants filed their own Partial

Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 522) as well as a Partial

Answer (ECF No. 523), denying the allegations of the Second Amended Complaint, and alleging

---

[1] On October 11, 2024, Plaintiffs filed a suggestion of death (ECF No. 551), stating that Rev. Carmichael had passed away on September 10, 2024.

[2] According to the Second Amended Complaint, Dr. Harris passed away on May 8, 2024.  At the time of his death, Dr. Harris had already been named as a defendant in multiple complaints consolidated in this MDL, including the First Amended Consolidated Complaint.

[3] Plaintiffs allege that the Doe Corporations are affiliates or subsidiaries of Defendants that may be responsible for the conduct alleged and that such parties are named in a "Doe Corporations" capacity pending discovery in the case. To date, Plaintiffs have not amended their pleadings to identify any Doe Corporation further.

[4] Plaintiffs allege that the John Does are affiliates or subsidiaries of Defendants that may be responsible for the conduct alleged herein or exercised fiduciary authority with respect to the plan during the class period that are currently unknown to Plaintiffs and that such parties are named in a "John Doe" capacity pending discovery in this case.  To date, Plaintiffs have not amended their pleadings to identify any John Doe further.

cross-claims and a third-party complaint of their own. The Court later granted the AMEC Defendants leave to amend their cross-claim and third-party complaint to replead previously dismissed claims of negligent misrepresentation and punitive damages against Newport as well as claims against new cross-defendants Day and Night Solar, LLC; Financial Technologies, LLC; and Trinity Financial Consultants, LLC, each of which was named as a party for the first time in Plaintiffs' Second Amended Complaint. On November 5, 2024, the AME Defendants filed their amended pleading (ECF No. 570). On December 19, 2024, Newport filed a Partial Motion to Dismiss (ECF No. 640) the AMEC Defendants' cross-claims against it. The AMEC Defendants' Partial Motion to Dismiss and both of Newport's Partial Motions to Dismiss remain pending before the Court.

After the filing of the Motions to Dismiss the Second Amended Complaint, the parties informed the Court that Plaintiffs and the AMEC Defendants (and later Newport) had reached a settlement. On December 13, 2024, Plaintiffs filed a motion for preliminary approval of their settlement with the AMEC Defendants (ECF No. 627). At a status conference on December 19, 2024, the Court set a deadline for the other parties to the case to respond to Plaintiffs' motion for preliminary approval and set a hearing on the motion for February 4, 2025. In advance of the motion hearing, the Court ordered Plaintiffs to submit additional information for *in camera* review. More specifically, the Court wanted details on five randomly selected members of the class to determine the value of their retirement assets held in the plan as of June 2021 and how much each plan participant could expect to receive as a result of the settlement with the AMEC Defendants.

At the February 4, 2025 motion hearing, the parties announced to the Court that Plaintiffs and the AMEC Defendants had reached a settlement with Newport. Rather than proceed with a hearing on the settlement between Plaintiffs and the AMEC Defendants, Plaintiffs requested that the Court

4

continue the hearing and consider the forthcoming request for preliminary approval of each settlement at a later time. The Court granted the request and reset the motion hearing for March 18, 2025. The Court set March 4, 2025, as the deadline for Plaintiffs to file a motion for preliminary approval of the Newport settlement. On February 11, 2025, the Court entered an order (ECF No. 726), directing Plaintiffs to address a series of additional questions about the settlement agreements and to provide the supplemental information for the five randomly selected class members to show how the two settlements would benefit the class.

Plaintiffs' Motion for Preliminary Approval (ECF No. 750) followed. Plaintiffs argue that the proposed settlements satisfy the requirements of Federal Rule of Civil Procedure 23 and the Sixth Circuit's standards for preliminary approval of a class action settlement. Plaintiffs assert that the proposed settlements were reached after adequate representation and arm's-length negotiations. According to the declaration of Interim Lead Class Counsel Matthew Lee, counsel has vigorously prosecuted the lawsuit since 2022 and reached a settlement with the AMEC Defendants only after two years of fact discovery and after three mediations with an experienced mediator and former Justice of the Tennessee Supreme Court. Plaintiffs and the AMEC Defendants reached their settlement agreement with Newport after the same discovery period and after one mediation with Justice Holder and two mediations with another experienced mediator.

Next, Plaintiffs argue that the proposed settlements provide adequate relief in light of the risks, costs, and length of continued litigation. In counsel for Plaintiffs' view, the settlements achieve an excellent outcome for the class. Plaintiff will recover $60 million, or 69% of the $88.4 million difference between the misrepresented value of the plan and the true value of the plan as of June 2021. Even after deducting attorneys' fees of up to one-third of the settlement amounts and Plaintiffs' costs ($1.2 million), the net monetary relief to the class equals approximately 44.3% of

the $88.4 million difference in represented value of the Plan.  In light of the risks of going to trial and the additional delay involved in trying the case and concluding all appeals, the settlements represent adequate relief to the class. Plaintiffs contend that the proposed settlements have no obvious deficiencies and treat class members equitably. The plan of distribution ensures that each class member will receive a pro rata share of the recovery and their funds will be placed in their retirement accounts with no further action to be taken by members of the settlement class.  Finally, Plaintiffs argue that the Court should conditionally certify the class action for settlement purposes. For all of these reasons, Plaintiffs request that the Court give preliminary approval to the settlement between Plaintiffs and the AMEC Defendants and the settlement between Plaintiffs and the AMEC Defendants and Newport.

## **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 23 governs class actions like the case at bar and requires the settling parties to any class action to obtain court approval for their settlement agreement. Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval").  At the preliminary stage of the approval process, the Court must decide whether to give notice of the settlement to the class of individuals who would be bound by the proposed settlement. Fed. R. Civ. P. 23(e)(1); *see also* Fed. R. Civ. P. 23, Committee Notes on 2018 Amendments ("As amended, Rule 23(e)(1) provides that the court must direct notice to the class regarding a proposed class-action settlement only after determining that the prospect of class certification and approval of the proposed settlement justifies giving notice. This decision has been called 'preliminary approval' of the proposed class certification in Rule 23(b)(3) actions.").

