**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION**

|  |  |
|---|---|
| **IN RE: AME CHURCH EMPLOYEE RETIREMENT FUND LITIGATION** | **MDL Docket No. 1:22-md-03035-STA-jay**<br><br>**ALL CASES** |

<u>**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENTS WITH
AMEC DEFENDANTS AND DEFENDANT NEWPORT GROUP, INC.,
AND
GRANTING MOTION FOR ATTORNEY'S FEES, COSTS, AND SERVICE AWARDS**</u>

This matter comes before the Court on Plaintiffs' Motion for Final Approval of Class Action Settlements with AMEC Defendants and Defendant Newport Group, Inc. (ECF No. 841) and Plaintiffs' Motion for Attorney's Fees, Costs, and Service Awards from Settlements with AMEC Defendants and Defendant Newport Group, Inc. (ECF No. 806). No opposing parties filed a response to the motions, although two of the conditional class members,[1] Reverend James Golden and Reverend Charles Scott, both retired AMEC elders, submitted objections to the motions (ECF Nos. 833, 834) and spoke at the Fairness Hearing/Status Conference on June 26, 2025. Charles Scott, Jr., was permitted to speak telephonically on behalf of his father.[2] The following named plaintiffs attended the hearing: Reverends Cedrick Alexander, Pierce Ewing, Ruben Boyd, Darryl Wade, and Charles R. Jackson (telephonically). Also in attendance, in addition

---

[1] On March 24, 2025, the Court conditionally certified the class for the purpose of the proposed settlements only. (ECF No. 775.)

[2] Mr. Scott is an attorney but has not made an appearance in this case.

to counsel for the parties, were Douglas Selby, general counsel of AMEC, and Reverend Brian Blackwell, executive director of AMEC's Department of Retirement Services. Approximately 250 conditional class members listened to the hearing telephonically but did not make any statements.[3]

At the beginning of the hearing, the Court's case manager announced his email address as instructed by the Court so that any questions about the motions could be emailed during the hearing. However, no questions were emailed. In addition to statements made by Plaintiffs' counsel during the hearing, counsel for the AMEC Defendants and Newport both stated that they were fully behind the settlements.

In essence,[4] the settlements provide that the AMEC Defendants will pay $20 million to settle Plaintiffs' claims against them, and Newport will pay $40 million to settle Plaintiffs' claims against it. These funds have already been placed in a non-reversionary Qualified Settlement Fund held in trust for the sole benefit of the settlement class members. The settlement amounts have been earning interest for the benefit of the class since the day that the AMEC Defendants and Newport transferred the amounts into the fund.  Upon entry of an order granting final approval of the settlements, the settlement administrator will transfer the balance of the Qualified Settlement Fund, i.e., the AMEC and Newport settlement amounts, plus interest earned prior to distribution, less costs for notice and administration, attorney's fees, costs, and service awards for the named plaintiffs, to a qualified trust.

The settlements also provide for the payment of attorney's fees, costs, and service awards to the named plaintiffs.  Additionally, the AMEC Defendants have agreed to changes to the governance and oversight of the AMEC Church Retirement Plan. The settlements will provide

---

[3] The Court will attempt to make dial-in access available at future hearings.
[4] This is merely a general summary of the settlements and does not override any particulars set forth below or in the settlement agreements.

relief to a class composed of "all persons [except for Defendants] who were participants, or were those participants' respective beneficiaries entitled to benefits, in the African Methodist Episcopal Church Ministerial Retirement Plan on June 30, 2021." (AMEC Settlement Agreement ¶ 2.6; ECF No. 750-3, Newport Settlement Agreement ¶ 2.7, ECF No. 750-2.)  The settlements preserve all claims against the non-settling defendants.

The parties have referred to the remaining assets that were found after it was discovered that money was missing from the Plan as the "the legacy plan." These funds continue to be held by Symetra in an annuity, and current retirement payments are being paid from that annuity.[5] Additionally, there are three real properties of unknown value in Florida.[6] At some point to be determined later, the assets of the legacy fund will be transferred to the qualified trust (to the extent permitted by federal tax law), and the legacy fund will be terminated with future retirement payments being made from the qualified trust.[7]

### Final Settlement Approval

At the outset, it is important to note that the law favors the settlement of class action lawsuits. *See, e.g.*, *UAW v. General Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007); *Griffin v. Flagstar Bancorp*, Inc., 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013); *In re Packaged Ice Antitrust Litig.*, 2011 WL 717519, at *7 (E.D. Mich. Feb. 22, 2011). "Given that class settlements are favored, the role of the district court is limited to the extent necessary to reach a reasoned

---

[5] The parties have estimated the value of the annuity held by Symetra as "roughly" $23 to $25 million. However, this is an estimate only.

[6] The actual titleholder of the three real properties is not clear at this juncture.

[7] The participants may have been provided with estimates of their accounts if the settlements are approved. Again, these are estimates only and are contingent on the date(s) of the deposits of the funds, interest rates, and other variables. Moreover, if other monies are recovered, these estimates will increase. However, the Court is not responsible for determining the value of each participant's annuity.

judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement taken as a whole, is fair, reasonable and adequate to all concerned." *IUE–CWA v. General Motors Corp.*, 238 F.R.D. 583, 593 (E.D. Mich. 2006) (noting "the general federal policy favoring the settlement of class actions) (citations omitted); *see also In re Packaged Ice*, 2011 WL 717519, at *8. Settlements like those before the Court recognize the uncertainties of law and fact and the risks and costs inherent in taking complex litigation to trial. *See Sheick v. Auto. Component Carrier LLC*, 2010 WL 4136958, at *15 (E.D. Mich. Oct. 18, 2010) (quoting *IUE-CWA*, 238 F.R.D. at 594).

The Court previously granted preliminary approval to Plaintiff's settlements with the AMEC Defendants and Newport after finding that the settlements were fair, adequate, and reasonable; the Court, thus, allowed dissemination of the Long Form Notices to the members of the proposed Class under Rule 23(e) of the Federal Rules of Civil Procedure, subject to further consideration at the Fairness Hearing. (Ord. p. 2, ECF No. 775.) The order specifically stated that it had not made a final determination that the settlements were fair, adequate, and reasonable.[8] (*Id.*) That determination is being made in this order and after consideration of the written briefs of the parties, the written objections and arguments made by Reverend Golden and Reverend Scott at the hearing,[9] statements by other non-parties at the hearing, statements by named plaintiffs at the

---

[8] The Court also conditionally certified the following class for purposes of these settlements only:

> Class: All persons who were participants, or were those participants' respective beneficiaries entitled to benefits, in the African Methodist Episcopal Church Ministerial Retirement Annuity Plan on July 30, 2021. Defendants are excluded from the Class.

