IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: AME CHURCH EMPLOYEE | ) | Lead Case No. |
| RETIREMENT FUND LITIGATION, | ) | 1:22–md–03035–STA–jay |
| | ) | |
| | ) | ALL CASES |

**ORDER GRANTING IN PART JOINT MOTION FOR VOLUNTARY DISMISSAL
PURSUANT TO RULE 41(A)(2) (ECF NO. 839)**

Before the Court is a Joint Motion for Voluntary Dismissal Pursuant to Rule 41(a)(2) or Rule 21 (ECF No. 839) filed by Plaintiffs Reverend Pearce Ewing *et al*. and Defendants/Cross-Plaintiffs African Methodist Episcopal Church ("AMEC" or "the Church") and the AMEC Ministerial Retirement Annuity Plan ("the Plan"). Defendant Symetra Life Insurance Company ("Symetra") has responded in opposition (ECF No. 868), and Plaintiffs have filed a reply (ECF No. 880). For the reasons set forth below, the Motion is **GRANTED in part**.

## BACKGROUND

This multidistrict litigation concerns losses to a non-ERISA retirement plan established by the AMEC for its clergy and employees. Plaintiffs are current or retired clergy of the Church and have alleged a number of claims under state law against the denomination, church officials, third-party service providers to the Plan, and other alleged tortfeasors. The Court has set out the full procedural history of the case in its previous orders and need not review it in full here. For purposes of deciding the Joint Motion for Voluntary Dismissal, the following procedural events are most relevant.

Briefly, pursuant to 28 U.S.C. § 1407, the Panel on Multidistrict Litigation transferred a series of civil actions to this Court on June 2, 2022, for the coordinated management of pretrial proceedings. Shortly thereafter, Plaintiffs filed a Consolidated Amended Complaint – Class Action

(ECF No. 74) ("First Amended Complaint"), consolidating the parties and claims of each member case into a single amended pleading. The First Amended Complaint sought to hold the Church, Symetra, and others liable for tortious conduct which allegedly resulted in the loss of assets held by the Plan for Plaintiffs' benefit. Plaintiffs initially did not name the Plan (or the trustee of the Plan or the current Executive Director of the AMEC Department of Retirement Services) as a party to the action. Rather, Plaintiffs alleged claims on behalf of the Plan itself.

Symetra has made a series of challenges to Plaintiffs' capacity to sue as representatives of the Plan in this manner. In a motion to dismiss the First Amended Complaint, Symetra argued that Plaintiffs lacked Article III standing to sue for the loss of Plan assets. The Court disagreed and held that Plaintiffs had satisfied the requirements for Article III standing. The Court further concluded that Symetra's challenge actually went to Plaintiffs' capacity to sue on behalf of the Plan, an affirmative defense on which Symetra bore the burden of proof. Viewing the allegations of the First Amended Complaint in a light most favorable to Plaintiffs, the facts of the pleading did not conclusively establish Symetra's affirmative defense on Plaintiffs' lack of representative capacity to sue a third party like Symetra for injuries to the trust and its assets. At the pleadings stage, the Court concluded that "the [First] Amended Complaint plausibly allege[d] that Plaintiffs have the capacity to sue third parties for injuries to the Plan as a matter of Tennessee trust law." Order on Mots. to Dismiss Consolidated Am. Compl.–Class Action 36, Mar. 17, 2023 (ECF No. 197). Therefore, the Court denied Symetra's motion to dismiss the First Amended Complaint for Plaintiffs' lack of capacity.

Following the Court's ruling on the sufficiency of Plaintiffs' initial pleading, both AMEC and Symetra filed crossclaims against each other as part of their responsive pleadings to Plaintiffs' First Amended Complaint. AMEC Defs.' Partial Answer & Cross-Complaint (ECF No. 116);

2

Symetra's Answer & Cross-Complaint (ECF No. 214). A short time later, the AMEC Defendants filed an Amended Cross-Complaint and Third-Party Complaint (ECF No. 256). The significance of AMEC's Amended Cross-Complaint lay in the fact that for the first time in the MDL, the Plan itself alleged its own claims for relief, albeit as a Cross-Plaintiff. As part of the Joint Motion for Voluntary Dismissal, AMEC explains that its Amended Cross-Complaint added the Plan as a party in response to Symetra's position that Plaintiffs lacked standing to sue on the Plan's behalf. In the event Plaintiff's claims on behalf of the Plan were dismissed for want of capacity, the Church wanted to safeguard the Plan's rights and preserve its claims for relief by proactively bringing the Plan into the MDL to plead its own cause. So the Amended Cross-Complaint alleged claims in the name of the Plan itself, and not in the name of the trustee of the Plan and/or the current Executive Director of the AMEC Department of Retirements Services.

