**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: AME CHURCH EMPLOYEE | ) | Lead Case No. |
| RETIREMENT FUND LITIGATION | ) | 1:22–md–03035–STA–jay |
| | ) | |
| | ) | ALL CASES |

---

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH
DEFENDANT SYMETRA LIFE INSURANCE COMPANY**

---

Before the Court is Plaintiffs' Motion for Preliminary Approval of Class Action Settlement

with Defendant Symetra Life Insurance Company (ECF No. 1160) filed April 10, 2026. At a status

conference held on April 15, 2026, none of the parties appearing at the conference stated any

intention to oppose Plaintiffs' request. For the reasons set forth below, the Motion is **GRANTED**.

## BACKGROUND

This multidistrict litigation concerns losses to a non-ERISA retirement plan established by

the African Methodist Episcopal Church for its clergy and employees. Plaintiffs are current or retired

clergy of the church and have alleged a number of claims under Tennessee law against the

denomination, church officials, third-party service providers to the plan, and other alleged

tortfeasors. In early 2022, Plaintiffs filed six civil actions against the Church and others across

several United States District Courts: *Rev. Pearce Ewing v. African Methodist Episcopal Church et

al.*, No. 2:22–cv–02136–JTF–atc (W.D. Tenn. Mar. 4, 2022); *Charles R. Jackson v. Newport Group,

Inc. et al.*, No. 2:22–cv–02174–JTF–atc (W.D. Tenn. Mar. 22, 2022); *Rev. Cedric V. Alexander v.

Rev. Dr. Jerome Harris et al.*, No. 8:22–cv–00707–PJM (D. Md. Mar. 22, 2022); *Phillip Russ, IV et

al. v. Newport Group, Inc.*, No. 3:22–cv– 00375–BJD–LLL (M.D. Fla. Mar. 31, 2022); *Rev. Derrell

Wade et al. v. Newport Group et al.*, No. 3:22–cv–00179–DN (E.D. Va. Apr. 1, 2022); *Rev. A.

Offord Carmichael, Jr. et al. v. Rev. Dr. Jerome Harris et al.*, No. 3:22–cv–00386–UA–JLW

(M.D.N.C. May 19, 2022). Plaintiff Rev. Pearce Ewing moved under 28 U.S.C. § 1407 to consolidate all proceedings in the Western District of Tennessee.

On June 2, 2022, the Panel on Multidistrict Litigation transferred the civil actions to this Court, finding that consolidation would "serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation." MDL Transfer Order 1, June 2, 2022 (ECF No. 1). The Panel further found that consolidation in this District was appropriate since the AMEC Department of Retirement Services had its principal place of business in this District and one of the Defendants named in the initial lawsuits, Rev. Dr. Jerome V. Harris, resided in the Western District of Tennessee. *Id.* at 2.

On June 22, 2022, the Court entered a Practice and Procedure order to govern all further proceedings. *See* Practice & Proc. Order, June 22, 2022 (ECF No. 8). The Court held an initial case management conference with counsel for the parties on August 4, 2022, and approved the case management deadlines proposed by the parties. On August 25, 2022, the Court entered a case management order (ECF No. 78), setting forth the deadlines discussed at the initial conference. The Court has continued to hold bi-monthly status conferences with counsel for the parties throughout the pendency of the action. Discovery commenced September 9, 2022, and closed on January 22, 2025. A jury trial is currently set for September 14, 2026.

On August 21, 2022, Plaintiffs filed a Consolidated Amended Complaint – Class Action (ECF No. 74), setting forth their allegations and causes of action. Plaintiff then amended their pleadings in a Second Consolidated Amended Complaint – Class Action (ECF No. 493) ("the Second Amended Complaint") on August 29, 2024. The Second Amended Complaint contains the current version of Plaintiffs' allegations.

Plaintiffs allege that Dr. Harris served as the executive director of the AMEC Department of

Retirement Services.  In his role as the executive director of the Church's retirement plan, Dr. Harris had access to the assets held by the African Methodist Episcopal Church Ministerial Retirement Annuity Plan ("the Plan").  Together with his business associate Defendant Robert Eaton, Dr. Harris and Eaton engaged in a long-running scheme to misappropriate the assets of the Plan for their own benefit.  Plaintiffs' Second Amended Complaint focuses on the role of Newport Group ("Newport") and Symetra in facilitating the scheme, allegedly as Harris and Eaton's co-conspirators. Second Am. Compl. ¶¶ 3–4.  Plaintiffs allege that Dr. Harris and Eaton elected to move the plan's investment business to Symetra in 2001 and to keep the plan's account with Symetra for the next 20 years, largely "because they believed Symetra was more willing to allow Dr. Harris and Eaton to enrich themselves with commissions, kickbacks, and prohibited transactions." *Id*. ¶ 239.

The alleged prohibited transactions took the form of loans to or capital investments in companies owned or controlled by Dr. Harris and Eaton as well as significant investments in a series of private equity funds known as the Motorskill entities. Plaintiffs have named these businesses as Defendants in the MDL. Symetra also acquiesced to Dr. Harris' demand for excessive and unauthorized plan administrative fees.  Between 2016 and 2019 alone, Symetra paid Dr. Harris $3,500,300 in administrative fees.  *Id*. ¶ 262.  And Plaintiffs fault the Church itself for a lack of oversight that permitted the conspirators to carry out their plan.  *Id*. ¶ 5. According to Plaintiffs, Defendants' conduct siphoned away roughly $90 million in Plan assets.  *Id*. ¶ 4, 232. Had the Plan been prudently invested in a diversified mix of assets, the Plan would have been worth as much as $272 million by the end of Dr. Harris' tenure in June 2021, assuming a reasonable rate of return on investments over almost two decades. *Id*.

