**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: AME CHURCH EMPLOYEE RETIREMENT FUND LITIGATION, | ) ) ) ) | Lead Case No. 1:22–md–03035–STA–jay |
| | | ALL CASES |

---

**ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL RECONSIDERATION
OF ORDER GRANTING CLASS CERTIFICATION**

---

Before the Court is Plaintiffs' Motion for Partial Reconsideration of Order Granting Class Certification (ECF No. 1106) filed January 12, 2026.  Plaintiffs ask the Court to reconsider two discrete aspects of its class certification ruling. Defendant Symetra Life Insurance Company ("Symetra") responded in opposition, though Plaintiffs and Symetra have since announced a settlement of their dispute.  For the reasons set forth below, the Motion is **GRANTED**.

**<u>BACKGROUND</u>**

The Court has set out the full background of this matter in previous orders. Briefly, Plaintiffs initially filed a class certification motion (ECF No. 805) on May 7, 2025.  Symetra was the only Defendant to oppose that request. After the parties had fully briefed the initial motion, the United States Court of Appeals for the Sixth Circuit issued its *en banc* decision in *Speerly v. General Motors*, 143 F.4th 306 (6th Cir. 2025). Although Plaintiffs and Symetra submitted supplemental briefing based on *Speerly*, the Court ultimately decided that a completely fresh look at class certification was preferable.  The Court therefore denied Plaintiff's initial request for class certification without prejudice. Plaintiffs filed a renewed motion for class certification and appointment of class counsel (ECF No. 981) on October 3, 2025.  Once again, Symetra was the only Defendant to oppose class certification.

The Court granted in part and denied in part the renewed motion for class certification in

an order (ECF No. 1099) entered on January 2, 2026 ("the Class Certification Order").  The Court

certified the following class claims, issues, and defenses for class action:

> (1) civil conspiracy against the Estate of Dr. Jerome V. Harris; Sandra Harris; Robert Eaton; Symetra Life Insurance Company; Financial Freedom Funds, LLC; Day & Night Solar; Trinity Financial; Financial Freedom Group, Inc.; Financial Technologies, LLC; and the Motorskill Entities (Second Am. Compl., count 8);

> (2) Symetra's affirmative defenses on the statute of limitations, including (a) the application of the discovery rule and when plan participants learned of facts sufficient to put a reasonable person on notice that they had suffered an injury as a result of wrongful conduct; and (b) whether Defendants fraudulently concealed their alleged wrongs from plan participants.

> (3) any other affirmative defense preserved by Symetra and Defendants named in the civil conspiracy count.

Consistent with the Court's Class Certification Order, Plaintiffs proposed a form of notice to the

class concerning the certification of these claims.

In their Motion for Partial Reconsideration, Plaintiffs ask the Court to revise the Class

Certification Order in two respects.  First, Plaintiffs argue that the Court should reconsider its

decision and certify their class action claims against the Estate of Dr. Jerome V. Harris and Robert

Eaton for three specific breaches of fiduciary duty. Plaintiffs believe their damages model meets

the Rule 23(b) predominance test as to these claims. For example, Plaintiffs' model can account

for the effect of the decision made by Dr. Harris and Eaton to invest the Plan's assets in Symetra

annuities instead of Symetra mutual funds.  The model also accounts for nearly $13.5 million in

improper administrative fees paid to Dr. Harris and $740,000 in state property taxes paid on real

property imprudently purchased with plan assets. In addition to or as alternative relief, Plaintiffs

have offered to produce a supplemental opinion evidence disclosure to explain how their damages

model properly tracks these individual breaches of duty.

Second, Plaintiffs argue they can prove class-wide damages without the model devised by

their expert opinion witnesses. According to Plaintiffs, they can prove damages without opinion evidence at all, simply by showing the difference between amounts they expected to receive in their retirement accounts and the amounts they actually had when the alleged scheme was discovered in 2021, a total of over $88.4 million. Plaintiffs argue then that the Court should certify their class claims against the Estate of Dr. Harris and Eaton for breach of fiduciary duty and fraudulent concealment based on this simplified measure of expectation damages.

In a similar fashion, Plaintiffs can also prove the amounts wrongfully taken from the Plan's assets. For instance, the proof will show that Dr. Harris improperly transferred $3.4 million from the Plan to his own company, Trinity Financial. Plaintiffs seek to hold Trinity Financial liable for conversion and aiding and abetting Dr. Harris's breach of fiduciary duty. Plaintiffs will also show that Sandra Harris is liable for conversion based on the amounts she jointly held in bank accounts with her late husband. And Plaintiffs can prove that Day and Night Solar, LLC, a company controlled by Eaton, received over $1.7 million in loans representing assets of the Plan and never repaid the loans. Plaintiffs argue that no damages model based on expert analysis is required to prove these losses to the Plan. For all of these reasons, Plaintiffs ask the Court to reconsider its class certification order and permit Plaintiffs to pursue class action relief on their claims for breach of fiduciary duty against the Estate of Dr. Harris and Eaton as well as specified claims against other Defendants.