In order to justify a court's preliminary approval and decision to give notice to the members

of the class, the parties must show that "the court will likely be able to (i) approve the proposal under

Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P.

23(e)(1)(B). Under Rule 23(e)(2), a court may approve a class settlement "only after a hearing and

only on finding that it is fair, reasonable, and adequate after considering" the following factors:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)–(D).

In addition to the factors set forth in Rule 23(e)(2), the United States Court of Appeals for the

Sixth Circuit has adopted a series of its own factors to consider in deciding whether a class action

settlement is "fair, reasonable, and adequate," many of which overlap with the Rule 23(e) factors: (1)

the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3)

the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the

opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7)

the public interest. *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).

In a case like this one where the court has not certified the class, the court must also consider

whether it will be able to certify the class for purposes of the settlement. Class certification is a "key

element" of the preliminary approval process, though a court can only certify the class after holding

the final approval hearing. Fed. R. Civ. P. 23, Committee Notes on 2018 Amendments to Rule

23(e)(1). "[I]f a class has not been certified, the parties must ensure that the court has a basis for

concluding that it likely will be able, after the final hearing, to certify the class." *Id.* Here, there is no

real dispute that the Court will be able to certify the class at a final approval hearing.

"The decision to give notice of a proposed settlement to the class is an important event."

Fed. R. Civ. P. 23, Committee Notes on 2018 Amendments to Rule 23(e)(1). The court's

determination requires "a solid record supporting the conclusion that the proposed settlement will

likely earn final approval after notice and an opportunity to object." *Id.* The Notes to Rule 23(e)

counsel that "[t]he court should not direct notice to the class until the parties' submissions show it is

likely that the court will be able to approve the proposal after notice to the class and a final approval

hearing." *Id.* As a result, the settling parties have the burden to "provide the court with information

sufficient to enable it to determine whether to give notice of the proposal to the class." Fed. R. Civ.

P. 23(e)(1)(A); *see also* Fed. R. Civ. P. 23, Committee Notes on 2018 Amendments to Rule 23(e)(1)

(noting that "the proponents of the settlement should ordinarily provide the court with all available

materials they intend to submit to support approval under Rule 23(e)(2) and that they intend to make

available to class members").

## ANALYSIS

The issue presented is whether the parties have presented enough information to justify

giving notice of the AMEC settlement and Newport settlement to the members of the settlement

class. The Court's inquiry is twofold (1) whether the Court will likely be able to approve the

settlement under Rule 23(e)(2) and (2) whether the Court will likely be able to certify the class for

purposes of judgment on the settlements. The Court considers each prong separately.

### I.  Likelihood of Approval Under Rule 23(e)(2)

#### A.  *Adequacy of Representation*

The first Rule 23(e)(2) factor supports preliminary approval. Class counsel and the class representatives have adequately represented the class. The Court appointed interim class counsel as well as a steering committee to represent the members of the class in the MDL.  Interim class counsel has continued to represent the named Plaintiffs and the class itself zealously at all times throughout the pendency of the MDL.  Interim class counsel has appeared for bi-monthly status conferences and filed status reports to keep the Court apprised of the progress of the case at all times. Class counsel has engaged in significant efforts to prepare the case for trial on behalf of the named Plaintiffs who will act as class representatives and the class.  Interim class counsel has briefed and argued a series of substantive motions, some testing the sufficiency of the pleadings and others the arbitrability of the claims of the class. Having largely completed fact discovery, class counsel is well-informed about the facts and strengths of the claims asserted. For their part all of the proposed class representatives are clergy (or their appointed representatives) and participants in the AMEC retirement plan and claim to have suffered the same injuries alleged by all other members of the plan.  Class representatives have been deposed during the discovery phase and given evidence to support their claims and the claims of the class they seek to represent.  The Court finds that this Rule 23(e)(2) factor is easily met.

### B. Arm's Length Negotiation

The Court also finds that each settlement agreement was negotiated at arm's length.  "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008) (citation omitted).  Plaintiffs have shown that their settlement with the AMEC Defendants was the result of several mediation sessions with an experienced mediator, the Hon. Janice Holder, a retired Justice of the Tennessee Supreme Court.  "The participation of an independent mediator in the settlement

negotiations virtually assures that the negotiations were conducted at arm's length and without collusions between the parties." *Gokare v. Fed. Express Corp.*, No. 2:11-cv-2131- JTF-cgc, 2013 WL 12094870, at *3 (Nov. 22, 2013) (quoting *Hainey v. Parrott*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007)).  The parties engaged in an early effort to mediate with Justice Holder and then returned to mediation during discovery and closer to the end of the discovery period.  There is no evidence in the record to rebut the presumption that the parties did not engage in collusion or fraud to arrive at their settlement.[5]  "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 et al., 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

Plaintiffs' and the AMEC Defendants' settlement with Newport is likewise the product of arm's length negotiations.  Newport participated in the initial mediation with all parties early on in the case and then returned to mediation before a different neutral in late 2024 and early 2025. The parties have shown that the Newport settlement was the outcome of a triple-blind, mediator's proposal for settlement.  A mediator's proposal means the settlement was "one that the third-party mediator proposed, rather than an amount determined through the negotiations of the parties." *Garcia v. Schlumberger Lift Sols.*, 2020 WL 6886383, at *13 (E.D. Cal. Nov. 24, 2020). This additional feature of the settlement further supports a finding that the negotiations were at arm's length. *In re MyFord Touch Consumer Litig.*, 2019 WL 1411510, at *8 (N.D. Cal. Mar. 28, 2019) (considering the fact that settlement was based on mediator's proposal as factor in favor of finding arm's length negotiations).

---

[5] Symetra has suggested that the terms of the settlements give rise to an appearance of collusion.  However, for reasons the Court explains in more depth below, Symetra lacks standing to raise any objections to the settlements.  More important, Symetra has produced absolutely no evidence to rebut the presumption that the settlements were achieved in the absence of fraud or collusion.  Therefore, the Court finds Symetra's supposition unsupported and entitled to no weight.