(*Id.* p. 3.)

[9] Plaintiffs have asked the Court not to consider the objections of Reverend Golden and Reverend Scott. Their concerns are discussed below.

hearing, statements and arguments by counsel, and the entire record.[10]

"There are three steps which must be taken by the court in order to approve a settlement: (1) the court must preliminarily approve the proposed settlement, (2) members of the class must be given notice of the proposed settlement, and (3) after holding a hearing, the court must give its final approval of the settlement." *In Re Telectronics Pacing Sys. Inc.*, 137 F. Supp. 2d 985, 1026 (S.D. Ohio 2001) (citing *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983)). In the present case, the Court has preliminarily approved the proposed settlements, members of the class were given notice of the proposed settlements, and a Fairness Hearing was held. Now the Court turns its attention to whether the settlements should receive final approval.

The determination of whether a settlement is fair, adequate, and reasonable requires consideration of "whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522 (E.D. Mich. 2003) (citation omitted). The Court must consider a number of factors such as (1) the likelihood of success on the merits weighed against the amount and form of the relief offered in the settlement; (2) the complexity, expense, and likely duration of further litigation; (3) the opinions of class counsel and class representatives; (4) the amount of discovery engaged in by the parties; (5) the reaction of absent class members; (6) the risk of fraud or collusion; and (7) the public interest. *In re Packaged Ice*, 2011 WL 717519, at *8; see also UAW*, 497 F.3d at 631; *Griffin*,

---

[10] Symetra, a non-settling defendant, filed an objection to the preliminary approval of the settlements. Plaintiffs, the AMEC Defendants, and Newport questioned Symetra's standing to oppose preliminary approval. The Court determined that a non-settling defendant, in general, lacks standing to object to a partial settlement. (Ord. p. 24, ECF No. 774.) However, an exception to the general principle exists when the non-settling defendant can "demonstrate that it will sustain some formal legal prejudice as a result of the settlement." (*Id.* (citations omitted)). The Court determined that Symetra would have standing to raise objections only if it could show formal legal prejudice. (*Id.*) Symetra has failed to make such a showing.

2013 WL 6511860, at *3; *Cardizem*, 218 F.R.D. 508 at 522. No single factor is determinative, and the Court weighs each factor based on the circumstances of the case. *See Int'l Union v. Ford Motor Co.*, 2006 WL 1984363, at *21 (E.D. Mich. July 13, 2006). Moreover, the Court may "choose to consider only those factors that are relevant to the settlement at hand." *Id*. at *22; *see also Grenada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992). In the present case, the factors set out above support final approval of the settlements as explained below.

When considering the likelihood of the plaintiffs' success on the merits of the litigation, the ultimate question is whether the interests of the class as a whole are better served if the litigation is resolved by settlement rather than pursued. *Sheick*, 2010 WL 4136958, at *16 (citing *IUE-CWA*, 238 F.R.D. at 595). Here, the settlements reflect both the strengths of Plaintiffs' claims and the risk that the settling defendants may prevail on some or all of their defenses.

In granting preliminary approval, the Court considered the claims brought by Plaintiffs against the AMEC Defendants and Newport and their pending motions to dismiss and found that the parties were using settlement to resolve a legitimate dispute. Plaintiffs' success against these defendants remained uncertain, and it could take several more years to obtain relief through trial and appeal. Thus, this Court concluded that Plaintiffs have "ample reason to control the resolution of this dispute through negotiation today rather than litigation tomorrow." (Ord. (quoting *UAW*, 497 F.3d at 632), ECF No. 774.) The Court finds that Class Counsel and Class Representatives have weighed the costs and likelihood of success against these defendants at an eventual trial and in collecting on any judgment against the recovery achieved through the settlements and have made a reasonable determination that relief now is preferable to continued litigation.  Motions to dismiss remain pending, as do other disputes, and the deadlines for *Daubert* motions and dispositive motions has not yet passed. Without the settlements, Plaintiffs face the risk of rulings

adverse to their cause.

The complexity, expense, and likely duration of continued litigation also favor final approval. This case has had over a dozen defendants, multiple claims, counterclaims, cross-claims, and third-party claims, over fifty depositions, the production of over one and a half million pages of documents, multiple rounds of motion to dismiss, multiple motions to compel, a separate bankruptcy and adversary proceeding, possible criminal actions against at least one of the defendants, and disclosure of nine expert witnesses. Perhaps, most important, the money obtained from the settlements will allow the Plan participants to begin receiving increased retirement benefits sooner rather than later.

The settlements were reached after arms' length negotiations involving experienced counsel for Plaintiffs and the settling defendants. The AMEC settlement involved three mediations with former Tennessee Supreme Court Justice Janice Holder of the Tennessee Academy of Mediators and Arbitrators and the Newport settlement involved a preliminary mediation with Justice Holder and two subsequent mediations with A. Lee Parks. (Lee Decl. ¶¶ 26-30, 31-36, ECF No. 750-4.)

The opinions of the attorneys as stated in their declarations that the settlements are fair and reasonable provide support for final approval. *See Dick v. Sprint Commc'ns Co. L.P.*, 297 F.R.D. 283, 296 (W.D. Ky. 2014) ("Giving substantial weight to the recommendations of experienced attorneys, who have engaged in arms-length settlement negotiations, is appropriate ...") (quoting *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2010 WL 3341200, at *4 (W.D. Ky. Aug. 23, 2010)); *see also In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d. 336,341 (E.D. Pa. 2007). Plaintiffs' counsel's opinions that the settlements are in the best interest of the class are "entitled to significant weight," and those opinions "support[s] the fairness of the

class settlement." *In re Packaged Ice*, 2011 WL 717519, at *11 (quoting *Sheick*, 2010 WL 4136958, at *18). "In the absence of evidence of collusion (there is none here) this Court 'should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.'" *Date v. Sony Electronics, Int.*, 2013 WL 3945981, at *9 (ED. Mich. Jul. 31, 2013) (quoting *Vukovich*, 720 F.2d at 921-22).