For their part Plaintiffs subsequently filed a Second Consolidated Amended Complaint–Class Action (ECF No. 493, as corrected ECF No. 494) ("the Second Amended Complaint"). The Second Amended Complaint named the Plan as a Defendant, though the pleading actually alleged no causes of action against the Plan. Second Am. Compl. ¶ 23 ("Defendant African Methodist Episcopal Church Ministerial Retirement Annuity Plan ('AMEC Plan' or 'the Plan') is the operative plan establishing a trust and a trust fund for the benefit of certain AMEC ministers and employees."). Plaintiffs posit as part of their briefing on the Joint Motion that the Second Amended Complaint named the Plan only as a nominal Defendant. Plaintiffs disclaim that they are seeking any recovery from the Plan itself.

What is more, Plaintiffs in the Second Amended Complaint alleged each cause of action "individually, derivatively on behalf of the Plan, and on behalf of the Class" of similarly situated plan participants and beneficiaries. In a motion to dismiss or stay the claims of the Second Amended

3

Complaint (ECF No. 525), Symetra moved to dismiss the negligence and breach of fiduciary duty claims the Second Amended Complaint alleged on behalf of Plaintiffs individually and the class action claims alleged on behalf of the Plan participants, arguing that Symetra owed no direct duty to individual participants or beneficiaries of the Plan. Symetra later filed a supplement to its motion to dismiss (ECF No. 756) and argued that the Plan's claims against it and Plaintiffs' derivative claims on behalf of the Plan were duplicative. Just as it had at an earlier stage of the case, Symetra argued Plaintiffs lacked the capacity to sue on behalf of the Plan. Symetra contended that the Court should not allow both the Plan to press its own claims (or the Church to press claims on behalf of the Plan) and Plaintiffs to pursue their derivative claims on the Plan's behalf.

The Court ruled on Symetra's motion to dismiss in an order entered on April 14, 2025. *See* Order Granting in Part, Denying in Part Symetra's Motion to Stay or Dismiss, Apr. 14, 2025 (ECF No. 785). While acknowledging the significance of the capacity issue raised by Symetra, the Court declined to reach it on the pleadings and where Symetra had argued the issue in a supplement to its motion. Instead, the Court found "that the better course is to take the issue up at summary judgment with a fully developed evidentiary record and an opportunity for each side to present all of their arguments on this point in one round of briefing." *Id*. at 25. The Court therefore denied Symetra's motion to dismiss the Second Amended Complaint's derivative claims without prejudice to Symetra's right to present its arguments in a later motion for summary judgment.

In response to the Second Amended Complaint, the AMEC Defendants filed a Partial Answer and Second Amended Cross-Complaint (ECF No. 570), once again naming the Plan as a Cross-Plaintiff and Symetra as a Cross-Defendant. After the Court's ruling on its motion to dismiss the Second Amended Complaint, Symetra filed an Answer along with an Amended Cross-Complaint (ECF No. 794), naming AMEC, the Plan, and other AMEC Defendants like the Department of

4

Retirement Services, the General Board, and the Council of Bishops as Cross-Defendants.

Following a status conference held on April 30, 2025, the parties met and conferred to discuss their positions on the capacity issue and a possible stipulation to resolve the dispute. Plaintiffs and the AMEC Defendants proposed that the parties stipulate to the fact that Plaintiffs had the capacity to represent the Plan and pursue derivative claims on behalf of the Plan. After conferring with the other parties, Symetra declined to adopt the stipulation. Plaintiffs and the AMEC Defendants entered into the stipulation on the capacity question and have made it Exhibit A to their Joint Motion for Voluntary Dismissal (ECF No. 839-2).