The Second Amended Complaint alleges three types of claims: the individual claims of ten named Plaintiffs, derivative claims brought on behalf of the Plan, and class action claims

representing a class of plan participants. The ten individual Plaintiffs named in the Second Amended

Complaint are Rev. Pearce Ewing; Rev. Charles R. Jackson; Presiding Elder Cedric V. Alexander;

Rev. Derrell Wade; Rev. Reuben J. Boyd; Presiding Elder Phillip Russ, IV; Lynette Glenn as court-

appointed guardian of her father the Rev. Marcius King; Rev. Matthew Ewing; Rev. A. Offord

Carmichael, Jr.[1]; and Rev. Diane Conley.  The named Plaintiffs also assert claims in a derivative

capacity to represent the Plan.[2]  And Plaintiffs bring claims on behalf of a class of individuals

defined as

> All persons residing in the United States who are participants in the African
> Methodist Episcopal Church Ministerial Retirement Annuity Plan, all persons
> residing in the United States who are beneficiaries entitled to benefits as of January
> 1, 2021, under the African Methodist Episcopal Church Ministerial Retirement
> Annuity Plan.

*Id.* ¶ 511.[3]

The Second Amended Complaint names 20 parties as Defendants. Plaintiffs have sued Daniel

Parrish of Parrish Law, LLC, in his capacity as Administrator Ad Litem of the Estate of Jerome V.

Harris, deceased ("Estate of Dr. Harris")[4] and Dr. Harris' widow, Sandra Harris.  Plaintiffs have also

sued Robert Eaton, who allegedly acted in concert with Dr. Harris as part of a scheme to

misappropriate the Plan's funds, and Eaton's company Day and Night Solar, LLC.  The Second

---

[1] On October 11, 2024, Plaintiffs filed a suggestion of death (ECF No. 551), stating that Rev. Carmichael had passed away on September 10, 2024.

[2] The Second Amended Complaint named the Plan as a nominal Defendant, that is, without actually stating any cause of action against the Plan.

[3] The Second Amended Complaint excludes from the Class "[a]ny Defendant employees who have responsibility or involvement in the administration of the Plan, or who are subsequently determined to be fiduciaries of the Plan, and their beneficiaries . . . ." (Second Am. Compl. ¶ 511.)

[4] According to the Second Amended Complaint, Dr. Harris passed away on May 8, 2024. At the time of his death, Dr. Harris had already been named as a defendant in multiple complaints consolidated in this MDL, including the First Amended Consolidated Complaint.  The Estate of Dr. Harris has never filed an answer to the Second Amended Complaint.

4

Amended Complaint also names as Defendants a group of business organizations owned or controlled by Dr. Harris and/or Eaton to further the alleged scheme: Financial Freedom Funds, LLC; Financial Freedom Group, Inc.; Financial Technologies, LLC; and Trinity Financial Corporation. Plaintiffs allege claims against AMEC and certain AMEC-affiliated organizations and individuals: the AMEC Department of Retirement Services; the AMEC General Board; the AMEC Council of Bishops; Bishop Samuel L. Green, Sr.; and Bishop James Davis (collectively "the AMEC Defendants").[5]  Plaintiffs also name as Defendants third-party service providers to the Plan: Newport, Symetra, and the accounting firm of Rodney Brown and Company. Finally, the Second Amended Complaint names as Defendants some of the venture capital funds in which Harris and Eaton allegedly invested Plan assets, though none of the entities have ever filed a responsive pleading to the Second Amended Complaint or taken any action to defend themselves in this matter: Motorskill Ventures, Inc.; Motorskill Ventures I, L.P.; and Motorskill Asia Ventures 1, L.P. (collectively "the Motorskill entities").[6]

Plaintiffs reached a settlement of their dispute with the AMEC Defendants and filed a motion for preliminary approval of the settlement (ECF No. 627) on December 13, 2024. At a status

---

[5] The Second Amended Complaint separately names the "African Methodist Episcopal Church" as a Defendant out of an "abundance of caution." Second Am. Compl. ¶ 36. "Plaintiffs do not concede that there is a distinction between these two alleged entities" AMEC, Inc. and the "African Methodist Episcopal Church."  The Second Amended Complaint refers to both entities collectively as "AMEC."

[6] Plaintiffs name Doe Corporations 1-10 and John Does 1-10 as Defendants.  The Second Amended Complaint alleges that the Doe Corporations are affiliates or subsidiaries of Defendants that may be responsible for the conduct alleged and that such parties are named in a "Doe Corporations" capacity pending discovery in the case. Plaintiffs allege that the John Does are affiliates or subsidiaries of Defendants that may be responsible for the conduct alleged herein or who may have exercised fiduciary authority with respect to the plan during the class period, all of whom are currently unknown to Plaintiffs and that such parties are named in a "John Doe" capacity pending discovery in this case. To date, Plaintiffs have not amended their pleadings to identify any Doe Corporation or John Doe further.

5

conference on February 4, 2025, Plaintiffs and Newport Group, Inc. ("Newport") announced they had also reached a settlement of their dispute. One month later, on March 4, 2025, Plaintiffs filed a motion for preliminary approval (ECF No. 750) of their settlement with Newport. Following a motion hearing on both requests for approval, the Court granted Plaintiffs' motions and gave preliminary approval to the settlements with the AMEC Defendants and Newport. On August 18, 2025, after conducting a final fairness hearing, the Court gave final approval to the settlements. *See* Order Granting Final Approval, Aug. 18, 2025 (ECF No. 910). The Court discusses some of the features of Plaintiffs' settlements with the AMEC Defendants and Newport in more detail below, as they have bearing on Plaintiffs' proposed settlement with Symetra.