## **STANDARD OF REVIEW**

Plaintiffs seek the revision of the Class Certification Order, a decision of an interlocutory character. Local Rule 7.3 states that "[b]efore the entry of a judgment adjudicating all of the claims and the rights and liabilities of all the parties in a case, any party may move, pursuant to Fed. R. Civ. P. 54(b), for the revision of any interlocutory order made by that Court" but only for specific

3

reasons listed in Local Rule 7.3(b).  Local R. 7.3(a).  A party may seek revision of a previous ruling

from the Court based only one of the following factors:

> (1) a material difference in fact or law from that which was presented to the Court
> before entry of the interlocutory order for which revision is sought, and that in the
> exercise of reasonable diligence the party applying for revision did not know such
> fact or law at the time of the interlocutory order; or (2) the occurrence of new
> material facts or a change of law occurring after the time of such order; or (3) a
> manifest failure by the Court to consider material facts or dispositive legal
> arguments that were presented to the Court before such interlocutory order.

Local R. 7.3(b); *see also Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n.5, (2008) (citing 11

C. Wright & A. Miller, *Federal Practice & Procedure*, § 2810.1 pp. 127-128 (2d ed. 1995)).

Otherwise, motions to reconsider are not allowed.  Local R. 7.3(a).

## ANALYSIS

The issue presented is whether Plaintiffs have shown why the Court should reconsider its

Class Certification Order. Strictly speaking, Plaintiffs have identified two issues for revision they

could have briefed in their original presentation on class certification but did not.  "[A] motion to

reconsider generally is not a vehicle to reargue a case" with new theories the party could have

raised at an earlier stage of the case. *United States v. LaDeau*, 734 F.3d 561, 572 (6th Cir. 2013)

(citing *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998)).

By the same token, Plaintiffs seek only partial reconsideration of the Court's ruling and only as it

pertains to very specific class action claims: breach of fiduciary duty (against the Estate of Dr.

Harris and Robert Eaton) and their non-conspiracy claims for conversion and aiding and abetting

breach of fiduciary duty (against Sandra Harris, Day and Night Solar, and other Defendants). As

Plaintiffs point out, none of these Defendants responded in opposition to class certification.

The Court would highlight here that Plaintiffs addressed their arguments in the first place

to objections raised by Symetra. Symetra was the only Defendant to oppose Plaintiffs' renewed

4

request for class certification. Symetra's principal attack on Plaintiffs' opinion-based damages model concerned the broad sweep of the model and its fit with Plaintiffs' class action claims against Symetra. The Court's class certification ruling therefore was naturally addressed to Plaintiffs' class action claims against Symetra and the arguments briefed by the parties. In other words, Plaintiffs did not raise the points they have now argued in support of reconsideration because the issues were not actually in dispute the first time around.

Plaintiffs' arguments for partial reconsideration are focused on claims against Defendants other than Symetra. Plaintiffs rightly point out that none of the other Defendants except Symetra ever responded to oppose class certification. As the Court noted in its Class Certification Order, a party's failure to raise an argument in response to a motion for class certification results in the forfeiture of the argument. *Am. Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, 757 F.3d 540, 545 (6th Cir. 2014).  Each Defendant except Symetra has forfeited its opposition to class certification.

For that matter, no Defendant except Symetra has responded to oppose Plaintiffs' request for reconsideration. Following the Court's February 2026 status conference with the parties, the Court ordered the non-moving parties to show cause as to why the Court should not reconsider its class certification order, either by responding on the merits to the Motion for Partial Reconsideration or stating on the record that they did not oppose the Motion. The Court cautioned the parties that the failure to respond to the order might result in the Court granting the Motion without further notice. Order to Show Cause Feb. 20, 2026 (ECF No. 1138).

Two Defendants heeded the Court's admonition and responded to the show cause order. Defendant Sandra Harris stated that she took no position on the Motion for Partial Reconsideration. S. Harris Show Cause Resp., Feb. 20, 2026 (ECF No. 1139).  Defendant Day and Night Solar,

5

LLC submitted its own response to the show cause order and stated that it took no position on the

Motion for Partial Reconsideration and also that it did not oppose the Motion.  DNS Show Cause

Resp., Mar. 5, 2026 (ECF Nos. 1142, 1143). Neither Robert Eaton nor Financial Freedom Group,

Inc. responded to the show cause order at all. The Estate of Dr. Harris, which was formally served

and substituted into the case for the late Dr. Harris only recently, has not responded. *See* Order

Granting Pls.' Mot. to Substitute, Apr. 30, 2026 (ECF No. 1176).[1] All other Defendants who

remain in the case are in default.[2]

Under the circumstances, the Court finds good cause to reconsider its Class Certification

Order. The request for reconsideration is partial in nature and limited to specific claims alleged on

behalf of the class against specific Defendants. Each of the non-moving Defendants forfeited their

right to oppose class certification by failing to respond in opposition to class certification in the

first place. None of those Defendants have responded to oppose reconsideration. Perhaps more

important, Plaintiffs seek reconsideration on very narrow grounds.  Plaintiffs have shown that they

---

[1] Separately, the Court ordered Plaintiffs to address whether they had properly served the Estate of Dr. Harris, both with their Second Amended Complaint naming the Estate as a Defendant and with the dispositive motions filed by Plaintiffs against the Estate of Dr. Harris. Plaintiffs have now served Daniel Parrish, the administrator ad litem of the Harris Estate, *see* Affidavit of Service (ECF No. 1174), and requested that the Court reserve ruling on the Motion for Partial Reconsideration until the time for the Estate to file its responsive pleading had passed. Jt. Status Rep. 9, Apr. 8, 2026 (ECF No. 1156). Parrish's deadline to respond to the Second Amended Complaint was May 13, 2026. Therefore, the Court finds that the Motion for Partial Reconsideration is now ripe for determination.