Because both settlements "arose out of arms-length, non-collusive negotiations[,]" the Court can conclude that the settlements were the result of a procedurally fair process. Wm. B. Rubinstein, *Newberg and Rubenstein on Class Actions* § 13.14 (6th ed. 2022).

### C.   *Adequacy of the Relief Provided for the Class*

The third Rule 23(e)(2) factor, the adequacy of the relief provided for the class, is satisfied. Rule 23(e)(2) requires the Court to analyze this factor by considering "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Each consideration leads the Court to find that the relief provided by the settlements will be adequate for the class as a whole.

The costs, risks, and delay of trial and appeal are of particular significance, in the Court's view. According to Plaintiffs, plan participants learned in 2021 that $88.4 million in plan assets were missing. Plaintiffs have now proffered opinion testimony that "the Plan's balance should have been $227 million higher than it was in June 2021," and counsel for Plaintiffs stated at the motion hearing that the class would ask a jury to award damages in the amount of $227 million plus punitive damages and costs. Whether the Court views the $60 million recovery as a percentage of the $88.4 million in missing assets Dr. Harris claimed the plan had in 2021 (67.87%) or as a percentage of the $227 million Plaintiffs will seek at trial (26.43%), the $60 million in settlement proceeds represents a reasonable recovery for the class. *Kohari v. MetLife Grp., Inc.*, No. 21-6146, 2025 WL 100898, at *10 (S.D.N.Y. Jan. 15, 2025) (collecting cases and holding that recovery of 19%-27% of total estimated losses "well within the range found to be fair and reasonable"). In the final analysis, "a

gap between the maximum possible recovery and the award in this case is the nature of settlement, and does not indicate a lack of fairness, reasonableness, or adequacy." *In re Family Dollar Stores, Inc., Pest Infestation Litig.*, 2023 WL 7112838, at *6–10 (W.D. Tenn., 2023).

The time value of settling now and avoiding several years more of litigation is also evident. Many Plaintiffs and an undetermined number of the class members are near or currently in retirement.  The class are clergy or former clergy of the AME Church who discovered in 2021 that their retirement accounts were worth approximately 75% less than they had been told by church leaders. Instead of retiring with a measure of comfort and economic security, the class faced a significant shortfall after their lifetime of retirement savings was no longer available. The losses to the plan disproportionately affect members of the class who presumably had larger balances in the retirement plan as they approached or entered their retirement years. All of this to say, time is a critical factor in achieving relief and recovering lost retirement funds for the members of the settlement class.  And yet as counsel for Plaintiffs forecast at the motion hearing, trial in the MDL is still at least one year away, and the conclusion of any appellate process is another year and more likely two years beyond that. *See, e.g., In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003) ("[t]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery" and that "no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict"). Even assuming the class could prevail at trial and on appeal, the members of the class might not be in a position to enforce a final judgment until 2028 (most likely at the very earliest), almost seven years after the discovery of the losses to their retirement accounts. Under the circumstances, the prospect of settlement now weighs strongly in favor of preliminary approval.

The proposed method of distributing relief to the class would also appear to be highly

12

effective.  In terms of non-monetary relief, the AMEC settlement provides for a number of fundamental reforms to the plan, including complete structural and administrative changes to safeguard plan assets moving forward.  The equitable relief accomplished as far as plan governance is significant.  As far as monetary relief, the settlements have proposed the creation of a qualified settlement trust, which would hold the settlement proceeds until class members can be heard and the Court can give the settlements final approval.  The AMEC Defendants have already transferred $10 million of their settlement proceeds to the qualified settlement trust (the remaining $10 million is due in May 2025).  Newport represented to the Court at the motion hearing that it would transfer the full $40 million payable under the terms of its settlement to the qualified settlement trust within 14 days of the entry of this order.  Assuming the Court gives its final approval to the settlement following the final approval hearing, the $60 million in total settlement funds would be transferred from the qualified settlement trust to a qualified trust in which each member of the class would have his or her pro rata share allocated to an individual account.  In other words, each class member would receive a share of the proceeds of the settlements automatically with no requirement to file a claim or take any other action to receive his part of the settlements. *Moeller v. Week Publications, Inc.*, 649 F. Supp. 3d 530, 542 (E.D. Mich 2023) (finding that the proposed settlement method, "including the processing of its claims, is effective because it ensures that each member of the Class will automatically obtain relief"). The Court finds that this method of distribution will be fair, equitable, and very effective in delivering relief to the class.

Lastly, the terms of any proposed award of attorney's fees, including the timing of the payment, provides adequate relief for the class. Under the terms of the Newport settlement, counsel for Plaintiffs will be entitled to seek attorney's fees representing one-third of the total recovery.  An attorney's fee of one-third of the recovery is standard in class actions.  *See Stewart v. Baptist Mem'l*

*Health Care Corp.*, 2024 WL 4360602, at *8 (W.D. Tenn. Sept. 30, 2024) (approving an award of one-third of the gross amount of the settlement fund and collecting cases). The parties have apparently structured their settlements in such a way that counsel's fees will not come out of the settlement proceeds funded by the AMEC Defendants and instead will come entirely from the Newport settlement. This approach has allowed the first $10 million in settlement funded by the AMEC Defendants to accrue interest and maximize the amount available to satisfy the costs of administering the settlement. The settlements' treatment of attorney's fees only bolsters the Court's conclusion that the relief is adequate for the class. This Rule 23(e)(2) factor favors preliminary approval of the settlements.

### D.        *Equitable Treatment for Class Members*

As the Court has already noted, the settlements provide equitable treatment for class members. For this factor, "[m]atters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2), Committee Notes to 2018 amendment. The agreements call for the administrator to apportion the settlement funds to each class member on a pro rata basis, and plan participants entitled to an immediate disbursement of their retirement funds will have access to their share of the settlement funds very soon after the final approval of the settlements. Although members of the class will receive different amounts from the settlements, they will receive shares of the proceeds based on a formula and relative to their individual losses. This allocation is fair and equitable.