The Court may presume that settlement negotiations were conducted in good faith and that the resulting agreements were reached without collusion unless there is contrary evidence. *Griffin*, 2013 WL 6511860, at *3; *In re Packaged Ice*, 2011 WL 717519, at *12; *Ford*, 2006 WL 1984363, at *26; *Sheick*, 2010 WL 4136958, at *19-20. The settlements in this case were reached after adversarial litigation. There is no evidence or suggestion that the negotiations leading to the settlements were collusive in any way. Instead, the settlements were negotiated in good faith with counsel on each side zealously representing the interests of their clients.

There has been extensive discovery to date such that counsel for Plaintiffs and the settling defendants were armed with sufficient background information and discovery and "had adequate information about their claims." *Griffin*, 2013 WL 6511860, at *4 (quoting *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004)).

As noted above, these factors all weigh in favor of final approval. However, the Court must also consider any objections that have been filed.[11] "A certain number of opt-outs and objections are to be expected in a class action. If only a small number are received, that fact can be viewed as indicative of the adequacy of the settlement." *Cardizem*, 218 F.R.D. at 527 (citations omitted). In this case, the Court received only two objections and no opt-outs. This reaction from the members of the conditional settlement class supports the adequacy of the settlements. *See, e.g.*, *Stoetzner v.*

---

[11] The objections themselves are discussed below.

*U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (holding that objections by about 10% of class "strongly favors settlement"); *TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 458-462 (2d Cir. 1982) (approving settlement despite objections of large number of class); *Taifa v. Bayh*, 846 F. Supp. 723, 728 (N.D. Ind. 1994) (approving class settlement despite objections from more than 10% of class).

The public interest also supports final approval of the settlements. "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Cardizem*, 218 F.R.D. at 530 (citation omitted); *see also Griffin*, 2013 WL 6511860, at *5.

Notice and Objections

Gerald Stranch, an attorney for Plaintiffs, appeared by videoconference at the Fairness Hearing and announced that notice had been given to the conditional class as to the preliminary approval of the settlement as previously instructed by the Court.[12]  He stated that notice was effective as demonstrated by the number of people who interacted with the notice administrator and those who directly questioned Plaintiffs' attorneys. According to Mr. Stranch, over ninety-five per cent of the class received direct mail notice and the other five per cent received some form of notice.

Specifically, Verita Global, the Court-appointed settlement administrator, mailed 4,391 notices in total and, of those, received 228 return-to-sender mailings. Of that group, Verita was

---

[12] *See also* Alex K. Thomas' Declaration of Settlement Administrator Re: Notice Procedures (ECF No. 841-1) describing the class list containing names, addresses, Social Security numbers, e-mail addresses, Plan balance information, and estimated pay amounts of 4,517 participants; the procedure for mailing and emailing the notice to these individuals; the settlement website and telephone hotline; the number of exclusions requests received (zero); the amount of funds received from AMEC and Newport; and a statement that the total amount of interest earned on that amount will exceed the total costs and fees of administration of this matter.

able to locate 116 new addresses and mailed new notices. Verita also emailed 2,970 notices. This process resulted in direct notice to over 95% of the Class, as stated by Mr. Stranch at the hearing. Verita also hosted key documents related to the litigation and the settlements, including Plaintiffs' Motion for Attorney's Fees, Costs, and Service Awards after it was filed on May 7, 2025, on a dedicated website that class members could access. Following the dissemination of notice, Class Counsel received calls from over seventy class members with questions about the settlements. Class Counsel spoke with nearly all of the callers directly and left repeated voicemails with the rest. (Verita Decl. ECF No. 783.)

> The Sixth Circuit has explained:
>
> Certification notice for class actions under Fed. R. Civ. P. Rule 23(c)(2) must be given before class members can be legally bound. And Rule 23(b)(3) class certification cannot bind a class without providing adequate notice as required by the Due Process Clause. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812, 105 S. Ct. 2965, 86 L.Ed.2d 628 (1985) ("The plaintiff must receive notice plus an opportunity to be heard and participate in the litigation, whether in person or through counsel."); *Eisen* [*v. Carlisle & Jacquelin*], 417 U.S. [156] at 177, 94 S. Ct. 2140 [1974] (denying that providing "no notice at all" could satisfy Rule 23(c)(2) or the Due Process Clause). Moreover, notice that is "incomplete or erroneous or ... fails to apprise the absent class members of their rights" does not satisfy due process. *Gooch v. Life Investors Ins. Co. of America*, 672 F.3d 402, 423 (6th Cir. 2012) (quoting 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1797.6 (2d ed. 1996)).

*Faber v. Ciox Health*, LLC, 944 F.3d 593, 603 (6th Cir. 2019).

In the present case, although Mr. Scott, Jr., mentioned that the procedure to object to the settlements was not easily discernable to a layperson, the Court finds that notice was, in fact, adequate as evidenced by the numbers of conditional class members who responded to the notice and those who dialed in to listen to the hearing. However, the Court takes note that some of the language in the preliminary approval order may have appeared to be somewhat hyper-technical and confusing, e.g., state "all grounds for the objection, with specificity and with factual and legal

10

support for each stated ground," which is one reason that the Court has given the two objectors some leeway in how they filed their objections.

Plaintiffs' attorneys have asked the Court not to consider the objections on timeliness and substantive grounds.[13] However, the Court finds that, in the interest of justice and to ensure that the record is complete, the objections and in-court statements should be taken into consideration by the Court. Moreover, Plaintiffs have submitted emails between their counsel and Reverend Golden and Reverend Scott indicating that there were discussions about the issues raised in the objections prior to the hearing. (ECF Nos. 841-2, 841-3.) Thus, Plaintiffs were prepared to address those issues at the hearing and cannot claim surprise or prejudice by the Court's consideration of the objections.

Reverend Golden asked to have *The Doctrine and Discipline of the African Methodist Episcopal Church Doctrine and Discipline* (2021) ("*Book of Discipline*") made an exhibit to his remarks. The Court granted his request. In his remarks, Reverend Golden referenced the ecclesiastical foundation for his arguments as generally provided in *The Book of Discipline*.[14]

The objections filed by Reverend Golden and Reverend Scott involve three issues: the manner of distribution of the funds, the amount of attorney's fees, and the $20,000 service award to each named plaintiff. It is important to note that neither Reverend Golden and Reverend Scott

---

[13] Plaintiffs contend that Reverend Scott filed his objection one day late, while Reverend Scott contends that his objection was timely. The Court finds that any delay, if there was a delay, was *de minimis* and did not prejudice any of the parties.