Plaintiffs and AMEC now request that the Court permit the Plan to voluntarily dismiss its crossclaims alleged as part of the AMEC Defendants' Amended Cross-Complaint. Specifically, the Plan has alleged the following crossclaims against Symetra: fraudulent concealment (Count III), civil conspiracy to commit conversion (Count IV), civil conspiracy to commit intentional misrepresentation (Count V), conspiracy to commit constructive fraud (Count VI), negligent misrepresentation (Count VII), breach of fiduciary duty (Count IX), aiding and abetting breach of fiduciary duty (Count X), and negligence (Count XI). The voluntary dismissal of the claims would resolve the ongoing litigation over Plaintiffs' capacity to sue for the Plan's benefit and allow Plaintiffs to proceed with their derivative claims alleged on behalf of the Plan. The moving parties argue that the Rule 41(a) factors governing voluntary dismissal largely do not apply in this situation.

As for the only factor that could arguably apply, Symetra cannot show that dismissal would cause it to suffer plain legal prejudice. For example, Symetra cites the fact that counsel for Plaintiffs will receive attorney's fees out of any recovery they may obtain for the Plan and thereby diminish the money that would otherwise go to directly to plan participants and beneficiaries. Plaintiffs and AMEC answer that the amount of Plaintiffs' attorney's fees is not any of Symetra's business.

5

Symetra's arguments about Plaintiffs' lack of standing are also not enough to prevent voluntary dismissal. Symetra's analogies to derivative suits brought by corporate shareholders or bankruptcy creditors (cases cited by Symetra in a separately filed motion to dismiss) are inapt and in any event illustrate that the real party-in-interest can consent to a derivative claim. Plaintiffs do not dispute that the Plan as a trust is the real party-in-interest. Plaintiffs argue they just stand in the shoes of the Plan. Because AMEC and the Plan consent to Plaintiffs' acting in this representative capacity, the Court should permit AMEC to voluntarily dismiss the Plan's independent claims and allow Plaintiffs to proceed with their derivative claims on behalf of the Plan.

Symetra opposes the Plan's voluntary dismissal of its crossclaims. According to Symetra, the Court should deny the request for voluntary dismissal and grant Symetra's motion to dismiss (ECF No. 829) Plaintiffs' derivative claims for lack of capacity and the failure to name the real party-in-interest. Symetra contends that allowing Plaintiffs to bring a class action naming the Plan as a defendant (nominal or not) and at the same time bring derivative claims on behalf of the Plan will result in an intractable conflict of interest. Plaintiffs also lack the capacity to bring their derivative claims (as Symetra also argues in its motion to dismiss) and cannot gain capacity with the consent of another party. In other words, if the Court allows the Plan (or the Church) to voluntarily dismiss the Plan's claims and later holds that Plaintiffs lack capacity to sue derivatively on behalf of the Plan, then the Plan will be left with no party to pursue its claims or protect its interests. As for prejudice, Symetra argues that a dismissal without prejudice of the Plan's claims will result in plain legal prejudice to Symetra. If the claims AMEC voluntarily dismisses can be refiled against Symetra at another time, Symetra will once more face the possibility of duplicative litigation, the Plan's and Plaintiffs' derivative claims alleged on the Plan's behalf. Because the Plan's voluntary dismissal of its crossclaims creates more problems than it solves, Symetra opposes the Plan's request to take the

6

nonsuit.

## STANDARD OF REVIEW

"Rule 41 provides two main mechanisms by which a plaintiff may voluntarily dismiss its case." *Wellfount, Corp. v. Hennis Care Centre of Bolivar, Inc.*, 951 F.3d 769, 772 (6th Cir. 2020). A plaintiff may file a "self-effectuating," *id.*, notice of voluntary dismissal without a court order, as long as the opposing party has not yet "serve[d] either an answer or a motion for summary judgment." Fed. R. Civ. P. 41(a)(1)(A). "After service of an answer or summary judgment motion, and if no stipulation of dismissal is obtained, an action may be dismissed at the plaintiff's request only by court order, on terms the court considers proper." *Walther v. Fla. Tile, Inc.*, 776 F. App'x 310, 314–15 (6th Cir. 2019) (citing Fed. R. Civ. P. 41(a)(2)); *see also* Fed. R. Civ. P. 41, Advisory Committee Notes to 1946 Am. ("Since [a motion for summary judgment] may require even more research and preparation than the answer itself, there is good reason why the service of the motion, like that of the answer, should prevent a voluntary dismissal by the adversary without court approval.").