Based on Plaintiffs' settlements with the AMEC Defendants and Newport as well as the Court's rulings on other dispositive motions, the following causes of action on behalf of Plaintiffs individually, derivatively on behalf of the plan, and on behalf of the class remain against the following Defendants:

• breach of fiduciary duty against the Estate of Dr. Harris, Robert Eaton, and Symetra (Count 1);

• violation of the Tennessee Uniform Trust Code for breach of trust and misappropriation of trust funds against the Estate of Dr. Harris and Eaton (Count 2);

• negligence against the Estate of Dr. Harris and Symetra (Count 3);

• conversion against the Estate of Dr. Harris; Sandra Harris; Eaton; Financial Freedom Funds, LLC; Financial Freedom Group, Inc.; Trinity Financial Consultants, LLC; Financial Technologies, LLC; and Day & Night Solar (Count 4);

• fraudulent concealment against the Estate of Dr. Harris, Eaton, and Symetra (Count 5);

• fraudulent misrepresentation against the Estate of Dr. Harris (Count 6);

• civil conspiracy against the Estate of Dr. Harris; Sandra Harris; Eaton; Symetra; Financial Freedom Funds, LLC; Day & Night Solar; Trinity Financial; Financial Freedom Group, Inc.; Financial Technologies, LLC; and the Motorskill

6

Entities (Count 8);[7]

• aiding and abetting breach of fiduciary duty against Symetra; Financial Freedom Funds, LLC; Financial Freedom Group, Inc.; Financial Technologies, LLC; Day & Night Solar; Trinity Financial Consultants, LLC; the Motorskill Entities; and Sandra Harris (Count 9); and

• professional negligence against Rodney Brown (Count 10).[8]

The AMEC Defendants, Symetra, and Day and Night Solar, LLC have also alleged cross-claims against each other. The parties have fully briefed motions for summary judgment, ten in all, which remain pending before the Court. Among the Rule 56 motions are Plaintiffs' Motion for Partial Summary Judgment Against Defendant Symetra Life Insurance (ECF No. 980) and Symetra's Motion for Summary Judgment with Respect to Plaintiffs' Derivative and Individual Claims (ECF No. 982).[9]

On January 2, 2026, the Court entered a Class Certification Order (ECF No. 1099), certifying the following class claims, issues, and defenses for class action:

(1) civil conspiracy against the Estate of Dr. Jerome V. Harris; Sandra Harris; Robert Eaton; Symetra Life Insurance Company; Financial Freedom Funds, LLC; Day & Night Solar; Trinity Financial; Financial Freedom Group, Inc.; Financial

---

[7] Count 7 of the Second Amended Complaint was Plaintiffs' breach of contract claim against AMEC.

[8] According to the Motion for Class Certification, Plaintiffs intend to voluntarily dismiss their professional negligence claim against Rodney Brown for lack of proof. Plaintiffs do not seek class certification of this claim.

[9] Plaintiffs and Symetra have filed and fully briefed a series of motions challenging the admissibility of the other side's opinion witnesses: Plaintiffs' Motion to Strike Expert Report and Exclude Expert Testimony of Joyce Smith, Esq. (ECF No. 932); Plaintiffs' Motion to Strike Expert Report and Exclude Expert Testimony of Matthew Eickman (ECF No. 933); Plaintiffs' Motion to Strike Expert Report and Exclude Expert Testimony of Dr. Craig Merrill (ECF No. 934); Symetra's Motion to Exclude Testimony of Plaintiffs' Expert Eric Dyson (ECF No. 938); and Symetra's Motion to Exclude Testimony of Plaintiffs' Expert Martin Dirks (ECF No. 942). Symetra has also filed Objections to and Appeal of Magistrate Judge's Order Denying Symetra's Motion to Exclude Proposed Expert Testimony on Damages by Harris Devor and Martin Dirks (ECF No. 1097). These motions are also fully briefed and ready for determination.

Technologies, LLC; and the Motorskill Entities (Second Am. Compl., count 8);

(2) Symetra's affirmative defenses on the statute of limitations, including (a) the application of the discovery rule and when plan participants learned of facts sufficient to put a reasonable person on notice that they had suffered an injury as a result of wrongful conduct; and (b) whether Defendants fraudulently concealed their alleged wrongs from plan participants.

(3) any other affirmative defense preserved by Symetra and Defendants named in the civil conspiracy count.

Consistent with the Court's Class Certification Order, Plaintiffs have proposed a form of notice to the class concerning the certification of these claims. Plaintiffs have also filed a Motion for Partial Reconsideration (ECF No. 1106). The parties have briefed the Motion for Reconsideration but also identified a separate issue related to proper service on the Estate of Dr. Harris and the administrator ad litem, Daniel Parrish. The Motion for Reconsideration remains to be decided, pending the resolution of the service of process issue related to the administrator ad litem.

On February 9, 2026, Plaintiffs and Symetra filed a Joint Notice of Settlement (ECF No. 1130). The Joint Notice of Settlement reported that the parties had reached an out-of-court agreement to resolve their dispute and would submit a motion for preliminary approval pursuant to Federal Rule of Civil Procedure 23(e) to the Court. The parties indicated that the settlement did not have any effect on Plaintiffs' claims against any other parties nor on Symetra's cross-claims against the AMEC Defendants. Plaintiffs' Motion for Preliminary approval followed.

In their Motion for Preliminary Approval, Plaintiffs argue that the proposed settlement with Symetra satisfies the requirements of Federal Rule of Civil Procedure 23 and the Sixth Circuit's standards for preliminary approval of a class action settlement. Plaintiffs assert that the proposed settlement was reached after adequate representation and arm's-length negotiations. According to the declaration of Interim Lead Class Counsel Matthew Lee, counsel has vigorously prosecuted the

8

lawsuit since 2022 and reached a settlement with Symetra after a full opportunity for fact discovery, the briefing and decision on two rounds of motions to dismiss, expert discovery (including full briefing on *Daubert* motions to challenge each side's opinion witnesses), class certification, the briefing of cross motions for summary judgment, and after two mediations with experienced mediators. According to Mr. Lee, the parties accepted a mediator's proposal for the payment of $44.4 million in settlement of Plaintiffs' claims against Symetra. Plaintiffs argue then that the settlement was reached after a full adversarial process.