[2] This includes Financial Technologies, LLC; Financial Freedom Funds, LLC; Trinity Financial Consultants, LLC; Motorskill Ventures, Inc., Motorskill Ventures I, L.P., and Motorskill Asia Ventures 1, L.P. (collectively "the Motorskill entities").

Defendant Rodney Brown & Company, a small accounting practice which provided annual audits of the AMEC Department of Retirement Services and/or the Plan and its assets, is not in default. However, Plaintiffs did not seek class certification of their claim against the firm for professional negligence and instead suggested that they intended to nonsuit the claim for lack of proof.

can establish their damages on the very particular claims in a way that comports with Rule 23's standards for class certification and the cases applying Rule 23. Therefore, Plaintiffs' Motion for Partial Reconsideration is **GRANTED**.

### I.  Application of the Dirks/Devor Model to Plaintiffs' Class Claims Against the Estate of Dr. Harris and Robert Eaton

First, the Court finds good cause to reconsider its conclusion that Plaintiffs were not entitled to class certification of their breach of fiduciary duty claims against the Estate of Dr. Harris or Robert Eaton.  In its previous order, the Court held that Plaintiffs could satisfy each of the Rule 23(a) gatekeeping safeguards for class certification on their breach of fiduciary duty claims: adequacy, numerosity, typicality, and commonality. The Court denied class certification on the claims because the Court concluded Plaintiffs' damages model could not meet Rule 23(b).

A class that satisfies Rule 23(a)'s requirements must also fall within one of three categories found in Rule 23(b). Plaintiffs argued for certification under Rule 23(b)(3), which sets out a two-part test and requires two showings, predominance and superiority. Fed. R. Civ. P. 23(b)(3) (requiring a plaintiff to show that common questions "predominate" and that class action is "superior to other available methods" of adjudication). "Class certification under Rule 23(b)(3) requires that a plaintiff establish 'that damages are capable of measurement on a class-wide basis.'" *In Re FirstEnergy Corp. Secs. Litig.*, 149 F.4th 587, 620 (6th Cir. 2025) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 34, 133 S.Ct. 1426, 1431 (2013)). Whether at the class certification stage or at trial, "courts must conduct a 'rigorous analysis' to determine whether a plaintiff's damages case is consistent with its liability case." *Id.* (cleaned up). And in cases involving multiple theories of liability or causes of action, the plaintiff's damages must be "specifically attributable" to each theory of liability. *Id.* at 621. If a class proposes a damages model that fails the Rule 23(b)(3) predominance test, "[q]uestions of individual damage calculations will inevitably overwhelm

7

questions common to the class." *Id.*

As part of its class certification ruling, the Court concluded that Plaintiffs' damages model ("the Dirks/Devor Model") failed Rule 23(b)(3)'s predominance test because the Dirks/Devor Model did not fit the alleged breaches of fiduciary duty committed by Dr. Harris or Eaton. In support of their Motion for Partial Reconsideration, Plaintiffs argue, albeit for the first time, that their model can account for particular breaches of fiduciary duty, for example, the decision made by Dr. Harris and Eaton to invest the Plan's assets in Symetra annuities instead of Symetra mutual funds. The model also accounts for nearly $13.5 million in improper administrative fees paid to Dr. Harris and $740,000 in state property taxes paid on real property purchased with plan assets.

"The first step in a damages study is the translation of the legal theory of the harmful event into an analysis of the economic impact of that event." *Comcast*, 569 U.S. at 38 (quoting Fed. Jud. Ctr., *Reference Manual on Scientific Evidence* 432 (3d ed. 2011)). "[A]fter *Comcast* [a] class must be able to show that their damages stemmed from the defendant's actions that created the legal liability." *In re VHS of Michigan, Inc.*, 601 F. App'x 342, 344 (6th Cir. 2015). Plaintiffs have the burden then to show that the opinion evidence on damages expressed in the Dirks/Devor Model "stemmed from" the alleged breaches of fiduciary duty committed by Dr. Harris and Eaton. The Court will discuss each specific claim about Harris' and Eaton's breach of fiduciary duty separately.

Decision to Invest Exclusively in Symetra Annuities. Plaintiffs allege on behalf of the class of plan participants that both Dr. Harris and Eaton breached their fiduciary duties by making the original choice to invest the full corpus of the Plan's assets in fixed and variable rate annuities with Symetra as opposed to a prudent mix of stocks and bonds. Plaintiffs have supported their allegation with opinion evidence. As the Court explained in the Class Certification Order,

8

> To support their theory of liability, Plaintiffs have disclosed opinion evidence from two witnesses, Martin Dirks and Harris Devor. Plaintiffs' opinion witnesses have opined that the Plan's total balance would have been $265,806,852 had it obtained the historical results of a benchmark index fund, the Vanguard VBIAX fund. Measured against the actual value of the Plan's assets as of the end of the second quarter of 2021 ($38,066,613), Mr. Devor concluded that the Plan suffered a total loss of $227,740,239, that is, the difference between its value had the Plan's assets been prudently invested and its actual value.