### E.   *UAW Factors*

Insofar as the Rule 23(e)(2) factors overlap or closely align with the *UAW* factors adopted by

14

the Sixth Circuit, the Court has already addressed several *UAW* factors in the preceding analysis: the risk of fraud or collusion; the complexity, expense, and likely duration of the litigation; and the amount of discovery engaged in by the parties. The Court now considers the remaining *UAW* factors.

First, the Court must assess Plaintiffs' likelihood of success on the merits. As the Sixth Circuit remarked in *UAW*, "[t]he fairness of each settlement turns in large part on the bona fides of the parties' legal dispute." *UAW*, 497 F.3d at 631. The Court's task is not to "decide the merits of the case or resolve unsettled legal questions" but rather to "judge the fairness of a proposed compromise" by "weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." *Id*. (quoting *Carson v. Am. Brands, Inc.,* 450 U.S. 79, 88 n. 14 (1981)). Plaintiffs' Second Amended Complaint alleges the following causes of action against the AMEC Defendants: breach of fiduciary duty, negligence, fraudulent concealment, and breach of contract. Plaintiffs allege these claims against Newport: breach of fiduciary duty, violation of the Tennessee Uniform Trust Code for breach of trust and misappropriation of trust funds, negligence, fraudulent concealment, fraudulent misrepresentation, civil conspiracy, aiding and abetting breach of fiduciary duty, and professional negligence. Both the AMEC Defendants and Newport have filed Partial Motions to Dismiss some, though not all, of the claims alleged against them in the Second Amended Complaint. The Court would add that similar allegations in Plaintiff's previous pleading also survived Rule 12(b)(6) challenges from the settling Defendants. Based on nothing more than the allegations of the pleadings and the strength of the arguments presented in the Rule 12(b)(6) motions, the Court can easily find that "the parties are using settlement to resolve a legitimate legal and factual disagreement." *UAW*, 497 F.3d at 632. For some of the same reasons the Court noted about the expected length of the trial and appellate phases of the case, Plaintiffs have "ample reason

15

to control the resolution of this dispute through negotiation today rather than litigation tomorrow." *Id*.

The balance of the *UAW* factors either favor preliminary approval or are yet to be established. Class counsel has endorsed the settlement. The Court awaits the reaction of absent settlement class members. The class action approval process includes notice to the settlement class members and an opportunity for them to object at the final approval hearing. The Court would note that at least two members of the class have written to the Court and attended a recent status conference and hearing. In their letters, the class members have raised questions about the mechanics of any settlement and the availability of their recovery. These class members, as well as every other member of the settlement class, will have the opportunity to receive answers to their questions and raise objections during the notice period leading up to the final approval hearing. "There is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Does 1–2 v. Déjà vu Servs., Inc.*, 925 F.3d 886, 899 (6th Cir. 2019) (citation omitted). This MDL is no exception. The Court finds that the *UAW* factors favor preliminary approval of the settlement.

Having made a determination of each of the Rule 23(e)(2) factors and the *UAW* factors, the Court concludes that it will likely be able to approve the settlement under Rule 23(e)(2).

## II. Likelihood of Settlement Class Certification

The Court now turns to the question of whether the Court will likely be able to certify the settlement class for purposes of approving the settlement. Plaintiffs seek conditional certification of the following class: "all persons who were participants, or were those participants' respective beneficiaries entitled to benefits, in the African Methodist Episcopal Church Ministerial Retirement

Annuity Plan on June 30, 2021. Defendants are excluded from the Class." AME Settlement Agr. ¶ 2.6; Newport Settlement Agr. ¶ 2.7. Rule 23(e)(1)(B)(ii) directs a court to determine, at the preliminary approval stage, whether it "will likely be able to . . . certify the class for purposes of judgment on the proposal." If the court determines that it will likely be able to certify the class, it conditionally certifies it pending final approval of the settlement. *Newberg on Class Actions* § 13:16 (5th ed. 2019). Rule 23 requires a party seeking class certification to demonstrate that: (1) the proposed class and class representatives meet all of the requirements of Rule 23(a); (2) the case fits into one of the categories of Rule 23(b); and (3) class counsel meets the requirements of Rule 23(g). *See generally* Fed. R. Civ. P. 23. For the reasons discussed below, the Court finds each of these requirements met here.

### A. Rule 23(a) Prerequisites for Certification

Rule 23(a) requires that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(1)–(4). Each of these prerequisites is satisfied here.

The numerosity requirement means a class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "While no strict numerical test exists, 'substantial' numbers of affected consumers are sufficient to satisfy this requirement." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 541 (6th Cir. 2012) (citations omitted). "The numerosity requirement is also satisfied more easily upon a showing that there is wide geographical diversity of class members, which makes joinder of all the class members more impracticable." *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 339 (N.D. Ohio 2001) (quotation marks and citation omitted).

Plaintiffs allege that there are approximately 4,452 class members who reside in multiple states around the country. This suffices to show that the proposed Class is so numerous as to render joinder impracticable. *Young*, 693 F.3d at 541.

The commonality requirement means the class must have at least one common question of law or fact, and resolution of those questions must advance the litigation. Fed. R. Civ. P. 23(a)(2); *Alkire v. Irving*, 330 F.3d 802, 821 (6th Cir. 2003) (citing *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998)). "Even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (cleaned up). "The threshold for commonality is not high." *Bradberry v. John Hancock Mut. Life Ins. Co.*, 217 F.R.D. 408, 413 (W.D. Tenn. 2003) (quotation marks and citation omitted). Plaintiffs' claims against the AMEC Defendants and Newport share a number of common factual and legal questions like whether each settling Defendant's acts or omissions caused damages to the retirement plan. Plaintiffs easily meet the low threshold for commonality.