[14] The *Book of Discipline* provides that the mission of the AME Church is "to minister to the social, spiritual and physical development of all people." (Hearing Exhibit 1, p. 21.) Ministers are trained to further this mission and are compensated with a salary and various benefits which expressly include "pension or retirement." (*Id.* at pp. 152, 167.) All members have the responsibility of Christian stewardship to use their time, talents, and money for God's "benefit and glory." (*Id.* at p. 54.) Ministerial candidates must meet strict educational and character requirements before being given a pastoral appointment. (*Id.* at pp. 127-138.) Ministers have a mandatory retirement age of seventy-five although they may retire sooner. (*Id.* at p. 171.)

nor anyone else has made any objection to the amount of the settlements or the settlements themselves.

At the outset, the Court acknowledges and commends the lifetime of service of Reverend Golden and Reverend Scott and other church workers affected by the losses suffered by the Plan. Serving others is never an easy job, especially when the pay is not significant. The Plan participants relied on the promise of full pension benefits when they retired as outlined in *The Book of Discipline* and have been confronted with a broken promise just when they most need those benefits. The Court agrees with Reverend Scott's statement that the Plan participants have done nothing wrong and has made its decision based on considerations of how best to help those who have been injured.

<u>Manner of Distribution of Funds</u>

At the hearing, Reverend Golden expressed his concern that each retiree might not receive his or her pro rata share according to the contributions each retiree made as contained in the records of the Director of Retirement Services. He also asked for more specificity in the distribution plan so that each retiree would know what he or she could expect to receive. Mr. Scott, Jr., reiterated on behalf of his father, Reverend Scott, that the retirees should recover according to each individual's contributions to the Plan and age, with more consideration given to those at or near retirement age at the time of the discovery of the misappropriation of the funds.

The Court has previously determined that "the settlements provide equitable treatment for class members"[15] (Ord. p. 14, ECF No. 774) because each retiree will recover proportionally what

---

[15] At the hearing, Mr. Stranch gave the example of someone contributing $300,000 to the Plan while another person contributed $100,000. The person putting in the larger amount would receive more money under the settlements than the person that put in less money because recovery is based on the participant's proportionate share of the losses.

he or she invested.[16]

> The agreements call for the administrator to apportion the settlement funds to each class member on a pro rata basis, and plan participants entitled to an immediate disbursement of their retirement funds will have access to their share of the settlement funds very soon after the final approval of the settlements. Although members of the class will receive different amounts from the settlements, they will receive shares of the proceeds based on a formula and relative to their individual losses. This allocation is fair and equitable.

(*Id.*) Specifically, the settlement agreements provide that the settlement amounts will be allocated pro rata to Settlement Class Members based on the ratio of the Settlement Class Member's account balance as of June 30, 2021, to the total value of all Settlement Class Member's account balances as of June 30, 2021, accounting for any distributions taken by participants between June 30, 2021, and the date that those balances were retroactively calculated. (AMEC Settlement Agreement ¶ 4.1; ECF No. 750-3, Newport Settlement Agreement ¶ 4.1, ECF No. 750-2.) Members are not required to submit a claim to receive an allocation of their pro rata share of the settlement amounts. However, to be clear, the present settlements will not make the retirees whole. The litigation continues with that goal in mind and with the assurance of Plaintiffs' counsel that claims against all other defendants in this matter are being actively pursued.

As for the level of the specificity of the distribution of the settlements, Plaintiffs' motion for preliminary approval of the settlements sets out that the settlement "will be allocated pro rata to Settlement Class Members based on the ratio of the Settlement Class Member's account balance as of June 30, 2021 to the total value of all Settlement Class Member's account balances as of June 30, 2021, accounting for any distributions taken by participants between June 30, 2021 and the date that those balances were retroactively calculated." (Mot. p. 11, ECF No. 750-1 (citation

---

[16] Reverend Scott suggested that a special subclass of retirees over a certain age could be created based on hardship. However, the Court knows of no authority that would allow it to designate such a subclass, and Reverend Scott did not provide any such authority.

omitted).) Moreover, "Settlement Class Members need not submit a claim, they will simply receive a pro rata share based on the portion of their account balance on June 30, 2021 (the last quarter before the true value of the Plan was revealed) as compared to the total value of all Class Member's account balances on the same date." (*Id.* at p. 20 (citation omitted).)

As explained by Mr. Stranch at the hearing, the "Notice of Class Action Settlements and Fairness Hearing" has a section titled "5. How will my share of the Net Settlement Amount be calculated and distributed?" (Not. p. 4, ECF No. 750-5.) This section sets out how each pro rata share of the settlement amount will be calculated and distributed. The following section "6. How much will my share of the Net Settlement Amount be?" states how much each Plan participant is estimated to receive.[17] (*Id.* at p. 6.) The notice also contains a section "12. Where can I get more information about the Settlements?"  (*Id.* at p. 9.) This section directs participants to a website, amechurchretirementsettlement.com., to obtain a complete copy of the settlements, the notice itself, other documents filed in the lawsuit, and periodic updates. (*Id.*)

In summary, those participants who are the oldest will most likely have paid into their retirement accounts for a longer period of time resulting in a bigger distribution than someone who just started paying into the account. That is, they should receive more because presumably they have been in the class longer and have incurred more damages. "As a part of its exacting and thorough examination of a class-action settlement, a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford v. Lexington-Fayette Urban Cty. Gov't*, 2008 WL 4724499, at *9 (E.D. Ky. Oct. 23, 2008) (citation omitted). In the present case, the Court finds that the allocation of the settlement funds is fair, reasonable, and adequate as it apportions funds based

---

[17] The form itself states "[y]our individual share of the Net Settlement Amount is estimated to be $_____." (*Id.*) The form will be individualized for each participant after final settlement approval.

on the contributions of each participant and his/her length of service.