Whether to grant or deny a motion for voluntary dismissal lies within the sound discretion of the Court. *Smoot v. Fox*, 340 F.2d 301, 302 (6th Cir. 1964). Nevertheless, because a voluntary dismissal under Rule 41(a)(2) is considered a dismissal without prejudice, the Sixth Circuit has observed that courts have a duty "to protect the nonmovant," typically a defendant and in this case Symetra, from "unfair treatment." *Bridgeport Music, Inc. v. Universal-MCA Music Pub., Inc.*, 583 F.3d 948, 953–54 (6th Cir. 2009) (citing *Grover by Grover v. Eli Lilly & Co.,* 33 F.3d 716, 718 (6th Cir. 1994)). Therefore, before a court will grant a plaintiff's request for voluntary dismissal, the court must first decide whether "the defendant would suffer plain legal prejudice as a result of a dismissal without prejudice, as opposed to facing the mere prospect of a second lawsuit." *Id.*

7

(cleaned up). The Sixth Circuit has instructed district courts to consider the following factors in making this determination: "the defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal, and whether a motion for summary judgment has been filed by the defendant." *Grover*, 33 F.3d at 718.

Plaintiffs, AMEC, and the Plan move in the alternative for the dismissal of the Plan's crossclaims pursuant to Federal Rule of Civil Procedure 21. Rule 21 permits a court "[o]n motion or on its own" to add or drop a party or sever a claim against a party. Fed. R. Civ. P. 21. As the parties acknowledge, some courts have interpreted Rule 41 to apply only when a plaintiff seeks to dismiss its case in its entirety and Rule 21 to apply when a plaintiff seeks to dismiss a single party but not the entire suit. Mem. in Support Jt. Mot. for Vol. Dismissal 5 (collecting cases) (ECF No. 839-1). The Court is not entirely convinced by this line of cases. On its own terms, Rule 21 applies to the misjoinder or nonjoinder of parties and operates to "add or drop" a party and to "sever" claims for relief. The parties' request to "drop" the Plan as a party is the kind of relief available under Rule 21. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989) ("It is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time, even after judgment has been rendered."). However, it is not clear to the Court the moving parties seek the severance of the Plan's claims. *Rice v. Sunrise Exp., Inc.*, 209 F.3d 1008, 1013 (7th Cir. 2000) ("Under Rule 21 of the Federal Rules of Civil Procedure, severance creates two separate actions where previously there was but one."). Because the Court is not persuaded Rule 21 offers the correct procedural mechanism in this circumstance, the Court will analyze the Joint Motion

8

under Rule 41, and not Rule 21.[1]

## ANALYSIS

The issue presented is whether the Plan is entitled to voluntarily dismiss its crossclaims against Symetra. As a preliminary matter, the parties have assumed throughout the MDL that the Plan is itself a trust established for the benefit of AMEC clergy and staff. "Traditionally, a trust wasn't a distinct legal entity, but 'a fiduciary relationship between multiple people,' and 'legal proceedings involving a trust were brought by or against the trustees.'" *Herschfus v. City of Oak Park, Michigan*, No. 24-1451, 2025 WL 2218494, at *1 n.1 (6th Cir. Aug. 5, 2025) (quoting *Americold Realty Tr. v. Conagra Foods, Inc.*, 577 U.S. 378, 383 (2016) (internal quotation marks omitted)). The Sixth Circuit recently noted in dicta "the modern trend" of courts treating "a trust as a legal entity with legal capacity" of its own. *Id.* (citing Restatement (Third) of Trusts § 2 and 76A Am. Jur. 2d, *Trusts* § 2).

The Tennessee Supreme Court has not answered the question of whether a Tennessee trust can act on its own or must take legal action through a trustee. The Tennessee Court of Appeals has

---

[1] The Court would note that the Advisory Committee has recently proposed two amendments to Rule 41(a), one of which "adds additional flexibility for litigants by explicitly permitting the dismissal of one or more claims in an action, rather than only the entire action, as the text of the current rule suggests." Excerpt from the Report of the Advisory Committee on Civil Rules, May 15, 2025, https://www.uscourts.gov/sites/default/files/document/preliminary-draft-of-proposed-amendments-to-federal-rules_august2025.pdf.