Plaintiffs next argue that the proposed settlement provides adequate relief in light of the risks, costs, and length of continued litigation. In counsel for Plaintiffs' view, the settlement achieves an excellent outcome for the class. Plaintiffs will recover $44.4 million, roughly half of the $88.4 million difference between the misrepresented value of the plan and the true value of the plan as of June 2021. Even after an award of attorney's fees, costs, and service awards to named Plaintiffs, the class stands to recover one-third of its losses through the Symetra settlement. Even assuming Plaintiffs had prevailed at trial and proved the full measure of damages they seek of $227 million, the Symetra settlement would represent a little less than 20% of that amount. Taking the Symetra settlement with the other settlements already obtained to date, Plaintiffs will have recovered a total of approximately $106.2 million. In light of the risks of going to trial and the additional delay involved in trying the case and concluding all appeals, the settlement represents adequate and immediate relief to the class.

Plaintiffs contend that the proposed settlement has no obvious deficiencies and treats class members equitably. The plan of distribution ensures that each class member will receive a pro rata share of the recovery and their funds will be placed in their retirement accounts with no further action to be taken by members of the settlement class. Finally, Plaintiffs argue that the Court should

9

conditionally certify the class action for settlement purposes. For all of these reasons, Plaintiffs request that the Court give preliminary approval to the settlement between Plaintiffs and Symetra.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 23 governs class actions like the case at bar and requires the settling parties to any class action to obtain court approval for their settlement agreement. Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval"). At the preliminary stage of the approval process, the Court must decide whether to give notice of the settlement to the class of individuals who would be bound by the proposed settlement. Fed. R. Civ. P. 23(e)(1); *see also* Fed. R. Civ. P. 23, Committee Notes on 2018 Amendments ("As amended, Rule 23(e)(1) provides that the court must direct notice to the class regarding a proposed class-action settlement only after determining that the prospect of class certification and approval of the proposed settlement justifies giving notice. This decision has been called 'preliminary approval' of the proposed class certification in Rule 23(b)(3) actions.").

In order to justify a court's preliminary approval and decision to give notice to the members of the class, the parties must show that "the court will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Under Rule 23(e)(2), a court may approve a class settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate after considering" the following factors:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
    (i) the costs, risks, and delay of trial and appeal;
    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

10

(iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)–(D).

In addition to the factors set forth in Rule 23(e)(2), the United States Court of Appeals for the Sixth Circuit has adopted its own factors to consider in deciding whether a class action settlement is "fair, reasonable, and adequate," many of which overlap with the Rule 23(e) factors: (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).

Although the court has already granted final class certification on certain class claims, Plaintiffs' Motion for Reconsideration notwithstanding, the court must also consider whether it will be able to certify the class for purposes of the settlement. Class certification is a "key element" of the preliminary approval process, though a court can only certify the class after holding the final approval hearing. Fed. R. Civ. P. 23, Committee Notes on 2018 Amendments to Rule 23(e)(1). "[I]f a class has not been certified, the parties must ensure that the court has a basis for concluding that it likely will be able, after the final hearing, to certify the class." *Id*. Here, there is no real dispute that the Court will be able to certify the class at a final approval hearing.

"The decision to give notice of a proposed settlement to the class is an important event." Fed. R. Civ. P. 23, Committee Notes on 2018 Amendments to Rule 23(e)(1). The court's determination requires "a solid record supporting the conclusion that the proposed settlement will likely earn final approval after notice and an opportunity to object." *Id.* The Notes to Rule 23(e) counsel that "[t]he court should not direct notice to the class until the parties' submissions show it is

11

likely that the court will be able to approve the proposal after notice to the class and a final approval hearing." *Id*. As a result, the settling parties have the burden to "provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A); *see also* Fed. R. Civ. P. 23, Committee Notes on 2018 Amendments to Rule 23(e)(1) (noting that "the proponents of the settlement should ordinarily provide the court with all available materials they intend to submit to support approval under Rule 23(e)(2) and that they intend to make available to class members").

## ANALYSIS

The issue presented is whether the parties have presented enough information to justify giving notice of the Symetra settlement to the members of the settlement class. The Court's inquiry is twofold (1) whether the Court will likely be able to approve the settlement under Rule 23(e)(2) and (2) whether the Court will likely be able to certify the class for purposes of judgment on the settlement. The Court considers each prong separately.

### I. Likelihood of Approval Under Rule 23(e)(2)

#### A. Adequacy of Representation

The first Rule 23(e)(2) factor supports preliminary approval. Just as the Court found in granting approval to Plaintiffs' settlements with the AMEC Defendants and Newport, the Court continues to find that class counsel and the class representatives have adequately represented the class. The Court appointed interim class counsel as well as a steering committee to represent the members of the class in the MDL. Interim class counsel has continued to represent the named Plaintiffs and the class itself zealously at all times throughout the pendency of the MDL. Interim class counsel has appeared for bi-monthly status conferences and filed status reports to keep the Court apprised of the progress of the case at all times. Class counsel has engaged in significant

12

efforts to prepare the case for trial on behalf of the named Plaintiffs who will act as class representatives and the class. Interim class counsel has briefed and argued a series of substantive motions, some testing the sufficiency of the pleadings, others addressed to the arbitrability of the claims of the class, and most recently motions for summary judgment, the exclusion of expert witnesses, and class certification. Having now completed fact discovery, class counsel is well-informed about the facts and strengths of the claims asserted. For their part all of the proposed class representatives are clergy (or their appointed representatives) and participants in the AMEC retirement plan and claim to have suffered the same injuries alleged by all other members of the plan. Class representatives have been deposed during the discovery phase and given evidence to support their claims and the claims of the class they seek to represent. The Court finds that this Rule 23(e)(2) factor is easily met.