One of the assumptions underpinning the Dirks/Devor Model was Mr. Dirks' opinion that the Vanguard ETF VBIAX was an appropriate fund and comparator as a benchmark for a prudently managed retirement fund with a 60%–40% mix of equities and fixed income investments. The Dirks/Devor Model then calculates what the Plan's assets would have been worth, had Dr. Harris and Eaton invested the Plan's assets in an appropriate manner reflecting a prudent mix of stocks and bonds consistent with the VBIAX benchmark. If the Plan's assets had been invested in a manner consistent with the VIABX benchmark and assuming the Plan had obtained the historical results of the benchmark fund, Mr. Devor concluded the Plan's total balance would have been $265,806,852, as of June 2021. The Court noted all the particulars of the Dirks/Devor Model in its Class Certification Order. *See also* Class Certification Order 64–66.

The Court declined to certify the class claims for breach of fiduciary duty based on the initial selection of Symetra annuities as the investment for the Plan's assets for two reasons. First, Plaintiffs' damages model assumes that the plan participants' injuries began in 2002 with the selection of Symetra as the annuity provider for the Plan when, according to Mr. Dirks, an investment of 100% of the Plan's assets in annuities was not a prudent way of investing the assets. Plaintiffs' Second Amended Complaint, however, did not allege the selection of annuities as a specific breach of fiduciary duty by Dr. Harris or Eaton. *See id.* at 68. Plaintiffs now cite evidence submitted as part of their briefing on a separate motion for summary judgment, and not the renewed motion for class certification, which tends to show that Dr. Harris and Eaton had the opportunity

9

to invest the Plan's assets in a mix of Symetra mutual funds (though still within the annuity product sold by Symetra), not the low yield annuities Harris and Eaton actually selected.

"A plaintiff may not shift its theory of liability at the summary judgment stage in a way that materially alters the pleaded factual basis of its claim and prejudices the opposing party." *Grand Traverse Band of Ottawa & Chippewa Indians v. Blue Cross Blue Shield of Mich.*, 146 F.4th 496, 511–12 (6th Cir. 2025) (citing *S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327–28 (6th Cir. 2013)). A plaintiff is " not rigidly bound" to the specific legal theories articulated in the pleadings. *Id.* at 512 (citing *Johnson v. City of Shelby*, 574 U.S. 10, 11, 135 S.Ct. 346, 190 L.Ed.2d 309 (2014)). By the same token, a defendant is entitled to "fair notice of the nature and basis or grounds for a claim," meaning a plaintiff cannot "pivot to a new factual basis for liability" if the pivot prejudices the defendant. *Id.* (citing *Sierra Brokerage*, 712 F.3d at 327–28 (quoting *Colonial Refrigerated Trans., Inc., v. Worsham*, 705 F.2d 821, 825 (6th Cir. 1983)).

Here, the Court finds that Plaintiffs are not unfairly expanding the factual basis for their theory that Dr. Harris and Eaton breached their fiduciary duties. The Second Amended Complaint contains several allegations about the imprudence of Plan fiduciaries choosing low-interest Symetra annuities as the principal investment vehicle for the Plan's assets. Neither the Estate of Dr. Harris nor Eaton has argued that Plaintiffs' pursuit of this theory on behalf of the class would cause either Defendant to suffer prejudice. In fact, neither Defendant has opposed certification of the claim for class treatment at all. Therefore, the Court finds no reason not to consider the claim as part of its reconsideration of the class certification ruling.

The Court gave a second and more fundamental reason for denying class certification of Plaintiffs' breach-of-fiduciary-duty claim based on the selection of Symetra annuities. The Court held that the selection of annuities was a discrete act in 2002. Since the Dirks/Devor Model

10

included a number of additional damages related to later breaches of fiduciary duty, most completely unrelated to any economic harm caused by the choice to keep the Plan's funds in annuities, the model did not "isolate the economic harm resulting from one specific breach of fiduciary duty and instead combines each into an undifferentiated combination of damages." Class Certif. Order 68–69.  In the Court's view, *Comcast* required "a closer, more congruent fit between a specific theory of liability and a theory of damages." *Id*. at 69.

Upon further review, the Court finds that the Dirks/Devor Model properly pinpoints the selection of annuities as the correct starting point for calculating Plaintiffs' damages.  The fact is the selection of annuities in 2002 was the temporal starting point for the injuries alleged on behalf of the Plan or the plan participants, whether viewed as a civil conspiracy or breach of fiduciary duty. The injury continued as long as the Plan was not prudently invested. Moreover, Plaintiffs represent to the Court that "the Dirks/Devor Model's flexibility allows for" a jury to isolate the damages caused by each discrete breach of fiduciary duty. This was the very concern the Court expressed at class certification. Hypothetically, a jury could find in Plaintiffs' favor on the fiduciary duty claim related to the selection of annuities but not the fiduciary duty claim based on another discrete act, for example, the payment of real property taxes on the Florida real estate owned by the Plan.

Accepting Plaintiffs' claim about the flexibility of their damages model, the Court is satisfied that Plaintiffs can meet their burden and properly isolate the damages for each alleged breach of fiduciary duty in the manner that *Comcast* requires. The Court concludes that this suffices to meet *Comcast*'s test and demonstrates a "fit" between Plaintiffs' theory of liability against the Estate of Dr. Harris and Eaton and Plaintiffs' proposed damages model. Therefore, Plaintiffs' Motion for Partial Reconsideration is **GRANTED** on this issue.