The typicality requirement means the claims of the class representatives must be typical of the claims of the members of the class. Fed. R. Civ. P. 23(a)(3). "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996) (quotation marks and citation omitted). "[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Id.* (quotation marks and citation omitted). The claims of the proposed class representatives are typical of the class claims: like the members of the class, the class representatives were participants of the plan at times when Dr. Harris was the plan trustee and allegedly used plan assets in an improper manner. Class representatives seek to hold Dr. Harris, the settling Defendants, and

18

others liable for the losses suffered by the plan. This satisfies the typicality requirement.

Finally, the class representatives must fairly and adequately protect class interests. Fed. R. Civ. P. 23(a)(4). The Rule 23(a)(4) inquiry serves to uncover conflicts of interest between named parties and the classes they seek to represent. "A class representative must be part of the class and possess the same interest and suffer the same injury as class members." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 562 (6th Cir. 2007) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997)). Class members must not have "interests that are [ ] antagonistic to one another." *Id*. at 563 (quotation marks and citation omitted). In addition, courts "review[ ] the adequacy of class representation to determine whether class counsel are qualified, experienced and generally able to conduct the litigation." *Young*, 693 F.3d at 543 (quotation marks and citation omitted). The Court has no reason to find that the class representatives have any conflict of interest for purposes of Rule 23(a)(4). The Court has already appointed counsel as interim class counsel, and the Court continues to find that counsel are qualified, experienced, and capable of representing the class. And the Court has no reason to find that class counsel lacks any of the capabilities or resources to continue to provide adequate representation. Fed. R. Civ. P. 23(g).

### B. Rule 23(b)(3) Standard

For purposes of preliminary approval of the settlements, the Court holds that the settlement class satisfies Rule 23(a)'s prerequisites. A class that satisfies Rule 23(a)'s requirements must also fall within one of three categories found in Rule 23(b). Plaintiffs' proposed settlement class meets the standard under Rule 23(b)(3), which requires that "the court find[ ] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3)(A)–(D). Each of the Rule 23(b)(3) factors is met here.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Beattie*, 511 F.3d at 564 (quoting *Amchem Prods.*, 521 U.S. at 632). To satisfy the predominance requirement in Rule 23(b)(3), "a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *Id.* (quotation marks and citation omitted). "[C]ommon issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Id.* (quotation marks and citation omitted). Here, common issues predominate over any individual issues. The MDL is focused on losses to the AMEC retirement plan caused by the acts or omissions of several Defendants. The damage to the plan and the dissipation of plan assets was common to each plan participant. While there is some indication that a small number of plan participants might have made plan withdrawals in a short timespan before the losses were discovered, the parties have agreed on a distribution formula for those participants. Outside of this discrete and small cohort, the primary issues of liability and damages predominate. In short, the class members' claims are based on the same set of facts and legal theories, meaning the predominance test is met.

Rule 23(b)(3) also requires that a class action be superior to other available methods of fairly adjudicating the controversy. Rule 23(b)(3) includes a non-exhaustive list of factors to consider in making that determination, including: the class members' interests in controlling the prosecution of individual actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability of concentrating the litigation of various claims in the particular forum; and the likely difficulties in managing a class action. *See* Fed. R. Civ. P. 23(b)(3). "The Advisory Committee had dominantly in mind vindication of 'the rights of groups of people

who individually would be without effective strength to bring their opponents into court at all'" in adopting the concept of Rule 23(b)(3) classes. *Amchem Prods.*, 521 U.S. at 617. That principle appears to be the case here. A class action will be superior to other available methods for adjudicating this controversy. As the course of the MDL has shown, each Plaintiff has theories of relief against a whole series of Defendants, from individuals who were church employees to corporations who provided financial or professional services to the plan to business organizations in which plan assets were invested. The remedy achievable by any individual plaintiff would be completely out of proportion to the costs of litigating so many claims against so many Defendants. The efficiency of utilizing the Rule 23 class structure far outweighs the interests of the members of the proposed settlement class in individually controlling the prosecution of their separate claims. *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 325 (E.D. Mich. 2001) (finding that class action is superior because it ensures fair and efficient adjudication).

Having decided that the requirements of Rule 23(a) and Rule 23(b)(3) are met, the Court finds that the Court will likely be able to certify the class for purposes of approving the settlement.

III. **Appointments of Class Counsel, Class Representatives, and Administrator and Adoption of Proposed Notice**

*A. Class Counsel*

Plaintiffs request the appointment of Milberg Coleman Bryson Phillips Grossman, PLLC; Osborne & Francis Law Firm, PLLC; Stranch Jennings & Garvey, PLLC; Kantor & Kantor, LLC, Lieff Cabraser Heimann & Bernstein, LLP; Blue, LLP; Wright & Schulte, LLC; and the AARP Foundation as class counsel for the settlement class. The Court may appoint class counsel if it determines the attorneys are adequate under Rule 23(g)(1) and (4). Fed. R. Civ. P. 23(g)(2). In appointing class counsel, the Court must consider:

21

(i) the work counsel has done in identifying or investigating potential claims in the action;

(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii) counsel's knowledge of the applicable law; and

(iv) the resources that counsel will commit to representing the class[.]

Fed. R. Civ. P. 23(g)(1)(A). The Court may also consider any other matter pertinent to counsel's ability to represent the interests of the class fairly and adequately. Fed. R. Civ. P. 23(g)(1)(B).

For the same reasons already discussed as part of the Court's analysis of other Rule 23 factors, the Court finds that class counsel meets the standard of Rule 23(g). The Court hereby appoints Milberg Coleman Bryson Phillips Grossman, PLLC; Osborne & Francis Law Firm, PLLC; Stranch Jennings & Garvey, PLLC; Kantor & Kantor, LLC, Lieff Cabraser Heimann & Bernstein, LLP; Blue, LLP; Wright & Schulte, LLC; and the AARP Foundation as class counsel for the settlement class.

### B. Class Representatives

The Court continues to find that named Plaintiffs have fairly and adequately protected the interests of the class as well as fulfilled their duties throughout the litigation, including participating in discovery and sitting for depositions. The Court therefore appoints named Plaintiffs as class representatives for the settlement class.