Attorney's Fees

As part of the settlement motion (ECF No. 841) and in a separate motion (ECF No. 806), Plaintiffs' counsel seek an award of one-third of the settlement amounts (including the interest earned on the settlement amounts prior to distribution) in attorney's fees and $1,326,003.68 as reimbursement for out-of-pocket expenses. In support of their motion, Plaintiffs have filed the declarations of Plaintiffs' Steering Committee, along with Co-Lead Counsel, and Liaison Counsel, Matthew E. Lee (ECF No. 806-2), Gregorio ("Greg") A. Francis (ECF No. 806-3), J. Gerard Stranch (ECF No. 806-4), Julie Nepveu (ECF No. 806-5), Dhamian Blue (ECF No. 806-6), Susan L. Meter (ECF No. 806-7), Kenneth S. Byrd (ECF No. 806-8), and Richard Schulte (ECF No. 806-9). Attached as an exhibit to each declaration is a firm resume detailing the background and experience of each member of the Plaintiffs' Steering Committee, Liaison Counsel, and Co-Lead Counsel, as well as that of their participating colleagues.

Plaintiffs have also submitted the Declaration of Brian T. Fitzpatrick, Milton R. Underwood Chair in Free Enterprise and Professor of Law at Vanderbilt University in Nashville, Tennessee (ECF No. 806-10), who opines that the attorney's fees requested are reasonable in light of empirical studies and research on economic incentives in class actions.[18]

Plaintiffs filed their motion under Fed. R. Civ. P. 23(h) and 54(d)(2). Fed. R. Civ. P. 23(h) provides that "[i]n a certified class action, the court may award reasonable attorneys' fees and non-

---

[18] Professor Fitzpatrick graduated from the University of Notre Dame in 1997 and Harvard Law School in 2000 and then served as a law clerk to Judge Diarmuid O'Scannlain on the United States Court of Appeals for the Ninth Circuit and to Justice Antonin Scalia on the United States Supreme Court. He joined the Vanderbilt law faculty in 2007, after serving as the John M. Olin Fellow at New York University School of Law. He also practiced law for several years in Washington, D.C., at Sidley Austin LLP. (ECF No. 806-10.)

taxable costs that are authorized by law or by the parties' agreement." The request for an award of attorney's fees and non-taxable costs in a class action must be made by motion under Fed. R. Civ. P. 54(d)(2), and notice of the motion must be served on all parties and directed to class members in a reasonable manner. *In re Auto. Parts Antitrust Litig.*, 2015 WL 13715592, at *1 (E.D. Mich. July 15, 2015).

The Court finds that the requirements of Rule 23(h)(1) have been satisfied. The Court previously appointed Verita, an experienced third-party administrator, to provide notice to the settlement class via first class mail and email. (Ord. ECF No. 774.) The AMEC Defendants provided Verita with access to records and reasonably available contact information for each person believed to be a potential class member, including name, email address, last known mailing address, and participant account history and activity for the Plan. Notice to the conditional settlement class members informed the members of Interim Lead Counsel's intention to seek an attorney's fee award of up to one-third of the combined settlement funds and reimbursement of litigation costs and expenses. The notice provided class members the opportunity to object after the motion for attorney's fees and motion for settlement approval were filed.

Neither Reverend Golden nor Reverend Scott nor anyone else has objected to an award of attorney's fees and costs or has complained of the quality of the representation of Plaintiffs' counsel; instead, Reverend Golden and Reverend Scott object to the amount of the fees.

After acknowledging the existence of the contingency fee arrangement between named plaintiffs and their attorneys,[19] Reverend Golden argued that, instead of a one-third fee, a twenty per cent fee would be more appropriate. According to Reverend Golden, this lawsuit is not

---

[19] Attorney Lee states in his declaration that Plaintiffs' counsel took this case on a contingency fee basis (ECF No. 806-2), and Reverend Jackson, a named plaintiff, confirmed at the hearing that a one-third contingency fee was included in the contract that he signed with Attorney Greg Francis.

"complex" - although he agreed that it is "complicated" with many people and entities involved and numerous issues that have been raised. Reverend Golden also questioned why the attorneys should receive a fee now when the litigation is on-going, as opposed to at the conclusion of the case. Mr. Scott, Jr., also suggested that the Court should wait to award fees until the conclusion of the lawsuit.

While Reverend Golden is correct that the most basic issue of the case is simple – it appears to be undisputed by all involved that the retired ministers and other Plan participants are entitled to recoup their lost retirement benefits – the subsidiary issues surrounding who is responsible for making them whole and under what theory of law is not so simple. Numerous claims were identified and brought against many defendants. As has been noted, over fifty depositions have been taken in this matter. There are over a million and a half pages of documents that have been produced with over nine hundred docket entries. Plaintiffs' counsel has had to defend against several multi-issue dispositive motions most of which deal with complicated matters of law. Moreover, the facts throughout this litigation have been hotly contested by the parties.  And, by its very nature, multi-district litigation, which here involves six member cases, is complex.

Reverend Scott described the amount of fees sought as a "moral outrage" compared to the average salary of an AMEC minister. He pointed out that the amount of fees requested would considerably reduce the recovery of the Plan participants. The Court acknowledges the "moral outrage" felt by the Plan participants at the diminution in value of their retirement funds. However, that outrage is better directed at the harm done to the participants by those found to be responsible for the loss of Plan assets. Plaintiffs' attorneys are working to correct that harm and must be paid for that work.

Attorney Mark Neilson stated that Newport took no position on the amount of an attorneys'

fee award, but he described Plaintiffs' counsel's work as being aggressive.

The Supreme Court "has recognized consistently that a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). This doctrine, often referred to the as "common fund doctrine," "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Boeing*, 444 U.S. at 478. Here, it is undisputed that Plaintiffs' counsel is entitled to an award of fees. The question for the Court is how much that award should be.

Accordingly, the Court must first determine the method to use in calculating the award. Courts have discretion to award fees based on either (1) a percentage-of-the-fund calculation, or (2) a lodestar/multiplier approach. Under the "percentage-of-fund" method, the Court determines a percentage of the settlement to award class counsel. *See In re Telectronics Pacing Sys. Inc.*, 137 F. Supp. 2d 1029, 1041 (S.D. Ohio 2001). In the "lodestar/multiplier approach," "the court calculate[s] the reasonable number of hours submitted multiplied by the attorneys' reasonable hourly rates," which the Court then increases using a "multiplier" to account for, inter alia, the costs and risks involved in the litigation. *Id.* (citation omitted.) The percentage-of-the fund method is the preferred method in common fund cases in this Circuit. *See In Re Se. Milk Antitrust Litig.*, 2013 WL 2155387, at *2 (E.D. Tenn. May 17, 2013) ("[T]he trend in the Sixth Circuit is towards adoption of a percentage of the fund method in common fund cases.") (internal quotation omitted). This method of awarding attorney's fees is preferred because it eliminates disputes about the reasonableness of rates and hours, conserves judicial resources, and aligns the interests of class counsel and the class members. *See Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 515

(6th Cir. 1993); *In re Packaged Ice*, 2011 WL 6209188, at *16; *In re Delphi Corp. Sec. Derivative & ERISA Litig.*, 248 F.R.D. 483, 502 (E.D. Mich. 2008); *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 762 (S.D. Ohio 2007) (stating that the Sixth Circuit has "explicitly approved the percentage approach in common fund cases."); *In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 2946459, *1 (E.D. Tenn. Jun. 30, 2014).