As the Advisory Committee also observed, "[m]any courts already allow such flexibility without presenting problems, and permitting dismissal of claims is consistent with the policy reflected throughout the rules of narrowing the issues in a case pretrial." *Id*. The proposed amendment to Rule 41 is still in the public comment period. On August 15, 2025, the Judicial Conference Committee on Rules of Practice and Procedure approved the proposed amendment to Rule 41 for publication and public comment. Request for Cmts. on Proposed Ams. to Fed. Rules & Forms, Aug. 15, 2025, https://www.uscourts.gov/sites/default/files/document/preliminary-draft-of-proposed-amendments-to-federal-rules_august2025.pdf.

cited a treatise on trust law, stating that a trust "cannot sue or be sued in its own name," which means "the trustee, rather than the trust, is the real party in interest in litigation involving trust property." *Khan v. Regions Bank*, 584 S.W.3d 418, 427 (Tenn. Ct. App. 2019) (quoting 76 Am. Jur. 2d Trusts § 601); *see also* Fed. R. Civ. P. 17(a)(1)(E) (requiring a civil action to "be prosecuted in the name of the real party in interest" but also allowing a trustee to "sue in their own names without joining the person for whose benefit the action is brought"). However, the Tennessee Court of Appeals has also held that "a non-attorney trustee may not represent a trust" in the courts of the State of Tennessee. *Elm Children's Educ. Tr. v. Wells Fargo Bank, N.A.*, 468 S.W.3d 529, 533 (Tenn. Ct. App. 2014); *see also Whiting v. Trew*, No. 3:20-cv-54, 2021 WL 6618480, at *10 n.7 (E.D. Tenn. Dec. 22, 2021) (finding that *Elm Children's Educational Trust* could be read "to imply that trusts can sue in their own name in Tennessee courts").

Here, the trust itself, the Plan, has alleged crossclaims in its own name against Symetra. None of the parties has raised a real party-in-interest challenge to this aspect of the Plan's crossclaims or the Plan's decision to nonsuit them.[2] In the absence of such a challenge, the Court

---

[2] Newport did raise this argument in its motion to dismiss the previous iteration of the AMEC Defendants' Cross-Complaint. Newport read the Cross-Complaint to suggest that AMEC was suing on the Plan's behalf and argued that the Church lacked capacity to sue as a representative. Newport's Mot. to Dismiss Am. Cross-Complaint (ECF No. 280). In other words, Newport identified what seemed to be an ambiguity in the pleadings, namely that the Plan was alleging its own crossclaims and at the same time AMEC appeared to be acting on the Plan's behalf.

In deciding Newport's motion to dismiss related to AMEC's capacity to sue as a representative of the Plan, the Court made the following statement: "Even though the Plan itself is named as a party in the Amended Cross-Complaint, naming the trustee of the Plan appears to be the better practice under Tennessee law. Fed. R. Civ. P. 17(b)(3) (requiring the application of "the law of the state where the court is located" to determine a party's capacity to sue)." Order Granting in Part, Denying in Part Newport's Mot. to Dismiss AMEC's Am. Cross-Complaint 20–21, Feb. 28, 2024 (ECF No. 344). Faced with an issue where the Court could analyze either "whether AMEC can sue in a representative capacity or whether the Plan is the proper party," the Court instead granted "AMEC and the Plan's request for leave to amend and add the current trustee as a Cross-Plaintiff to

finds it unnecessary to reach the issue of whether the Plan can file suit in its own name just to decide if the Plan can also nonsuit its claims. *Cranpark, Inc. v. Rogers Group, Inc.*, 821 F.3d 723, 730 (6th Cir. 2016) (stating that "the [Rule 17] real-party-in-interest requirement is generally viewed as an affirmative defense that can be waived"). For purposes of deciding the Joint Motion for Voluntary Dismissal, the Court will assume the Plan can properly act on its own without the need for a trustee to act on its behalf.

One more preliminary issue merits consideration. Plaintiffs (along with AMEC) join in the Plan's request to nonsuit its crossclaims for the additional purpose of obtaining court approval for Plaintiffs acting as representatives of the Plan going forward. Symetra answers with a challenge of its own to Plaintiffs' capacity to prosecute its derivative claims and an argument about Plaintiffs (and/or the class of individual participants they seek to represent) having a conflict of interest. One key element of the parties' dispute concerns whether the Executive Director of the AMEC Department of Retirement Services is a trustee of the Plan and the real party-in-interest to represent the Plan in the MDL.