### B. Arm's Length Negotiation

The Court also finds that the Symetra settlement agreement was negotiated at arm's length. "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008) (citation omitted). Plaintiffs have shown that their settlement with Symetra was the result of two formal mediation sessions with experienced mediators, the first with the Hon. Janice Holder, a retired Justice of the Tennessee Supreme Court, and a second session with the Hon. Layn R. Phillips, a former federal judge. "The participation of an independent mediator in the settlement negotiations virtually assures that the negotiations were conducted at arm's length and without collusions between the parties." *Gokare v. Fed. Express Corp.*, No. 2:11-cv-2131- JTF-cgc, 2013 WL 12094870, at *3 (Nov. 22, 2013) (quoting *Hainey v. Parrott*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007)). The parties engaged in an early effort to mediate with Justice Holder and then returned to

13

mediation following discovery and a significant volume of motion practice related to the issues left for trial.

Furthermore, the Symetra settlement and the specific monetary amount of the settlement resulted from a mediator's proposal. A mediator's proposal means the settlement was "one that the third-party mediator proposed, rather than an amount determined through the negotiations of the parties." *Garcia v. Schlumberger Lift Sols.*, 2020 WL 6886383, at *13 (E.D. Cal. Nov. 24, 2020). This additional feature of the settlement further supports a finding that the negotiations were at arm's length. *In re MyFord Touch Consumer Litig.*, 2019 WL 1411510, at *8 (N.D. Cal. Mar. 28, 2019) (considering the fact that settlement was based on mediator's proposal as factor in favor of finding arm's length negotiations).

There is also a presumption that the parties did not engage in collusion or fraud to arrive at their settlement. "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 et al., 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007). There is no evidence in the record to suggest a hint of collusion, much less to rebut the presumption that the parties have negotiated in good faith.

Because the Symetra settlement "arose out of arms-length, non-collusive negotiations[,]" the Court can conclude that the settlement was the result of a procedurally fair process. Wm. B. Rubinstein, *Newberg and Rubenstein on Class Actions* § 13.14 (6th ed. 2022).

### C. *Adequacy of the Relief Provided for the Class*

The third Rule 23(e)(2) factor, the adequacy of the relief provided for the class, is satisfied. Rule 23(e)(2) requires the Court to analyze this factor by considering "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class,

including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Each consideration leads the Court to find that the relief provided by the settlement will be adequate for the class as a whole.

The costs, risks, and delay of trial and appeal continue to be of particular significance, in the Court's view. According to Plaintiffs, plan participants learned in 2021 that $88.4 million in plan assets were missing. Plaintiffs have now proffered opinion testimony that "the Plan's balance should have been $227 million higher than it was in June 2021." Whether the Court views the $44.4 million recovery as a percentage of the $88.4 million in missing assets Dr. Harris claimed the plan had in 2021 (50.22%) or as a percentage of the $227 million Plaintiffs would seek at trial (19.56%), the $44.4 million in settlement proceeds represents a reasonable recovery for the class. *Kohari v. MetLife Grp., Inc.*, No. 21-6146, 2025 WL 100898, at *10 (S.D.N.Y. Jan. 15, 2025) (collecting cases and holding that recovery of 19%–27% of total estimated losses was "well within the range found to be fair and reasonable"). In the final analysis, "a gap between the maximum possible recovery and the award in this case is the nature of settlement, and does not indicate a lack of fairness, reasonableness, or adequacy." *In re Family Dollar Stores, Inc., Pest Infestation Litig.*, 2023 WL 7112838, at *6–10 (W.D. Tenn. Oct. 27, 2023).

The time value of settling now and avoiding several years more of litigation is also evident. Many Plaintiffs and an undetermined number of the class members are near or currently in retirement. The class are clergy or former clergy of the AME Church who discovered in 2021 that their retirement accounts were worth approximately 75% less than they had been told by church leaders. Instead of retiring with a measure of comfort and economic security, the class faced a significant shortfall after their lifetime of retirement savings was no longer available. The losses to

the plan disproportionately affected members of the class who presumably had larger balances in the retirement plan as they approached or entered their retirement years. All of this to say, time is a critical factor in achieving relief and recovering lost retirement funds for the members of the settlement class.

At the same time, Plaintiffs' path to a possible recovery against Symetra faces risk. Symetra has already moved for judgment as a matter of law on several of Plaintiffs' claims, contested the certification of Plaintiffs' class action claims for trial, and moved for the exclusion of Plaintiff's expert opinions on damages. The trial itself remains several months away, and the conclusion of any appellate process could span years into the future. *See, e.g., In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003) ("[t]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery" and that "no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict"). Even assuming the class could prevail at trial and on appeal, the members of the class might not be in a position to enforce a final judgment for some years more. Under the circumstances, the prospect of settlement now weighs strongly in favor of preliminary approval.

The proposed method of distributing relief to the class would also appear to be highly effective. As far as monetary relief, the settlement has proposed a plan of distribution identical to the plan used for the settlements with the AMEC Defendants and Newport. Symetra has agreed to pay the settlement amount into a Settlement Fund within 30 days of the preliminary approval order. Assuming the Court gives its final approval to the settlement following the final approval hearing, the $44.4 million in total settlement funds, plus accrued interest, would be transferred from the qualified settlement trust to a qualified trust in which each member of the class would have his or her pro rata share allocated to an individual account. In other words, each class member would receive a

16

share of the proceeds of the settlement automatically with no requirement to file a claim or take any other action to receive his part of the settlement. *Moeller v. Week Publications, Inc.*, 649 F. Supp. 3d 530, 542 (E.D. Mich 2023) (finding that the proposed settlement method, "including the processing of its claims, is effective because it ensures that each member of the Class will automatically obtain relief"). The Court finds that this method of distribution will be fair, equitable, and very effective in delivering relief to the class.