Payment of Improper Administrative Fees.  Plaintiffs next seek reconsideration on the issue of whether the Dirks/Devor Model properly accounts for over $13.4 million in administrative fees collected by Dr. Harris. Just as with the fiduciary duty claim based on the selection of annuities as the Plan's primary investments, the Court held at the class certification stage that the damages model did not properly isolate the damages caused by the fiduciary duty claim premised on the payment of allegedly improper administrative fees. In denying Plaintiffs' request for class certification on this point, the Court concluded that each payment of quarterly administrative fees to Dr. Harris amounted to a discrete breach of fiduciary duty and occurred years after Dr. Harris and Eaton allegedly steered the Plan's assets into low-interest Symetra annuities. Plaintiffs now argue that the Dirks/Devor Model accounts for the losses caused by the payment of the improper fees and can isolate the losses merely by showing what the Plan's assets would have been as compared to what they were after the fees were remitted to Dr. Harris.

For the same reasons that the Court grants reconsideration on the fiduciary duty claim related to the selection of annuities, the Court grants reconsideration on the fiduciary duty claim related to improper administrative fees. Plaintiffs have met their burden to show that the Dirks/Devor Model is capable of isolating the damages stemming from the improper administrative fees. This satisfies the Court's previously stated concerns and meets the test for predominance in *Comcast*. Therefore, Plaintiffs' Motion for Partial Reconsideration is **GRANTED** on this issue.

Payment of Real Property Taxes. Plaintiffs also seek reconsideration of the Court's ruling as it pertains to the breach of fiduciary duty claim against Dr. Harris and Eaton for the payment of real property taxes owed in the State of Florida on real property purchased with Plan assets. Plaintiffs allege that Dr. Harris and Eaton breached their fiduciary duties to the Plan by selecting

12

this imprudent investment and incurring an ongoing obligation to pay property taxes out of Plan assets. The Court held at the class certification stage that each annual payment of property taxes was a separate and independent breach of fiduciary duty and therefore would amount to a discrete element of damages.

For all of the reasons the Court has just explained, Plaintiffs have persuasively shown that the Dirks/Devor Model is capable of isolating the property taxes as a measure of damages and then calculating the compounded effect of the loss to the Plan.  As a result, the Court **GRANTS** the Motion for Partial Reconsideration on this issue.

Having determined that reconsideration is warranted, the Court hereby amends its Class Certification Order to certify the class action claims for breach of fiduciary duty against the Estate of Dr. Harris and Eaton premised on (1) their selection of Symetra annuities in which to invest Plan assets, (2) the payment of excessive and improper administrative fees, and (3) the payment of real property taxes for the Florida property purchased with Plan assets.

## II. Measurement of Class-Wide Damages Through Transaction-Specific Proof Without the Dirks/Devor Model

Plaintiffs next argue that the Court should reconsider its Class Certification Order in as much as the Court ruled by implication that Plaintiffs were required to prove damages traceable to their non-civil conspiracy claims by means of an expert witness' damages model, though that framing is not exactly what the Court held. The Court actually ruled that the Dirks/Devor Model, calculating as it does the cumulative effect of almost two decades of lost growth and imprudent management, failed to model damages for the separate and independent torts allegedly committed by individual Defendants at specific points in time. The Court summarized its reasoning as follows:

> Plaintiffs' model assumes that the plan participants' injuries began in 2002 with the selection of Symetra as the annuity provider for the Plan when, according to Mr. Dirks, an investment of 100% of the Plan's assets in annuities was not a

prudent way of investing the assets.

By contrast, most of Plaintiffs' theories for relief on behalf of the class do not trace their injuries back to 2002. Rather, Plaintiffs allege that Defendants are liable for discrete acts or omissions that occurred later, and sometimes many years later, and therefore caused injuries in the form of monetary losses long after 2002. Simply put, a model that purports to measure damages from 2002 to 2021, all the while compounding the economic effect of the injuries through quarterly investment growth, is simply overinclusive for most of Plaintiffs' causes of action.

Class Certification Order 67. The Court went on to analyze how the Dirks/Devor Model failed the

*Comcast* test for each tort alleged on behalf of the class, except for the tort of civil conspiracy. The

Court ultimately held that "[t]he unique nature of joint-and-several liability for civil conspiracy

matche[d] the somewhat capacious scope of Plaintiffs' damages model." *Id*. at 72. The key to the

Court's conclusion was how the Dirks/Devor Model "account[ed] for how each claim works,"

*Speerly*, 143 F.4th at 335, and not, strictly speaking, whether Plaintiffs were obligated to prove

damages with an expert opinion model.

Now, instead of proving damages solely through the Dirks-Devor Model, Plaintiffs contend

that they can establish some measures of damage "by simply adding up the amount of previously-

reported account balances that could not be found after Dr. Harris's retirement or by referencing

specific financial transactions that depleted Plan assets." Pls.' Mot. for Partial Reconsideration 6.