### C. Settlement Administrator

Plaintiffs next seek the appointment of Verita to oversee the administration of the settlements, including disseminating notice to the settlement class and administering and calculating the allocation of each settlement class member's pro rata share of the Net Settlement Amount and the proportionate payment of the Legacy Fund. Plaintiffs assert that Verita is an experienced settlement administration firm with sophisticated technological capabilities and is staffed by personnel well-versed in class action litigation. Verita, with oversight from proposed class counsel

22

and with assistance as necessary from the AMEC Department of Retirement Services, will handle all aspects of identifying and providing notice to potential members of the settlement class, receiving and handling opt-outs, calculating the allocations of class members' proportional shares of the net settlement amount, and overseeing the distribution of the settlement proceeds to the settlement class. AMEC Settlement Agr. §§ 4.2, 7.2-7.4, 8.1-8.2.4 (ECF No. 750-2); Newport Settlement Agr. §§ 4.2, 7.2-7.4, 8.1-8.2.4 (ECF No. 750-3); Lee Decl. ¶¶ 47-48 (ECF No. 750-4). Based on Verita's demonstrated experience, the Court appoints Verita as settlement administrator.

### D. Notice to the Settlement Class

When a class is conditionally certified under Rule 23(b)(3), the district court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). In a similar fashion, Rule 23(e)(1) requires a court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." *See Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402, 423 (6th Cir. 2012) (stating that "all that the notice must do is fairly apprise . . . prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interests") (internal quotation marks and citations omitted). The notice may be by one or more of the following methods: United States mail, electronic means, or other appropriate means. Fed. R. Civ. P. 23(c)(2)(B).

The Court finds that the notice plan for both settlements readily meets these standards, particularly so because AMEC Defendants have contact information and records available for the members of the settlement class. The Settlement Administrator, Verita, will directly notify settlement class members by first class mail (and by email where possible). AMEC Settlement Agr. § 2.3; Newport Settlement Agr. § 2.10, 7.4. The AMEC Defendants have agreed to provide Verita

with access to records and other available contact information for each plan participant who is believed to be a member of the settlement class, including name, email address, last known mailing address, and participant account history and activity for the plan. AMEC Settlement Agr. § 7.2; Newport Settlement Agr. § 7.2. The proposed long form notice provides details on the monetary and non-monetary benefits of both settlements, the process and deadlines for objecting to or opting out of either the AMEC Settlement and/or the Newport Settlement, and the date of the Final Approval Hearing. Verita will host key documents related to the litigation and the settlements at www.amechurchretirementsettlement.com, including Plaintiffs' forthcoming motion for attorneys' fees, costs, and service awards. Verita will disseminate class notice not more than 30 days after preliminarily approval ("the Notice Date"). AMEC Settlement Agr. § 7.3; Newport Settlement Agr. § 7.3. The notice plan adequately apprises all potential settlement class members of the terms of the settlement agreements, provides the opportunity to make informed decisions, and comports with due process.

## IV. Symetra's Standing and Objections to the Settlements

One final matter warrants discussion. The only non-settling Defendant to raise any objection to preliminary approval of the proposed settlements is Symetra. As a threshold question, Plaintiffs, the AMEC Defendants, and Newport call into doubt Symetra's standing to oppose preliminary approval. "[A] non-settling defendant, in general, lacks standing to object to a partial settlement." *Sweet v. Cardona*, 121 F.4th 32, 41 (9th Cir. 2024) (quoting *Waller v. Fin. Corp. of Am.*, 828 F.2d 579, 582 (9th Cir. 1987)); *see also Bhatia v. Piedrahita*, 756 F.3d 211, 218 (2d Cir. 2014). An exception to the general principle exists, however, when a non-settling defendant can "demonstrate that it will sustain some formal legal prejudice as a result of the settlement." *Sweet*, 121 F. 4th at 41. "Formal legal prejudice" is rare and exists only when "the settlement agreement *formally* strips a

non-settling party of a legal claim or cause of action, such as a cross-claim for contribution or indemnification, invalidates a non-settling party's contract rights, or the right to present relevant evidence at a trial." *Bhatia*, 756 F.3d at 218. Therefore, Symetra will only have standing to raise objections to the settlements if Symetra can show formal legal prejudice.

### A. Evidentiary Limitations in the Settlement Agreements

To support its standing to raise other objections, Symetra argues that provisions in the settlement agreements will preclude Symetra from presenting evidence of the settlements at trial. Section 1.23 of the AMEC settlement states as follows: "This Agreement is inadmissible as evidence against any Settling Party or any other Party in the Action except to enforce the terms of the Agreement . . . ." AMEC Settlement Agr. § 1.23 (ECF No. 750-2); *see also* Newport Settlement Arg. § 1.28 (ECF No. 750-3). Section 12.1 of the AMEC Settlement goes on to state that the agreement shall not be "offered or received against any AME Defendant as evidence . . . in any civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Agreement." AMEC Settlement Agr. § 12.1 (ECF No. 750-2); *see also* Newport Settlement Arg. § 12.1 (ECF No. 750-3).

The Court finds that Symetra's interpretation of the settlement agreements is not entirely persuasive. Symetra is simply not a party to either agreement. It is not clear then that any of the covenants contained in the settlements are binding on Symetra. So when § 1.23 of the AMEC settlement refers to the intent of the "Settling Parties" to resolve their dispute once and for all and then states that the agreement is not admissible against any "Settling Party," the agreement is arguably not applicable to non-settling parties like Symetra.

Even if the stipulated inadmissibly of the agreements could apply to Symetra, another more specific provision in the agreements makes clear that Symetra and other non-settling parties retain

the right to seek the admission of the agreements to the extent the Federal Rules of Evidence permit them to do so.  Federal Rule of Evidence 408 governs the admissibility of compromise offers and negotiations. Rule 408(a) prohibits the use of settlements "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a).  Rule 408(b) creates an exception to Rule 408(a)'s prohibition and permits a court to admit a settlement "for another purpose, such as proving a witness's bias or prejudice . . . ." Fed. R. Evid. 408(b).