Plaintiffs ask the Court to apply the percentage-of-the-fund method to determine attorney's fees[20] and argue that fees in the amount of one-third of the common fund are reasonable. The Court agrees that this is the proper method to use in this case.

In common fund cases, the award of attorney's fees need only "be reasonable under the circumstances." *Rawlings*, 9 F.3d at 516. Plaintiffs have correctly set out the standard for determining when an award of attorney's fees in a common fund case are reasonable. When awarding fees, a Court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved. *Id.* Several factors may affect the reasonableness of an award: (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides. *See Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009) (citation omitted); *see also Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974).

The settlement funds total $60,000,000, prior to the accrual of interest. The Court finds that the settlement confers a substantial cash benefit on the members of the settlement class and the

---

[20] Plaintiffs are requesting a fee award of one-third of the settlement amounts and one-third of the interest earned on the settlement amounts prior to distribution.

value of the settlement is immediate and readily quantifiable. The results achieved provide a clear benefit to the settlement class: an immediate and certain payment of $60,000,000 plus accrued interest, less attorney's fees, litigation costs and expenses, and notice and claims administration costs will be placed into the qualified trust for the payment of retirement benefits.

Plaintiffs' counsel vigorously and effectively pursued the claims. These efforts included factual investigation, drafting complaints, reviewing and analyzing documents, taking depositions, responding to discovery motions, motions to dismiss, and other motions, negotiating the terms of the settlements, and preparing the settlement documents. Multi-district litigation is inherently complex. *See, generally, In re Bard IVC Filters Prods. Liab. Litig.*, 603 F. Supp. 3d 822, 831 (D. Ariz. 2022), *aff'd sub nom. In re Bard IVC Filters Prod. Liab. Litig.*, 81 F.4th 897 (9th Cir. 2023) (describing multi-district litigation as "a complex and consolidated litigation process"); *In re Merck & Co., Inc. Vytorin Erisa Litig.*, 2010 WL 547613, at *10 (D.N.J. Feb. 9, 2010) ("[M]ulti-district class action litigation is inherently complex involving classes of persons from multiple states and consolidation of cases from multiple districts."); *In re Invs. Funding Corp. of New York Sec. Litig.*, 562 F. Supp. 519, 521 (S.D.N.Y. 1983) (acknowledging that multi-district litigation is "manifestly complex, requiring counsel to handle the many organizational and strategic problems inherent in a multidistrict litigation"). The legal and factual issues are complicated and highly uncertain in the outcome. This case is no exception.

There is no dispute that Interim Lead and Liaison Counsel are qualified to litigate multi-district class action claims, and they have performed their duties skillfully, diligently, efficiently, and reasonably.

Plaintiffs' Counsel are operating on a contingency basis and bear the risk of non-payment in pursing these claims. Moreover, the litigation is on-going, and counsel continues to bear the risk

of non-payment for their future work. In the absence of these settlements, Plaintiffs would be facing continued litigation against these two defendants.

The Court has conducted a lodestar "cross-check" with respect to the attorney's fee award. According to the records and declarations submitted, since March 2022, Plaintiffs' Counsel have worked more than 19,494.3 hours on this matter, which at current billing rates for each firm, is collectively worth over $16,467,751. (Lee Decl. ¶¶ 44-47, ECF No. 806-2.) The fee requested represents a multiplier of approximately 1.21 on the lodestar. The Court finds that a 1.21 multiplier is further evidence of the reasonableness of the fee request. *See In re Cardinal*, 528 F. Supp. 2d at 767-68 (approving multiplier of 6, and observing that "[m]ost courts agree that the typical lodestar multiplier" in a large class action "ranges from 1.3 to 4.5"). This cross-check confirms the reasonableness of a one-third award.

After considering the appropriate factors, the Court finds that attorney's fees of one-third are reasonable. The one-third fee requested is within the range of fee awards made by courts in this Circuit. *See, e.g.*, *In re Prandin Direct Purchaser Antitrust Litig.*, 2015 WL 1396473 (E.D. Mich. Jan. 20, 2015); *In re Packaged Ice*, 2011 WL 6209188, at *19; *In re Skelaxin*, 2014 WL 2946459, at *1; *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 528 (E.D. Ky. 2010); *Bessey v. Packerland Plainwell, Inc.*, 2007 WL 3173972, at *4 (W.D. Mich. 2007); *In re National Century Financial Enterprises, Inc. Investment Litig.*, 2009 WL 1473975, at *5 (S.D. Ohio May 27, 2009); *Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 503 (E.D. Mich. 2000).

Finally, the Court will address whether attorney's fees should be paid on an interim basis or at the end of the case. This matter was filed in 2022 and, thus, has been ongoing for over three years. Multiple claims remain to be litigated against several defendants. Trial is not set until 2026. The Court finds that delaying a fee until the conclusion of this matter would cause substantial

hardship for Plaintiffs and their attorneys. Moreover, if Plaintiffs are not successful against the remaining defendants, there would be no money from which counsel could be paid. Therefore, the Court finds that an interim award is appropriate. Interim Lead Counsel are authorized to allocate among Plaintiffs' Counsel the attorney's fees and reimbursed litigation costs and expenses in accordance with each firm's contribution to the prosecution of the case.

### Service Awards to Named Plaintiffs

The settlements provide for payments of $20,000 to each of the ten named plaintiffs as service awards for a total of $200,000. This is in addition to the amount they will recover as Plan participants. At the hearing, Mr. Stranch described the participation of the named plaintiffs in the litigation as being "active," including attending most of the fifty-four depositions. Neither the objectors nor anyone else has disputed the level of participation of the named plaintiffs or their legal right to receive a service award. Reverend Charles Jackson, a named plaintiff, spoke telephonically and described how, prior to filing suit, he asked many leaders in the church, the General Board, the Council of Bishops, and other pastors for help, including filing a lawsuit, in resolving the issues with the Plan, but they declined.