The Court declines to decide Plaintiffs' capacity to bring their derivative claims or answer the dispute over the identity of the trustee as part of its determination of whether the Plan can voluntarily dismiss its crossclaims. Strictly speaking, Rule 41 is not the correct framework for analyzing the capacity issue, and an examination of Plaintiffs' capacity to sue on behalf of the Plan is not necessary to decide the Rule 41 question presented in the Motion for Voluntary Dismissal. As the Court noted in a previous order, "the better course is to take the [capacity] issue up at summary

---

their Cross-Complaint." *Id*. at 21. The AMEC Defendants subsequently filed their Second Amended Cross-Complaint. However, they did not resolve the pleading issue discussed in the order on Newport's motion to dismiss and never added a trustee of the Plan as a Cross-Plaintiff. The AMEC Defendants have since settled their dispute with Newport. *See* Order Granting Final Approval to Class Action Settlement, Aug. 18, 2025 (ECF No. 910).

judgment with a fully developed evidentiary record and an opportunity for each side to present all of their arguments on this point in one round of briefing." Order Granting in Part, Denying in Part Symetra's Motion to Stay or Dismiss 25, Apr. 14, 2025 (ECF No. 785). The Court therefore reserves its ruling on the issue of Plaintiffs' capacity to bring derivative claims on behalf of the Plan.

Turning then to the merits of the Plan's request for voluntary dismissal, the Court holds that the balance of the *Bridgeport* factors weighs in favor of allowing the Plan to dismiss its crossclaims against Symetra. First, the extent of Symetra's effort and expense is significant at this stage of the MDL. However, the Plan's voluntary dismissal of its crossclaims has no impact on Symetra's preparation of the case. The parties have largely completed fact and expert discovery and are scheduled to begin briefing on Daubert motions (September 11) and dispositive motions (October 3) soon. The Court has set a trial date for April 2026. To the extent that Symetra's effort and expense was devoted to defending the Plan's crossclaims, Plaintiffs' derivative claims remain and raise mostly the same fact questions and legal issues as the Plan's crossclaims. While it is true Symetra will likely choose to continue to litigate its affirmative defenses on the capacity issue, the voluntary dismissal of the Plan's crossclaims eliminates the duplication of claims brought in the name of the Plan. This first factor weighs in favor of granting the Plan's request for voluntary dismissal.

The next two factors—delay or lack of diligence and the explanation for the need to take the nonsuit—also favor dismissal. There is no evidence that the Plan delayed or failed to act with diligence before seeking voluntary dismissal of its crossclaims. The Plan initially alleged its crossclaims in 2023, apparently out of concern for its legal interests and as a contingency to hedge against a procedural ruling adverse to Plaintiffs' derivative claims on the Plan's behalf. The filing of its crossclaims was not just a tactic employed by the Plan for a frivolous purpose. There have been and continue to be real challenges to Plaintiffs' capacity to sue on behalf of the Plan. The Court has

12

denied three different motions to dismiss Plaintiffs' derivative claims for lack of capacity, all filed by Symetra, and one motion to dismiss AMEC as a representative of the Plan.[3]

The Plan's explanation for dismissing the crossclaims at this stage of the case also supports its dismissal. The Plan, AMEC and the Plaintiffs concluded that a stipulation by which the Plan stood down and stepped aside in favor of Plaintiffs pursuing the Plan's claims in a representative capacity was in the parties' best interests. Concerning the final factor, the Plan took action before Symetra or any other party had filed a Rule 56 motion against it addressed to the capacity issue.[4] These considerations weigh in favor of dismissal as a means of eliminating duplicative claims brought in the name of the Plan and streamlining the issues remaining for decision at summary judgment and trial.

The last consideration then is whether dismissal would cause Symetra to suffer any plain legal prejudice. Symetra cites three reasons why voluntary dismissal of the Plan's crossclaims will work such prejudice, none of which the Court finds persuasive. Symetra raises the possibility of the Plan (or a representative of the Plan) alleging the same or similar claims in a future suit. Dismissal without prejudice of the Plan's crossclaims might result in Symetra litigating the same dispute all over again. As a general rule, "facing the mere prospect of a second lawsuit" does not meet the plain

---

[3] Symetra filed three motions to dismiss: a motion to dismiss Plaintiffs' First Amended Complaint (ECF No. 111, Oct. 10, 2022), a motion to dismiss the Second Amended Complaint (ECF No. 525, Sept. 20, 2024), and a motion to dismiss Plaintiffs' derivative claims based on real-party-in-interest and capacity requirements under Federal Rule of Civil Procedure 17 (ECF No. 829, June 6, 2025). Defendant Newport Group filed the fourth, though Newport's motion was actually addressed to AMEC's capacity to sue in a representative capacity on behalf of the Plan. Newport's Mot. to Dismiss Am. Cross-Complaint, Sept. 7, 2023 (ECF No. 280).