Lastly, the terms of any proposed award of attorney's fees, including the timing of the payment, provides adequate relief for the class. Under the terms of the settlement, counsel for Plaintiffs will be entitled to seek attorney's fees representing one-third of the total recovery. An attorney's fee of one-third of the recovery is standard in class actions. *See Stewart v. Baptist Mem'l Health Care Corp.*, 2024 WL 4360602, at *8 (W.D. Tenn. Sept. 30, 2024) (approving an award of one-third of the gross amount of the settlement fund and collecting cases). Mr. Lee has indicated in his affidavit that counsel for Plaintiffs also intend to petition the Court for an award of $490,000.00 in costs and service awards of $20,000 for each named Plaintiff. The settlement's treatment of attorney's fees further bolsters the Court's conclusion that the relief is adequate for the class. This Rule 23(e)(2) factor favors preliminary approval of the settlement.

### D.        *Equitable Treatment for Class Members*

As the Court has already noted, the settlement provides equitable treatment for class members. For this factor, "[m]atters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2), Committee Notes to 2018 amendment. The agreement calls for the administrator to apportion the settlement funds to each class member on a pro rata basis, and plan

participants entitled to an immediate disbursement of their retirement funds will have access to their share of the settlement funds very soon after the final approval of the settlement. Although members of the class will receive different amounts from the settlement, they will receive shares of the proceeds based on a formula and relative to their individual losses. This allocation is fair and equitable.

### E.  UAW Factors

Insofar as the Rule 23(e)(2) factors overlap or closely align with the *UAW* factors adopted by the Sixth Circuit, the Court has already addressed several *UAW* factors in the preceding analysis: the risk of fraud or collusion; the complexity, expense, and likely duration of the litigation; and the amount of discovery engaged in by the parties. The Court now considers the remaining *UAW* factors.

First, the Court must assess Plaintiffs' likelihood of success on the merits. As the Sixth Circuit remarked in *UAW*, "[t]he fairness of each settlement turns in large part on the bona fides of the parties' legal dispute." *UAW*, 497 F.3d at 631. The Court's task is not to "decide the merits of the case or resolve unsettled legal questions" but rather to "judge the fairness of a proposed compromise" by "weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." *Id*. (quoting *Carson v. Am. Brands, Inc.,* 450 U.S. 79, 88 n. 14 (1981)). As is evident from the full record of the proceedings, Plaintiffs' claims against Symetra are hotly contested. The Court has already certified some of Plaintiffs' class action claims for trial over Symetra's objections. Both Plaintiffs and Symetra have filed cross-motions for summary judgment as well as motions to exclude the other party's expert witnesses. Based on the strength of the arguments presented in the Rule 56 motions alone, the Court can easily find that "the parties are using settlement to resolve a legitimate legal and factual disagreement." *UAW*, 497 F.3d

18

at 632.  For some of the same reasons the Court noted about the expected length of the trial and appellate phases of the case, Plaintiffs have "ample reason to control the resolution of this dispute through negotiation today rather than litigation tomorrow." *Id*.

The balance of the *UAW* factors either favor preliminary approval or are yet to be established. Class counsel has endorsed the settlement. The Court awaits the reaction of absent settlement class members. The class action approval process includes notice to the settlement class members and an opportunity for them to object at the final approval hearing.  The Court would highlight that no settlement class member formally objected to or opted out of the earlier settlements with the AMEC Defendants or Newport.  Class members will nevertheless have the opportunity to pose questions about the Symetra settlement and raise objections during the notice period leading up to the final approval hearing.  "There is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources.'" *Does 1–2 v. Déjà vu Servs., Inc.*, 925 F.3d 886, 899 (6th Cir. 2019) (citation omitted). This MDL is no exception.  The Court finds that the *UAW* factors favor preliminary approval of the settlement.

Having made a determination of each of the Rule 23(e)(2) factors and the *UAW* factors, the Court concludes that it will likely be able to approve the settlement under Rule 23(e)(2).

## II. Likelihood of Settlement Class Certification

The Court now turns to the question of whether the Court will likely be able to certify the settlement class for purposes of approving the settlement. Rule 23(e)(1)(B)(ii) directs a court to determine, at the preliminary approval stage, whether it "will likely be able to . . . certify the class for purposes of judgment on the proposal." If the court determines that it will likely be able to certify the class, it conditionally certifies it pending final approval of the settlement. *Newberg on Class*

19

*Actions* § 13:16 (5th ed. 2019).  Rule 23 requires a party seeking class certification to demonstrate that: (1) the proposed class and class representatives meet all of the requirements of Rule 23(a); (2) the case fits into one of the categories of Rule 23(b); and (3) class counsel meets the requirements of Rule 23(g). *See generally* Fed. R. Civ. P. 23. For the reasons discussed below, the Court finds each of these requirements is met here.

### A. Rule 23(a) Prerequisites for Certification

Rule 23(a) requires that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(1)–(4). Each of these prerequisites is satisfied here.

The numerosity requirement means a class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1). "While no strict numerical test exists, 'substantial' numbers of affected consumers are sufficient to satisfy this requirement." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 541 (6th Cir. 2012) (citations omitted). "The numerosity requirement is also satisfied more easily upon a showing that there is wide geographical diversity of class members, which makes joinder of all the class members more impracticable." *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 339 (N.D. Ohio 2001) (quotation marks and citation omitted).  As the Court found in its recent Class Certification Order, there are approximately 4,513 class members who reside in multiple states around the country.  This suffices to show that the proposed Class is so numerous as to render joinder impracticable. *Young*, 693 F.3d at 541.