For example, Plaintiffs assert that they are entitled to their expectation damages (measured as the

difference between what they expected and were told the Plan was worth just before Dr. Harris'

retirement and the actual value of the Plan after Dr. Harris' retirement). Plaintiffs argue that

expectation damages are particularly appropriate for their claims of breach of fiduciary duty and

fraudulent concealment. Plaintiffs request therefore that the Court revisit its prior decision and

determine whether Plaintiffs can establish damages on other class claims besides their claim of

civil conspiracy, simply with proof that Plan assets were improperly transferred from the Plan to

14

one or more Defendants.

While it is true Plaintiffs did not raise this argument as part of their original briefing on the class certification issue, the Court finds good cause to revisit its earlier ruling. The Court's original analysis was confined to the question presented in the renewed motion for class certification, namely, whether Plaintiffs could satisfy Rule 23(b)(3)'s predominance test for all of their tort claims with the Dirks/Devor Model. As a result of its analysis of that specific question, the Court limited class certification to Plaintiffs' civil conspiracy claim based on the fit between the Dirks/Devor Model and Plaintiffs' civil conspiracy theory of liability against Defendants. The Court never addressed the availability of simpler calculations of damages based on separate and independent transfers or transactions. Plaintiffs argue in their Motion for Partial Reconsideration that they can establish measures of damages on other tort claims outside of the expert opinions reflected in the Dirks/Devor Model. Because that is a contention the Court did not previously reach, reconsideration to address Plaintiff's argument is warranted.

The narrow issue presented then is whether Plaintiffs can meet their burden to satisfy Rule 23(b)(3)'s predominance test and prove damages on several of their class tort claims without recourse to the Dirks/Devor Model. *Pickett v. City of Cleveland, Ohio*, 140 F.4th 300, 314–15 (6th Cir 2025) (Gibbons, J., concurring) ("Parties seeking class certification must satisfy the pre-requisites under Rule 23(a) and 23(b).") (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613–14, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)). The Court has held that Plaintiffs can prove their claims for civil conspiracy and breach of fiduciary duty through the Dirks/Devor Model. In addition to those claims, Plaintiffs also charge Defendants with fraudulent misrepresentation (Estate of Dr. Harris), fraudulent concealment (Estate, Eaton), conversion (Estate, Sandra Harris, Eaton, et al.), and aiding and abetting breaches of fiduciary duty (multiple Defendants).

15

The Court finds Plaintiffs have shown that they can introduce class-wide proof to establish a measure of damages for the class as a whole on specific tort claims, thereby establishing "that damages are capable of measurement on a class-wide basis." *In Re FirstEnergy Corp. Secs. Litig.*, 149 F.4th at 620 (quoting *Comcast*, 569 U.S. at 34).  Plaintiffs have done so by showing that their class-based damages are "specifically attributable" to their several theories of each Defendant's liability, *id.* at 621, and "account[] for how each claim works." *Speerly*, 143 F.4th at 335. The Court analyzes in turn each of Plaintiffs' tort theories and the damages recoverable under Tennessee law.

Breach of Fiduciary Duty and Aiding and Abetting Breach of Fiduciary Duty. First, Plaintiffs allege both Dr. Harris and Eaton breached their fiduciary duties to the Plan and thereby caused losses to the class of plan participants. In Tennessee a fiduciary is liable to its principal "for harm *resulting from* a breach of duty imposed by the relation." Restatement (Second) of Torts § 874; *see also Pagliara v. Johnston Barton Proctor & Rose, LLP*, No. 3:10–cv–00679, 2012 WL 913256, at *5 (M.D. Tenn. Mar. 16, 2012).  The scope of damages for breach of fiduciary duty is quite broad. A fiduciary is liable to "make full indemnity." *Gay & Taylor, Inc. v. American Cas. Co. of Reading, Pa.*, 381 S.W.2d 304, 305–06 (Tenn. Ct. App. 1963) (quoting *Walker v. Walker*, 52 Tenn. 425, 428, 1871 WL 3774, at *1 (Tenn. 1871)). When a breach occurs, the fiduciary is liable for damages "naturally and proximately flowing from the breach of duty." *Id*. For the fiduciary to be held liable, damages must be "fairly attributable" to the breach "as the natural result or just consequence" of it. *Marshall v. Sevier Cnty.*, 639 S.W.2d 440, 446 (Tenn. Ct. App. 1982).

Plaintiffs argue that as damages for their breach-of-fiduciary-duty claims against the Harris Estate and Eaton, they are entitled to recover the difference between the amount of the Plan's misrepresented value and its actual value, what Plaintiff's have called their "expectation

16

damages."[3]  The Court is not convinced that this approach properly accounts for how damages for breach of fiduciary duty work under Tennessee law.  A breach of fiduciary duty occurs "at the time when the alleged unsuitable investments were made  . . . and [an investor's] funds were put at risk. *Dean Witter Reynolds, Inc. v. McCoy*, 853 F. Supp. 1023, 1036 (E.D. Tenn. 1994) (citing *Gay & Taylor*, 381 S.W.2d at 304) (other citation omitted).  The starting point for calculating the damages for any single breach of fiduciary duty would be the amount of the "unsuitable investment," and not a later misrepresentation about the appreciation or increase in value of the investment.

For instance, much of the inflated value of the Plan's assets consisted of the Plan's supposed "paper profits" in the Motorskill entities. The alleged breaches of fiduciary duty, however, occurred when Dr. Harris and/or Eaton invested Plan assets in the Motorskill entities. In ascertaining the damages from the breaches, a jury would start with the amount of the investments made in the Motorskill entities, not by calculating the difference between the misrepresented value of the investments and their actual value.