Each agreement contains a provision concerning the inadmissibility of the agreements with reference to Rule 408. The AMEC settlement agreement reads as follows:

> Pursuant to Federal Rule of Evidence 408 and any similar provisions under the laws of other states, neither this Agreement nor any related documents filed or created in connection with this Agreement shall be admissible in evidence in any proceeding, including proceedings involving Defendants in the action who are not Settling Parties, except as a necessary to approve, interpret, or enforce this Agreement.

AMEC Settlement Agr. § 11.3.4.  In context, § 11.3.4 of the AMEC settlement agreement would arguably prohibit Symetra from introducing the settlement agreement "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction," just as Rule 408(a) provides.  The provision does not specifically address Rule 408(b)'s exceptions when evidence of a settlement could be admissible, though its reference to Rule 408 at least implies the possibility of an exception.  Accepting that reading of the provision, nothing in § 11.3.4 would stop Symetra from introducing the agreement "for another purpose, such as proving a witness's bias or prejudice . . . ." Fed. R. Evid. 408(b).  With or without the settlement agreement, Symetra would still need to satisfy Rule 408 in order to present evidence of the settlement at trial.  Thus, Symetra has not shown that the AMEC settlement agreement "formally strips" Symetra of its right to "present relevant evidence at a trial." *Bhatia*, 756 F.3d at 218.

26

What the AMEC settlement agreement states by implication concerning the operation of Rule 408, the Newport settlement agreement makes explicit. The Newport settlement agreement contains a nearly identical provision but adds even more specific language:

> Pursuant to Federal Rule of Evidence 408 and similar provisions under State of Tennessee law, neither this Agreement nor the Term Sheet nor any related documents filed or created in connection with this Agreement or the Term Sheet shall be admissible in evidence in any proceeding, including proceedings involving Defendants in the action who are not Settling Parties, except as a necessary to approve, interpret, or enforce this Agreement. This provision nor any other in this Agreement shall preclude a Non-Settling Defendant from arguing that the amount of any judgment that may be entered against it should be reduced or offset by this Settlement, as described in Section 2.6.3 above. ***Nor shall this provision prohibit a Non-Settling Defendant from using this Settlement Agreement for impeachment or to demonstrate bias, as permitted by the Court and in compliance with applicable rules of evidence.***

Newport Settlement Agr. § 11.3.4 (emphasis added). The Newport agreement seems to carve out an exception and makes the agreement admissible when a non-settling Defendant like Symetra attempts to use the agreement "for impeachment or to demonstrate bias." This suggests that the parties intended to preserve the right of any non-settling party to argue for the admissibility of the Newport settlement to impeach or show bias in a manner consistent with Rule 408(b).

For purposes of deciding whether to grant preliminary approval to the settlement, the Court's holds that Symetra lacks standing to object to the settlement agreements inasmuch as Symetra has not shown why the provisions of the agreements limiting the admissibility of the settlements in these proceedings constitutes formal legal prejudice to Symetra. Nothing in the Court's ruling or its discussion of the settlement agreements should be understood or construed as a prospective ruling on the admissibility of the agreements themselves or the fact that Plaintiffs, the AMEC Defendants, and Newport have reached a settlement of their disputes. The Court finds no reason to reach the question of whether the agreements will actually be admissible. Likewise, nothing in the Court's discussion

should be read as a limitation or an abridgement of any kind on Symetra's right to seek a subsequent

ruling from the Court on the admissibility of the settlements for a proper purpose, including one of

the purposes listed in Federal Rule of Evidence 408(b). The Court has no need to offer an advisory

opinion now on the admissibility of the agreements at a later stage of the proceedings. Suffice it to

say, the Court concludes that Symetra has not shown how the settlement agreements curtail its right

to "present relevant evidence at a trial" and has therefore not carried its burden to show formal legal

prejudice.

### B. The Bar Order Provision of the Newport Settlement

Symetra could also demonstrate formal legal prejudice and standing to challenge the

settlements if Symetra could show that "the settlement agreement *formally* strips [Symetra] of a legal

claim or cause of action, such as a cross-claim for contribution or indemnification." *Bhatia*, 756 F.3d

at 218. According to Symetra, the Newport settlement agreement provides for the issuance of a bar

order, which will eliminate Symetra's right to seek contribution from Newport. However, Symetra

does not argue that the bar order provision gives it standing to object to preliminary approval of the

settlement. Instead, Symetra argues that the bar order implicates the overall fairness of the

settlement. It is not at all clear then that Symetra has preserved the argument as a basis for its

standing to object to the Newport settlement. *Buetenmiller v. Macomb Cnty. Jail*, 53 F.4th 939, 946

(6th Cir. 2022) (holding that it is not enough "for a party to mention a possible argument in the most

skeletal way, leaving the court to . . . put flesh on its bones") (quoting *McPherson v. Kelsey*, 125

F.3d 989, 995–96 (6th Cir. 1997)). When "[i]ssues [are] adverted to in a perfunctory manner,

unaccompanied by some effort at developed argumentation," courts deem the issue forfeited. *Id.*

Because Symetra has raised the issue to argue that the settlements lack fairness, the Court finds that

Symetra has forfeited any argument that the bar orders might give Symetra standing to object to the

28

settlements.