"[C]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Ross v. Jack Rabbit Servs.*, 2016 WL 7320890, at *5 (W.D. Ky. Dec. 15, 2016) (citing *Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933, at *7 (N.D. Ohio, Mar. 8, 2010)); *see also Cook v. Papa John's Paducah, LLC*, 2022 WL 301796, at *4 (W.D. Ky. Feb. 1, 2022). The following factors may be used to determine when service awards are appropriate:

> (1) the action taken by the Class Representatives to protect the interests of the Class Members and others and whether these actions resulted in a substantial benefit to Class Members; (2) whether the Class Representatives assumed substantial direct and indirect financial risk; and (3) the amount of time and

effort spent by the Class Representatives in pursuing the litigation

*In re Sketchers Toning Shoe Prods. Liab. Litig.*, 2013 WL 2010702, at *14 (W.D. Ky. May 13, 2013) (citation omitted). In this case, Reverend Jackson's statements and those of Plaintiffs' counsel show that he and the other nine named plaintiffs "initiated this lawsuit under [their] name[s] and were "directly and regularly involved in this litigation and accepted both financial and reputation risks by commencing and supporting it." *Burnham v. Papa John's Paducah, LLC*, 2020 WL 2065793, at *4 (W.D. Ky. Apr. 29, 2020). Accordingly, the Court finds the service awards in the amount proposed to be warranted and are, therefore, approved.

<u>Summary and Conclusion</u>

Nothing presented subsequent to the preliminary order of approval has convinced the Court that its findings in the preliminary order that the settlements were fair, adequate, and reasonable are contrary to the facts or the law. Having presided over this litigation for over three years, the Court is familiar with the merits of the claims and defenses, the risks facing the parties, and the public interest in resolving litigation. Beginning with the preliminary approval motion, the Court had the opportunity to consider the reasonableness of the settlements and the terms of the settlement agreements after considering the motion for approval, the motion for attorney's fees and costs, the objections, and the supporting materials. The Court agrees that the settlement between Plaintiffs and the AMEC Defendants and the settlement between Plaintiffs, the AMEC Defendants, and Newport are fair, reasonable, and adequate; therefore, the settlements are granted final approval under Rule 23 of the Federal Rules of Civil Procedure. Additionally, the motion to award attorney's fees, costs and service awards is granted. The terms of the settlements are as follows:

1.     As herein, "Plaintiffs" are Plaintiffs Rev. Pearce Ewing, Rev. Charles R. Jackson,

Presiding Elder Cedric V. Alexander, Rev. Derrell Wade, Rev. Reuben J. Boyd, Presiding Elder

Phillip Russ, IV, Lynette Glenn, Guardian of Rev. Marcius King, Rev. Matthew Ewing, Candace

L. Carmichael, as Administrator of the Estate of Rev. A. Offord Carmichael, Deceased, and Rev.

Diane Conley. "AME Defendants" refers collectively to African Methodist Episcopal Church

("AMEC"), AMEC Inc., AMEC Ministerial Retirement Annuity Plan, AMEC Department of

Retirement Services, AMEC General Board, and AMEC Council of Bishops. "Newport" refers to

Defendant Newport Group, Inc. "Settling Defendants" refers collectively to the AME Defendants

and Newport. "Settling Parties" refers collectively to Plaintiffs, the AME Defendants, and

Newport. The "AME Settlement" refers to the settlement reached between Plaintiffs and the AME

Defendants on all of Plaintiffs' claims asserted against the AME Defendants in this Action. The

"AME Agreement" refers to the November 27, 2024 Class Action Settlement Agreement and

Release executed by Plaintiffs and the AME Defendants. The "Newport Settlement" refers to the

settlement reached between Plaintiffs, the AME Defendants, and Newport on all of Plaintiffs and

the AME Defendants' claims asserted against Newport in this Action. The "Newport Agreement"

refers to the March 4, 2025 Class Action Settlement Agreement and Release executed by Plaintiffs,

the AME Defendants, and Newport.

2.      The Court has jurisdiction over the subject matter of the Action, the named

Plaintiffs, the Class, and the Settling Defendants.

## I.      FINAL APPROVAL OF THE SETTLEMENTS

3.      Pursuant to Federal Rule of Civil Procedure 23, the Court certifies the following

Class for purposes of rendering judgment on the AME Settlement and the Newport Settlement

only:

> All persons who were participants, or were those participants' respective
> beneficiaries entitled to benefits, in the African Methodist Episcopal Church

Ministerial Retirement Annuity Plan on June 30, 2021. Defendants are excluded from the Class.

4.      The prerequisites to certifying a class under Rule 23(a) are satisfied in that:

a.      The members of the Class defined in the AME Agreement and the Newport Agreement are so numerous as to make joinder impracticable. The Class is estimated to have approximately 4,452 members;

b.      There are questions of law or fact common to the Class;

c.      The claims or defenses of the Class Representatives are typical of the claims or defenses for the Class Members; and

d.      The Class Representatives and Class Counsel will fairly and adequately protect the interests of the Class Members.

5.      For purposes of effectuating the AME Settlement and the Newport Settlement only, the Court finds that the standard for class certification under Federal Rule of Civil Procedure 23(b)(3) is met because the questions of law or fact common to the Class predominate over individual questions and class action litigation is superior to other available methods for the fair and efficient adjudication of this controversy.

6.      The Court confirms the appointment of Plaintiffs as the Class Representatives for purposes of both the AME Settlement and the Newport Settlement. The Class Representatives have adequately represented the Class with respect to both Settlements.

7.      The Court confirms the appointment as Class Counsel the law firms of Milberg Coleman Bryson Phillips Grossman, PLLC, Osborne & Francis Law Firm, PLLC, Stranch Jennings & Garvey, PLLC, Kantor & Kantor, LLC, Lieff Cabraser Heimann & Bernstein, LLP, Blue, LLP, Wright & Schulte, LLC, and the AARP Foundation for purposes of both the AME Settlement and the Newport Settlement. Solely for purposes of effectuating the Settlements, Class

Counsel are authorized to act on behalf of the Class Representatives and all other Class Members with respect to all acts or consents required by or that may be given pursuant to the AME Agreement and the Newport Agreement, including all acts that are reasonably necessary to consummate the AME Settlement and the Newport Settlement. Class Counsel have adequately represented the Class with respect to both Settlements.