[4] Symetra has filed a Rule 12(b)(6) motion to dismiss (ECF No. 808) the Church's and the Plan's crossclaims. The Plan nonsuiting its crossclaims moots some of the arguments Symetra has made for the dismissal of the crossclaims and thereby conserves judicial resources because the Court has fewer issues to decide in making a determination of Symetra's motion.

legal prejudice standard. *Bridgeport Music*, 583 F.3d at 954. As a practical matter, Symetra will still litigate Plaintiffs' derivative claims, at the very least Plaintiffs' capacity to sue in place of the Plan, after the Plan drops its crossclaims. Dismissal without prejudice preserves the Plan's right to see that the proper party pursues any cause of action the Plan may have against Symetra, even if that party turns out to be someone other than Plaintiffs or AMEC.

Symetra also argues that its defenses against the Plan are "exceptionally strong" and that the dismissal of the Plan will prevent Symetra from presenting defenses sounding in contract and trust law. Again, assuming Symetra cannot prevail on its affirmative defense on the capacity issue and Plaintiffs can establish their capacity to sue in the Plan's stead, Symetra understandably wants to avoid sending "a misleading and prejudicial message to the jury that its battle is principally between Plaintiffs and Symetra." But Symetra will be able to present any and all of its defenses to any claim brought on the Plan's behalf, regardless of whether Plaintiffs or some other representative stands in for the Plan at trial. Symetra also has crossclaims of its own against the Plan, which the Plan's nonsuit does not disturb. *See* Symetra Am. Cross-Complaint, Counts I (breach of contract), III (negligent misrep.), & IV (contribution) (ECF No. 794). This suggests that Symetra will have a fair opportunity to present its crossclaims and defenses at trial.

The only other ground for plain legal prejudice discussed by Symetra is its concern over a "bloated cost award" if counsel for Plaintiffs seek attorney's fees from Symetra. In Symetra's view, the Plan will conserve resources if AMEC, and not Plaintiffs, pursue claims on behalf of the Plan. The Court does not find this argument convincing, at least not as a showing of plain legal prejudice to Symetra. The fact is the Plan will need legal representation and therefore must incur attorney's fees and expenses to vindicate any claims it may have against the parties in the MDL. Whether the attorney's fees incurred to press the Plan's claims are owed to counsel for Plaintiffs, counsel for the

14

AMEC Defendants, or some other legal team, the expense to the Plan is real and by no means insignificant. Plaintiffs have already obtained partial relief (both monetary and equitable) for themselves, the class of individuals they represent, and the Plan. This includes a recovery of attorney's fees and costs. *See* Order Granting Final Approval to Class Action Settlement, Aug. 18, 2025 (ECF No. 910) (awarding counsel for Plaintiffs attorney's fees in an amount equal to one-third of the Settlement Amounts and reimbursement of their out-of-pocket expenses of $1,326,003.68). Even so, counsel for Plaintiffs have shown that theirs is a contingency fee arrangement, suggesting to the Court that if Plaintiffs do not prevail on their derivative claims on the Plan's behalf, then counsel will recover no attorney's fees. The Court finds that Symetra has not demonstrated any plain legal prejudice resulting from the Plan nonsuiting its crossclaims.

## CONCLUSION

The balance of the *Bridgeport* factors shows that voluntary dismissal without prejudice of the Plan's crossclaims will not cause Symetra to suffer plain legal prejudice. Therefore, the Joint Motion for Voluntary Dismissal is **GRANTED**. The crossclaims of the Plan alleged in the AMEC Defendants' Second Amended Cross-Complaint are hereby **DISMISSED** without prejudice. Insofar as Plaintiffs and the AMEC Defendants seek a ruling on the capacity issue, the Court declines to reach it on a Rule 41 motion. This aspect of their joint request is denied without prejudice to raise the capacity issue in a future dispositive motion.

**IT IS SO ORDERED**.

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: September 2, 2025.