The commonality requirement means the class must have at least one common question of law or fact, and resolution of those questions must advance the litigation.  Fed. R. Civ. P. 23(a)(2);

20

*Alkire v. Irving*, 330 F.3d 802, 821 (6th Cir. 2003) (citing *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998)). "Even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (cleaned up). "The threshold for commonality is not high." *Bradberry v. John Hancock Mut. Life Ins. Co.*, 217 F.R.D. 408, 413 (W.D. Tenn. 2003) (quotation marks and citation omitted). The Court has already concluded that Plaintiffs' claims against Symetra share a number of common factual and legal questions like whether Symetra's acts or omissions caused damages to the retirement plan. Plaintiffs easily meet the low threshold for commonality.

The typicality requirement means the claims of the class representatives must be typical of the claims of the members of the class. Fed. R. Civ. P. 23(a)(3). "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996) (quotation marks and citation omitted). "[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Id.* (quotation marks and citation omitted). The claims of the proposed class representatives are typical of the class claims: like the members of the class, the class representatives were participants of the plan at times when Dr. Harris was the plan director and allegedly used plan assets in an improper manner. Class representatives seek to hold Dr. Harris, Symetra, and others liable for the losses suffered by the plan. This satisfies the typicality requirement.

Finally, the class representatives must fairly and adequately protect class interests. Fed. R. Civ. P. 23(a)(4). The Rule 23(a)(4) inquiry serves to uncover conflicts of interest between named parties and the classes they seek to represent. "A class representative must be part of the class and possess the same interest and suffer the same injury as class members." *Beattie v. CenturyTel, Inc.*,

21

511 F.3d 554, 562 (6th Cir. 2007) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997)). Class members must not have "interests that are [ ] antagonistic to one another." *Id*. at 563 (quotation marks and citation omitted). In addition, courts "review[ ] the adequacy of class representation to determine whether class counsel are qualified, experienced and generally able to conduct the litigation." *Young*, 693 F.3d at 543 (quotation marks and citation omitted). The Court has no reason to find that the class representatives have any conflict of interest for purposes of Rule 23(a)(4). The Court has already appointed counsel as interim class counsel, and the Court continues to find that counsel are qualified, experienced, and capable of representing the class. And the Court has no reason to find that class counsel lacks any of the capabilities or resources to continue to provide adequate representation. Fed. R. Civ. P. 23(g).

### B. Rule 23(b)(3) Standard

For purposes of preliminary approval of the settlement, the Court holds that the settlement class satisfies Rule 23(a)'s prerequisites. A class that satisfies Rule 23(a)'s requirements must also fall within one of three categories found in Rule 23(b). Plaintiffs' proposed settlement class meets the standard under Rule 23(b)(3), which requires that "the court find[ ] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3)(A)–(D). Each of the Rule 23(b)(3) factors is met here.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Beattie*, 511 F.3d at 564 (quoting *Amchem Prods.*, 521 U.S. at 632). To satisfy the predominance requirement in Rule 23(b)(3), "a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized

22

proof." *Id.* (quotation marks and citation omitted).

The Sixth Circuit recently explained that in Rule 23(b)(3) class actions, a district court must assess commonality and predominance as part of "a structured two-step approach." *Speerly*, 143 F.4th at 316. "Step one: check to see that the plaintiffs have identified a 'common question of law or fact' and met the commonality test of Rule 23(a)(2)." *Id.* (citing Fed. R. Civ. P. 23(a)(2)). A common question for purposes of Rule 23(a)(2) "must (1) yield a common answer with common evidence and (2) meaningfully progress the lawsuit." *Id.* In other words, the trier of fact "must be able to resolve the question with a yes-or-no answer for the class in one stroke." *Id.* (quoting *Doster v. Kendall*, 54 F.4th 398, 430–31 (6th Cir. 2022), *vacated as moot*, ⸺ U.S. ⸺, 144 S. Ct. 481 (2023)). If the proof shows that the answer to the question is "yes" for some class members and "no" for others, then the question is not common to the class as a whole. *Id.* (citations omitted).

What is more, the plaintiff seeking to represent the class must also show that the common question "affect[s] at least one" disputed "element" of the class's claims. *Speerly*, 143 F.4th 306, 316 (6th Cir. 2025) (citing *Doster*, 54 F.4th at 430). That means the district court must "walk through each cause of action, identify the relevant elements, and evaluate which elements, if any, submit to common answers." *Id.* at 316–17 (citing *In re Nissan N. Am., Inc. Litig.*, 122 F.4th 239, 246–47 (6th Cir. 2024)). The common issue must be "at the heart of the litigation," *Powers*, 501 F.3d at 619, and the resolution of a common issue must advance the litigation. *Sprague*, 133 F.3d at 397.

The Court thoroughly analyzed Plaintiffs' proposed class action claims against Symetra in the Class Certification Order and concluded that certain claims against Symetra met the Rule 23(b)(3) predominance test. The Court adopts the same reasoning here and holds that the proposed settlement class will be able to meet the Rule 23(b)(3) predominance test and therefore the Court will be able to certify the class for purposes of the Symetra settlement.

23

Rule 23(b)(3) also requires that a class action be superior to other available methods of fairly adjudicating the controversy.  Rule 23(b)(3) includes a non-exhaustive list of factors to consider in making that determination, including the class members' interests in controlling the prosecution of individual actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability of concentrating the litigation of various claims in the particular forum; and the likely difficulties in managing a class action. *See* Fed. R. Civ. P. 23(b)(3). "The Advisory Committee had dominantly in mind vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all'" in adopting the concept of Rule 23(b)(3) classes. *Amchem Prods.*, 521 U.S. at 617.  That principle appears to be the case here.