In any event, the fact remains that Plaintiffs can prove damages on a class-wide basis by proving the amounts of Plan assets loaned or invested in a manner by which Dr. Harris and/or Eaton breached their fiduciary duties to the Plan.  Plaintiffs would be entitled to seek damages for each transfer of assets constituting a fiduciary breach as well as the damages "fairly attributable"

---

[3] Generally speaking, expectation damages are available for breach of contract under Tennessee law where the measure of expectation damages is "awarding the party the benefit of its bargain." *Mueller Brass Co. v. Crompton*, No. 2:20-CV-2496-SHL-atc, 2024 WL 2303953, at *3 (W.D. Tenn. May 21, 2024) (quoting *Alsbrook v. Concorde Career Colls., Inc.*, 469 F. Supp. 3d 805, 826 (W.D. Tenn. 2020)). The Court discusses Tennessee's "benefit of the bargain" rule below. Otherwise, Plaintiffs have not shown that expectation damages are cognizable as a measure of damages for breach of fiduciary duty (or for that matter fraudulent concealment).  In any event, Plaintiffs' use of the phrase "expectation damages" is perhaps better understood as an analogy.

to the breach "as the natural result or just consequence" of it. *Marshall*, 639 S.W.2d at 446.

The same method would apply to any damages proven by Plaintiffs to recover on their aiding and abetting claims. Under Tennessee law, a plaintiff may hold a defendant liable for a third party's breach of duty if "the defendant knew that his companions' conduct constituted a breach of duty, and that he gave substantial assistance or encouragement to them in their acts." *PNC Multifamily Cap. Inst. Fund*, 387 S.W.3d at 552 (quoting *Carr v. United Parcel Serv.*, 955 S.W.2d 832, 836 (Tenn. 1997)). Plaintiffs allege on behalf of the class that the following Defendants all aided and abetted certain breaches of fiduciary duty committed by Dr. Harris and/or Eaton: Financial Freedom Funds, LLC; Financial Freedom Group, Inc.; Financial Technologies, LLC; Day & Night Solar; Trinity Financial Consultants, LLC; the Motorskill Entities; and Sandra Harris. In some cases the alleged acts of aiding and abetting took the form of accepting a loan from funds held by the Plan, which was never repaid, or receiving a capital investment of Plan assets in the company.

Just as Plaintiffs can show that each breach of fiduciary duty started with an improper or imprudent transfer of Plan assets, each act of aiding and abetting will likewise be tied to a specific transfer of Plan assets. The Court holds then that Plaintiffs can establish their class-wide damages on the class claims for breach of fiduciary duty and aiding and abetting the breach of fiduciary duty by showing the amount of each improper transfer or imprudent investment as well as the damages "fairly attributable" to the breach "as the natural result or just consequence" of it. *Marshall*, 639 S.W.2d at 446.

Conversion. Likewise, Plaintiffs have shown that they can prove damages for conversion based on discrete transactions or transfers of Plan assets. The general measure of damages for the conversion of personal property in Tennessee is "the market or actual value of the property at the

date of the conversion." *Bateman v. Ryder*, 64 S.W. 48, 49 (Tenn. 1901) (citation omitted); *Hobbs v. Hobbs*, No. W2004-01553-COA-R3-CV, 2005 WL 1541866, at *4 (Tenn. Ct. App. Jan. 20, 2005) ("[T]he proper measure of damages in a conversion case 'is the value of the property converted at the time and place of conversion, with interest.'") (collecting cases).  Plaintiffs can therefore recover damages for the class as a whole with evidence of the actual value of property wrongly transferred from the Plan to one of the Defendants named in the conversion count. Plaintiffs would be entitled to recover the actual value of the property plus interest.

Take Plaintiffs' class claim for conversion against Defendant Trinity Financial Consultants, LLC's ("Trinity Financial").  Plaintiffs claim that they can prove a total of $3,404,427 in damages based on Trinity Financial's alleged acts of conversion. According to Plaintiffs, the total damages are traceable to a series of transfers of Plan assets, first from the Plan to Financial Freedom Funds and then from Financial Freedom Funds to Trinity Financial, in the total amount of $2,714,427 as well as transfers representing $667,000 in improper administrative fees collected by Dr. Harris and then moved over to Trinity Financial. Assuming Plaintiffs can prove how each transfer established the elements of conversion, a jury could find that the class is entitled to an award of damages based just on the value of the property at the time of each transfer plus interest.

In a similar way, Plaintiffs could prove damages on a class-wide basis arising out of the alleged acts of conversion committed by Sandra Harris and Day and Night Solar, LLC.  One of the elements Plaintiffs must prove at trial to establish their class conversion claim against Mrs. Harris is that Mrs. Harris appropriated the Plan's assets for her own use and benefit. *In re Piercy*, 21 F.4th 909, 922 (6th Cir. 2021) (quoting *White v. Empire Express, Inc.*, 395 S.W.3d 696, 720 (Tenn. Ct. App. 2012)) ("In Tennessee, the elements of a conversion claim are (1) an appropriation of another's tangible property to one's use and benefit; (2) an intentional exercise of dominion

19

over the chattel alleged to have been converted; and (3) defiance of the true owner's rights to the chattel."). Plaintiffs have proof that Mrs. Harris held joint bank accounts with her late husband in which Dr. Harris improperly deposited money rightfully belonging to the Plan. By depositing Plan assets into his personal accounts, Dr. Harris would be liable for conversion and breach of fiduciary duty. According to Plaintiffs' theory of liability, Mrs. Harris would also be liable for conversion (and aiding and abetting her husband's breach of fiduciary duty) for all amounts deposited into their joint bank accounts. Assuming Plaintiffs could prove the elements of conversion for each improper transfer of Plan assets, Plaintiffs could establish their damages for Mrs. Harris' alleged acts of conversion by showing the value of the Plan assets improperly moved into Dr. and Mrs. Harris' joint accounts. Plaintiffs would be entitled to recover the amounts of the improper transfers plus interest.