Even if Symetra had not forfeited the question, the points Symetra did make about the bar order do not suggest to the Court that the Newport settlement agreement "strips" Symetra of any cross-claim against Newport for contribution or causes Symetra to suffer any other formal legal prejudice. A bar order bars "contribution and indemnification claims between the settling defendants and non-settling defendants so long as there is a provision that gives the non-settling defendants an appropriate right of set-off from any judgment imposed against them." *In re WorldCom, Inc. ERISA Litig.*, 339 F.Supp.2d 561, 568–69 (S.D.N.Y. 2004) (citing *In re Ivan F. Boesky Sec. Litig.,* 948 F.2d 1358, 1368–69 (2d Cir.1991)). The United States Court of Appeals for the Second Circuit has observed that in the absence of bar orders to limit the future liability of settling defendants, "it is likely that no settlements could be reached." *In re Ivan F. Boesky Sec. Litig.*, 948 F.2d at 1369. Courts will only approve a settlement agreement with a bar order if the bar order "is narrowly tailored and preceded by a judicial determination that the settlement has been entered into in good faith and that no one has been set apart for unfair treatment." *In re Masters Mates & Pilots Pension v. Riley*, 957 F.2d 1020, 1025 (2d Cir. 1992).

Section 2.6 of the Newport agreement sets out the terms of a "bar order" which Plaintiffs, the AMEC Defendants, and Newport have agreed the Court should enter.  Pursuant to § 2.6.2, the bar order "permanently bars, restrains, and enjoins all non-settling defendants ("Non-Settling Defendants") . . . from instituting . . . any action . . . for indemnity or contribution against [Newport] . . . ."  Newport Settlement Agr. § 2.6.2 (ECF No. 750-3).  Symetra contends that the Court has already ruled that contribution may be available under Tennessee law and that the bar order would prejudice Symetra's right to seek contribution.  But Symetra has not established that it possesses a right of contribution against Newport or that Newport and Symetra may be held jointly and severally

liable under Tennessee law. Symetra's pleadings have never alleged a cross-claim for contribution against Newport or otherwise asserted an entitlement to contribution from Newport under Tennessee law. While it is true Symetra is seeking contribution from AMEC, Symetra has never alleged a similar claim against Newport. *See* Symetra's Answer & Cross-Claim Against AMEC, Apr. 28, 2023 (ECF No. 214) (alleging a claim for contribution against AMEC in Count IV of the Cross-Claim).

Symetra cites in passing a previous order issued by the Court, in which the Court denied AMEC's motion to dismiss Newport's contingent cross-claim against the Church for contribution. Symetra characterizes the ruling as standing for the proposition that "contribution claims are possible under Tennessee law." Symetra's Resp. in Opp'n 7 (ECF No. 755). The Court's order speaks for itself. But at no point did the Court ever issue a ruling on the question of contribution among the named Defendants or whether there exists the possibility of joint and several liability in this case. The Court actually declined to reach the issue of joint and several liability among Defendants on Plaintiffs' claims, which had been raised for the first time in AMEC's motion to dismiss, unless and until all parties had been heard on "the applicability of joint and several liability." Order Denying Mot. to Dismiss 7, Jan. 26, 2024 (ECF No. 331). And in the year since the Court issued its order on AMEC's motion to dismiss, the parties have yet to seek a ruling on the question of joint and several liability. In sum, at this stage of the case, Symetra has not preserved any claim for contribution against Newport and has never sought a ruling from the Court on whether contribution even remains available on any of the claims alleged in the MDL under Tennessee law. [6]

---

[6] The Court would note for the record that Plaintiffs' Second Amended Complaint, which Plaintiffs filed in August 2024, added a new claim of civil conspiracy against both Newport and Symetra. Symetra has filed a motion to dismiss the civil conspiracy count from the Second Amended Complaint. Newport acknowledges in its reply brief that the civil conspiracy claims "carry joint and several liability" under Tennessee law. Newport's Reply 8 n.3 (ECF No. 762). Because the civil

To the extent Symetra could eventually show that joint and several liability with Newport is even possible in this case, the Newport settlement agreement provides an off-set in the event Plaintiff, the members of the class, or the AMEC Defendants prevail at trial and get a judgment against any of the non-settling Defendants including Symetra. Under § 2.6.3 of the Newport settlement agreement, the proposed bar order would provide that "as permitted by law, including Tennessee Code Section 29-11-105, any judgment entered in favor of Plaintiffs, Class Members, and/or AME Defendants against any Non-Settling Defendant may be reduced by [$40 million], unless otherwise agreed as part of any future settlement between Plaintiffs, AME Defendants, and any non-Settling Defendant."  In the ERISA context, settlement agreements containing a bar order with the possibility of a judgment reduction are permitted so long as the bar order or "settlement bar" does not "grant[] a non-settling defendant a judgment reduction less than the amount paid by settling defendants toward damages for which the non-settling defendant would be jointly and severally liable." *In re WorldCom, Inc. ERISA Litig.*, 339 F.Supp.2d at 568. Here, the proposed bar order would grant Symetra a right to off-set any judgment for Plaintiffs, the class, or the AMEC Defendants by $40 million.  Nothing in Symetra's presentation on the issue shows why the right to seek an off-set in the amount of $40 million in case of joint and several liability with Newport renders the bar order prejudicial to Symetra.  The Court concludes then that Symetra has not shown how the bar order outlined in the Newport settlement agreement would constitute formal legal prejudice to Symetra.  Therefore, Symetra lacks standing to oppose the partial settlements reached between Plaintiffs, the AMEC Defendants, and Newport.

---

conspiracy claim is the only basis to date for joint and several liability and Symetra is currently seeking the dismissal of the claim, Symetra's supposition about its right to contribution remains contingent and hypothetical. Symetra has not shown then that the bar order rises to the level of formal legal prejudice.

## CONCLUSION

The Court finds that the Rule 23 standard for preliminary approval of the AMEC settlement and the Newport settlement is met. Therefore, Plaintiff's Motion for Preliminary Approval is **GRANTED**. The Court will enter a separate order to govern the notice period and set the date for the final approval hearing.

The AMEC Defendants' Partial Motion to Dismiss (ECF No. 522) certain claims against them in Plaintiffs' Second Amended Complaint is **DENIED** as moot. Newport's Partial Motion to Dismiss (ECF No. 521) certain claims against it in Plaintiff's Second Amended Complaint and Partial Motion to Dismiss (ECF No. 640) AMEC's Cross-Claims are likewise **DENIED** as moot.

**IT IS SO ORDERED**.

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: March 24, 2025