8.    The Court finds that adequate notice of the AME Settlement and the Newport Settlement was provided under the Class Action Fairness Act by the AME Defendants and Newport, respectively.

9.    The Court has reviewed the Notice Plan for both Settlements and the Declaration of Alex K. Thomas of Verita Group, LLC describing the results of the notice campaign and finds that the Notice Plan constituted the best notice practicable under the circumstances to the Class of both Settlements and fully complied with the requirements and due process of Federal Rule of Civil Procedure 23(e).

10.    The Court has specifically considered the factors relevant to class action settlement approval for both the AME Settlement and the Newport Settlement, including the factors set forth in Federal Rule of Civil Procedure 23(e)(2) as well as the overlapping factors in *International Union, UAW v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007):  (1) the "risk of fraud or collusion," (2) the "complexity, expense and likely duration of the litigation," (3) the "amount of discovery engaged in by the parties," (4) the "likelihood of success on the merits," (5) the "opinions of class counsel and class representatives," (6) the "reaction of absent class members," and (7) the "public interest."

11.    Pursuant to Federal Rule of Civil Procedure 23(e), the Court hereby grants final approval of the AME Settlement and the Newport Settlement, approves the AME Agreement and

the Newport Agreements, and finds that both Settlements are fair, adequate, and reasonable and in the best interests of the Class under Rule 23(e) of the Federal Rules of Civil Procedure ("Rule 23"), based on the following factors, among other things:

       a.      There is no fraud or collusion underlying either the AME Settlement or the Newport Settlement. Both Settlements were reached as a result of extensive arm's-length negotiations that occurred over the course of many months and that were led by respected, independent mediators.

       b.      The complexity, expense, and likely duration of continued litigation between the Settling Parties favors settlement between Plaintiffs, the AME Defendants, and Newport. Both Settlements provide meaningful benefits to the Settlement Class Members on a much shorter timeframe than if litigation between the Settling Parties continued to summary judgment, trial, or possibly appeal.

       c.      The Settling Parties engaged in significant fact discovery (via document production, third-party discovery, and depositions) prior to reaching both the AME Settlement and the Newport Settlement.

       d.      The support of the Named Plaintiffs, Settlement Class Counsel, the AME Defendants and their counsel, and Newport and their Counsel, all of whom have participated actively and adequately in this litigation and have evaluated the Settlements, favors final approval.

       e.      The positive reaction of absent class members — signified by the lack of opt-outs to the Settlements — favors final approval.

       f.      There is a strong public interest in encouraging settlements in class action litigation given the complexity and unpredictability of such cases. Public interest favors

27

the AME Settlement and the Newport Settlement.

12.    Two class members submitted objections to the Settlements. The Court has carefully considered those objections (ECF Nos. 833 and 834) but finds that they lack merit as discussed above.

13.    The Settling Parties are directed to perform their Settlements in accordance with the terms set forth in the respective Settlement Agreements.

## II.    FINAL JUDGMENT ON THE CLAIMS BETWEEN THE SETTLING PARTIES

14.    By this Order and upon the Effective Date, in consideration of the monetary sum provided by the AME Defendants and pursuant to the terms and definitions set forth in Paragraphs 2.12, 2.14, 2.25, 2.26, 2.27, 2.35, and 10.1-10.13 of the AME Agreement, the Releasing Persons finally release the Released Parties of the Released Claims as a result of the AME Settlement. All Class Members, except for those who timely opted out of the AME Settlement, shall be fully subject to all of the provisions in the AME Agreement.

15.    By this Order and upon the Effective Date, in consideration of the monetary sum provided by Newport and pursuant to the terms and definitions set forth in Paragraphs 2.13, 2.15, 2.26, 2.27, 2.28, 2.36, and 10.1-10.13 of the Newport Agreement, the Releasing Persons finally release the Released Parties of the Released Claims as a result of the Newport Settlement. All Class Members, except for those who timely opted out of the Newport Settlement, shall be fully subject to all of the provisions in the Newport Agreement.

16.    The Bar Order set out in Paragraph 2.6 of the Newport Agreement is incorporated herein by reference and all Class Members, except for those who timely opted out of the Newport Settlement, shall be fully subject to its provisions.

17.    Neither this Order nor the AME Agreement or the Newport Agreement, nor any of

their respective terms or provisions, may be admissible as evidence, offered as evidence, or cited

or referred to by Plaintiffs, the AME Defendants, or Newport in any action or proceeding, except

in an action or proceeding brought to enforce the terms of either the AME Agreement or the

Newport Agreement or by the AME Defendants in defense of any claims brought by Plaintiffs or

any members of the Settlement Class or by Newport in defense of any claims brought by Plaintiffs

or any members of the Settlement Class.

18.    Upon the Effective Date, the AME Settlement Agreement and Newport Settlement

Agreement shall be the exclusive remedies for any and all Released Claims of the Settlement Class

against the Settling Defendants, and the Settlement Class shall be permanently barred from

initiating, asserting, or prosecuting against the Released Parties in any federal or state court or

tribunal any and all Released Claims. Accordingly, the Settlements terminate the Action against

the Settling Defendants.

19.    The Court retains exclusive jurisdiction of all matters arising out of or connected

with the interpretation, administration, implementation, effectuation, and enforcement the AME

Settlement and the Newport Settlement.

## III.    ATTORNEY'S FEES, COSTS, AND SERVICE AWARDS

20.    The Court has considered Plaintiffs' Motion for Attorney's Fees, Costs, and Service

Awards from Settlements with AME Defendants and Defendant Newport Group, Inc., and the

supporting memorandum of law and declaration and finds that the requested awards are fair,

reasonable, and justified under the circumstances.

21.    The Court awards the appointed Class Counsel attorney's fees in the amount of one-

third of the Settlement Amounts (including the interest accruing on the Settlement Amounts prior

to distribution), the final total amount to be determined as of the Effective Date, and reimbursement

for their out-of-pocket expenses incurred from the inception of the case to March 31, 2025, totaling

$1,326,003,68.

22.    The Court awards the appointed Class Representatives service awards in the

amount of $20,000 each to compensate them for their efforts and commitment on behalf of the

Class.

23.    The awards shall be paid pursuant to the terms of the Agreements.

IT IS SO ORDERED.

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date:  August 18, 2025.