A class action will be superior to other available methods for adjudicating this controversy. As the course of the MDL has shown, each Plaintiff has theories of relief against a whole series of Defendants, from individuals who were church employees to corporations who provided financial or professional services to the plan to business organizations in which plan assets were invested.  The remedy achievable by any individual plaintiff on a claim against Symetra would be completely out of proportion to the costs of litigating the claims against Symetra. The efficiency of utilizing the Rule 23 class structure far outweighs the interests of the members of the proposed settlement class in individually controlling the prosecution of their separate claims. *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 325 (E.D. Mich. 2001) (finding that class action is superior because it ensures fair and efficient adjudication).

Having decided that the requirements of Rule 23(a) and Rule 23(b)(3) are met, the Court finds that the Court will likely be able to certify the class for purposes of approving the settlement.

### III. Appointments of Class Counsel, Class Representatives, and Administrator and Adoption of Proposed Notice

### A. Class Counsel

Plaintiffs request the appointment of Lee Segui PLLC; Osborne Francis & Pettis Law, PLLC; Stranch Jennings & Garvey, PLLC; Kantor & Kantor, LLC, Lieff Cabraser Heimann & Bernstein, LLP; Blue, LLP; Wright & Schulte, LLC; and the AARP Foundation as class counsel for the settlement class. The Court may appoint class counsel if it determines the attorneys are adequate under Rule 23(g)(1) and (4). Fed. R. Civ. P. 23(g)(2). In appointing class counsel, the Court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class[.]

Fed. R. Civ. P. 23(g)(1)(A). The Court may also consider any other matter pertinent to counsel's ability to represent the interests of the class fairly and adequately. Fed. R. Civ. P. 23(g)(1)(B).

For the same reasons already discussed as part of the Court's analysis of other Rule 23 factors and consistent with the Court's rulings in its Class Certification Order, the Court finds that class counsel meets the standard of Rule 23(g). The Court hereby appoints Lee Segui, PLLC; Osborne Francis & Pettis Law, PLLC; Stranch Jennings & Garvey, PLLC; Kantor & Kantor, LLC, Lieff Cabraser Heimann & Bernstein, LLP; Blue, LLP; Wright & Schulte, LLC; and the AARP Foundation as class counsel for the settlement class.

### B. Class Representatives

The Court continues to find that named Plaintiffs have fairly and adequately protected the interests of the class as well as fulfilled their duties throughout the litigation, including participating in discovery and sitting for depositions. The Court therefore appoints named Plaintiffs as class

25

representatives for the settlement class.

### C. Settlement Administrator

Plaintiffs next seek the appointment of Verita Global, LLC to oversee the administration of the settlement, including disseminating notice to the settlement class and administering and calculating the allocation of each settlement class member's pro rata share of the Net Settlement Amount and the proportionate payment of the Legacy Fund. Plaintiffs assert that Verita is an experienced settlement administration firm with sophisticated technological capabilities and is staffed by personnel well-versed in class action litigation. Verita, with oversight from proposed class counsel and with assistance as necessary from the AMEC Department of Retirement Services, will handle all aspects of identifying and providing notice to potential members of the settlement class, receiving and handling opt-outs, calculating the allocations of class members' proportional shares of the net settlement amount, and overseeing the distribution of the settlement proceeds to the settlement class. Verita was also selected as the administrator for the AMEC and Newport settlements. Based on Verita's demonstrated experience, the Court appoints Verita as settlement administrator.

### D. Notice to the Settlement Class

When a class is conditionally certified under Rule 23(b)(3), the district court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). In a similar fashion, Rule 23(e)(1) requires a court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." *See Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402, 423 (6th Cir. 2012) (stating that "all that the notice must do is fairly apprise . . . prospective members of the class of the terms of the proposed settlement so that class members may come to

their own conclusions about whether the settlement serves their interests") (internal quotation marks and citations omitted). The notice may be by one or more of the following methods: United States mail, electronic means, or other appropriate means. Fed. R. Civ. P. 23(c)(2)(B).

The Court finds that the notice plan for the Symetra settlement readily meets these standards. The Settlement Administrator, Verita, will directly notify settlement class members by first class mail (and by email where possible).  The notice plan adequately apprises all potential settlement class members of the terms of the settlement agreements, provides the opportunity to make informed decisions, and comports with due process.

## CONCLUSION

The Court finds that the Rule 23 standard for preliminary approval of the Symetra settlement is met.  Therefore, Plaintiffs' Motion for Preliminary Approval is **GRANTED**.  The Court will enter a separate order to govern the notice period and set the date for the final approval hearing.

The following motions and requests are hereby **DENIED** as moot and without prejudice to the moving party's right to renew the requests in a subsequent motion: Plaintiffs' Motion to Strike Expert Report and Exclude Expert Testimony of Joyce Smith, Esq. (ECF No. 932); Plaintiffs' Motion to Strike Expert Report and Exclude Expert Testimony of Matthew Eickman (ECF No. 933); Plaintiffs' Motion to Strike Expert Report and Exclude Expert Testimony of Dr. Craig Merrill (ECF No. 934); Symetra's Motion to Exclude Testimony of Plaintiffs' Expert Eric Dyson (ECF No. 938); Symetra's Motion to Exclude Testimony of Plaintiffs' Expert Martin Dirks (ECF No. 942); Plaintiffs' Motion for Partial Summary Judgment Against Defendant Symetra Life Insurance (ECF No. 980); Symetra's Motion for Summary Judgment with Respect to Plaintiffs' Derivative and Individual Claims (ECF No. 982); Symetra's Motion for Relief from Local Rule 7.2(a)(1)(B) (ECF No. 1007); and Symetra's Objections to and Appeal of Magistrate Judge's Order Denying Symetra's

Motion to Exclude Proposed Expert Testimony on Damages by Harris Devor and Martin Dirks (ECF

No. 1097).

     **IT IS SO ORDERED**.

            **s/ S. Thomas Anderson**
            S. THOMAS ANDERSON
            UNITED STATES DISTRICT JUDGE

            Date: April 17, 2026.