As for Day and Night Solar, Plaintiffs would hold the company liable for allegedly sham loans made with Plan assets totaling $1,767,500, plus accrued interest. Plaintiffs contend that the proof will show Day and Night Solar never repaid the loans and that Dr. Harris and Eaton funneled the money to the company, which they controlled, thereby breaching their own fiduciary duties and making Day and Night Solar liable for conversion (and aiding and abetting the breaches). Again, assuming Plaintiffs can prove the elements of conversion on their claim against Day and Night Solar, Plaintiffs would be entitled to recover the amount of the loans plus interest.

Fraudulent Concealment and Fraudulent Misrepresentation. Lastly, Plaintiffs have carried their burden to show that they can seek on a class-wide basis damages against the Estate of Dr. Harris and Eaton for fraudulent concealment and the Harris Estate for fraudulent misrepresentation. Both sets of claims involve misrepresentation. Under Tennessee law, the tort of fraudulent concealment occurs when "a party who has a duty to disclose a known fact or

20

condition fails to do so, and another party reasonably relies upon the resulting misrepresentation, thereby suffering injury." *Roopchan v. ADT Sec. Sys., Inc.*, 781 F. Supp. 2d 636, 650 (E.D. Tenn. 2011) (quoting *Odom v. Oliver*, 310 S.W.3d 344, 349–50 (Tenn. Ct. App. 2009)); *see also Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 571 (6th Cir. 2003) (quoting *Chrisman v. Hill Home Dev., Inc.*, 978 S.W.2d 535, 538–39 (Tenn. 1998)). Fraudulent misrepresentation or intentional misrepresentation involves a false statement made with the intent to deceive. *Hodge v. Craig*, 382 S.W.3d 325, 342 & n.28 (Tenn. 2012).

Each tort sounding in fraud concerned the false statements about the value of the Plan and the concealment or misrepresentation of the Plan's true value. For each theory, Plaintiffs and the class of plan participants seek the "benefit of the bargain," that is, the value of the retirement assets they had been promised. "The 'benefit of the bargain,' a concept relevant to the computation of certain damages, refers to the difference between the value of what the plaintiff would have received if the misrepresentation had been true and the actual value of what the plaintiff received." *Houghton v. Malibu Boats, LLC*, --- S.W.3d ---, 2025 WL 2971436, at *4 n.10 (Tenn. Oct. 22, 2025) (quoting T.P.I.—Civil § 8.49). Plaintiffs have introduced evidence that Dr. Harris misrepresented to plan participants just before his retirement in 2021 that the Plan's assets were worth $126.8 million when, in fact, the Plan had a value closer to $37 million.

The Court finds that Plaintiffs could present this evidence to support an award of damages for fraudulent concealment and fraudulent misrepresentation, based just on the difference between the amount plan participants were told the Plan had and the amount it actually had, without the need to introduce any additional opinion-based evidence models to account for lost asset growth and appreciation. In short, a jury could decide to award the class of plan participants the difference in the represented value of Plan assets and the actual value.

Finding good cause for reconsideration of its previous decision, the Court holds that Plaintiffs can satisfy the test for class treatment under Rule 23(b)(3) and prove damages on certain tort claims outside the Dirks/Devor Model and with evidence of discrete transfers and transactions involving Plan assets.

## **CONCLUSION**

Plaintiffs' Motion for Reconsideration is **GRANTED**. The Court hereby amends its Class Certification Order and **CERTIFIES** the following additional class claims and issues for class action:

(1) breach of fiduciary duty against the Estate of Dr. Harris and Robert Eaton (Second Am. Compl., count 1);

(2) conversion against the Estate of Dr. Harris; Sandra Harris; Eaton; Financial Freedom Funds, LLC; Financial Freedom Group, Inc.; Trinity Financial Consultants, LLC; Financial Technologies, LLC; and Day & Night Solar (count 4);

(3) fraudulent concealment against the Estate of Dr. Harris and Eaton (count 5);

(4) fraudulent misrepresentation against the Estate of Dr. Harris (count 6); and

(5) aiding and abetting breach of fiduciary duty against Financial Freedom Funds, LLC; Financial Freedom Group, Inc.; Financial Technologies, LLC; Day & Night Solar; Trinity Financial Consultants, LLC; the Motorskill Entities; and Sandra Harris (count 9); and

(6) any affirmative defense preserved by the Defendants named in these counts and certified for class action.

Class counsel is directed to propose a form of notice to the class and submit its proposal within 14 days of the entry of this order.

**IT IS SO ORDERED**.

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: May 29, 2026.

22